UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

In re:                                              Bky. Case No. 08-41984-GFK

Donald Andrew Driggs,                                       Chapter 11 Case

      Debtor.

---

**NOTICE OF HEARING AND MOTION OF COMMERCE BANK FOR
RELIEF FROM THE AUTOMATIC STAY AND FOR EXPEDITED RELIEF**

To:   Debtor and other parties in interest as specified in Local Rule of Bankruptcy
      Procedure 9013-3(a)

1.     Commerce Bank, a Minnesota state banking corporation (the "Bank"), a creditor in this case, by and through its undersigned attorneys, moves the Court for the relief requested below and gives notice of hearing herewith.

2.     The Court will hold a hearing on this Motion at 10:30 a.m., on August 25, 2008, before the Honorable Gregory F. Kishel, in Courtroom No. 7 West, at the United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, or as soon thereafter as counsel may be heard.

3.     Any response to this Motion must be filed and delivered not later than August 20, 2008, which is three days before the date set for the hearing (excluding Saturdays, Sundays and holidays).  Because the Motion includes a request for expedited relief, the moving party will not object to the timelines of any written response served at or prior to the hearing.

4.     UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, Federal Rule of Bankruptcy Procedure 5005 and Local Rule 1070-1.  This case was commenced by the filing of a Voluntary Chapter 11 Petition on April 24, 2008 (the "Petition Date").  This case is now pending in this Court.

6.      This Motion arises under 11 U.S.C. § 362(d) and Federal Rule of Bankruptcy Procedure 4001.  This Motion is filed under Federal Rule of Bankruptcy Procedure 9014 and Local Rules 9013-1 and 9013-2.  The Bank requests relief in the form of an order modifying the automatic stay to permit the Bank to exercise all of its rights and remedies as a secured creditor with respect to the real and personal property of the Debtor located in Hennepin County, Minnesota described as follows:

Lot 6, Block 16, Calhoun Park, Hennepin County, Minnesota

with a street address of 3022 Hennepin Avenue, known as the Suburban World Theatre (the "Collateral").

7.      The Bank also requests expedited relief under Federal Rules of Bankruptcy Procedure 9006 and 9014 because of the threat of rapid deterioration of the Collateral if security and maintenance are not provided promptly.

8.      The Bank is a first secured creditor on virtually all of the real estate, fixtures and personal property of the Collateral.

## I.      THE INDEBTEDNESS.

9.      As of the Petition Date, the Debtor was indebted to the Bank pursuant to four Promissory Notes (hereinafter referred to as "Note A," "Note B," "Note C" and "Note D," respectively, and collectively referred to as the "Notes"), as follows:

| Note | Date of Note | Principal Balance | Interest and Fees Through March 19, 2008 | Total Due as of March 19, 2008 |
|------|--------------|-------------------|------------------------------------------|-------------------------------|
| Note A | 06/29/2007 | 501,109.13 | 42,793.48 | 543,902.61 |
| Note B | 09/24/2004 | 50,000.00 | 1,662.64 | 51,662.64 |
| Note C | 06/04/2004 | 149,977.97 | 4,987.31 | 154,965.28 |
| Note D | 07/31/2007 | 159,370.17 | 16,373.02 | 175,743.19 |
| | | | Grand Total: | 926,273.72 |

A true and correct copy of Note A is annexed hereto as **Exhibit A**.

10.     Notes B, C and D are secured by mortgages on numerous other real property of the Debtor.  This motion does not seek any relief with respect to property of the Debtor other than 3022 Hennepin Avenue and the personal property related thereto.

11.     Note A is secured by a Mortgage on the Collateral filed for record with the Office of the Registrar of Titles of Hennepin County, Minnesota as Document No. 3939937 on March 30, 2004.  A true and correct copy of the Mortgage is annexed hereto as **Exhibit B**.

12.     As further security for Note A, the Debtor executed and delivered to the Bank an Assignment of Leases and Rents dated March 29, 2004 and filed for record with the Office of the Registrar of Titles of Hennepin County, Minnesota as Document No. 3939938 on March 30, 2004.  A true and correct copy of the Assignment of Leases and Rents is annexed hereto as **Exhibit C.**

13.     As further security for Note A and the other Notes, the Debtor executed and delivered to the Bank a Commercial Security Agreement dated March 29, 2004 granting a security interest to the Bank in, among other things, the Debtor's accounts and other rights to payment, inventory, equipment, instruments, chattel paper and general intangibles.  The security interest specifically extended to deposit accounts and to a purchase money security interest in all business assets, including all restaurant

equipment located at 3022 Hennepin Avenue, Minneapolis, Minnesota 55408.  A true

and correct copy of the Commercial Security Agreement is annexed hereto as

**Exhibit D.**

14.     To perfect its security interest, a UCC-1 Financing Statement was filed

with the Office of the Secretary of State of Minnesota on April 1, 2004 and assigned

Document No. 200411214386.  A true and correct copy of the UCC-1 Financing

Statement is annexed hereto as **Exhibit E.**

## II.     GROUNDS FOR RELIEF FROM THE AUTOMATIC STAY.

### A.     For Cause.

15.     The Debtor cannot provide adequate protection for the Bank's interest in

the Collateral.

16.     In an order dated June 17, 2008, pursuant to an agreement among

several secured creditors of the Debtor, including the Bank, the Debtor was authorized

to use cash collateral through August 11, 2008.

17.     As of August 11, 2008, the Debtor is no longer authorized to use cash

collateral.  No motion is pending to extend the use of cash collateral, and the Bank has

not been asked to stipulate to a further extension.

18.     Moreover, the Debtor has failed to comply with other terms of the Order,

including specifically the failures to provide the Secured Creditors (as defined in the

Order) with monthly rent rolls and operating reports, and the failure to provide a copy of

the monthly operating reports submitted to the Office of the United States Trustee.

19.    The Bank sent the Debtor written notice of default on August 5, 2008.  A small portion of the requested information was furnished on August 15, 2008 but overall the response was incomplete and inadequate.

20.    Upon information and belief, since the Petition Date, the Debtor has not filed complete monthly operating reports with the Office of the United States Trustee for the months of April, June and July, 2008.

21.    Upon information and belief, as of the Petition Date, an entity wholly owned by the Debtor is operating the Suburban World Theatre, presumably using up resources and causing wear and tear on the building.  However, none of the Debtor's records or information provided to date show what is going on in the Suburban World Theatre, whether there are any proceeds or rental from this operation, and there is no evidence that maintenance and upkeep are ongoing.

**B.    The Debtor Does Not Have Any Equity in the Property and it is Not Necessary to an Effective Reorganization.**

22.    The Debtor filed a Plan of Reorganization and Disclosure Statement on August 31, 2008.  Note A is classified as Class 14(a) under the Plan.  For purposes of the Plan, according to the Debtor, the fair market value of the 3022 Hennepin Avenue property is $800,000.00.

23.    As of March 19, 2008, the amount due pursuant to Note A and secured by the Mortgage was $543,902.61.  Additional interests and costs continue to accrue.

24.    According to the Debtor's Schedule D, St. Stephen State Bank holds a second mortgage, subordinate to the Bank, on 3022 Hennepin Avenue, with a total amount due according to the Schedules of $155,674.00.  Unpaid real estate taxes for 2006 and 2007, through August 31, 2008 equal $85,258.24 according to a check with

the Hennepin County Treasurer.  Similarly, unpaid real estate taxes for 2008 equal

$33,098.42, including the delinquent first half unpaid taxes, the second half taxes due

October 15, 2008 and a penalty on the unpaid first half taxes.  Thus, the total

encumbrances against Suburban World Theatre are at least $817,933.27.  To the

extent that the occupant of Suburban World Theatre may also hold some encumbrance

against the value of the real property, it is unknown.

     25.     The Property is not necessary to an effective reorganization because a

reorganization does not appear possible in this case.  The Debtor's Plan appears to

have pulled property evaluation numbers out of thin air.  For example, while the

Schedules list the value of the Property at 3022 Hennepin Avenue as $1,850,000.00,

the value asserted by the Debtor in the Plan is $800,000.00.  Based on arbitrary values

such as this for all of the Debtor's real property, the Debtor is proposing to treat some

$1,775,287.00 of deficiency claims on mortgages as general unsecured debt.  The

Debtor proposes to pay these unsecured claims $1,000.00 per quarter commencing

March 31, 2009, for a total of 20 quarters.  That is, a total of $20,000.00 on claims of

$1,775,287.00, or a return to general unsecured creditors of approximately 1.1 cents on

the dollar.[1]

     26.     Despite this proposed treatment of unsecured creditors, the Debtor

proposes to retain the possession and use of all of his property upon confirmation of the

Plan.

     27.     In addition, in his treatment of the Bank, the Debtor proposes to freeze the

amount due as it was as of March 19, 2008 (even though he acknowledges that the

---

[1] According to the Plan, Notes B, C and D would be completely unsecured along with other notes from other mortgage holders.

Bank is over secured), reduce the interest rate to a rate below that in the Note and below market, and extend the maturity date from June 29, 2007 to March 31, 2034.[2]

### III.   GROUNDS FOR EXPEDITED RELIEF.

28.   Immediate relief is necessary because the Debtor no longer has authority to use cash collateral, the Debtor has failed and refused to provide necessary financial reports to determine whether any money is being spent and its source.

### IV.   NOTICE OF WITNESSES.

29.   Pursuant to Local Rule 9013-2(c), the Bank gives notice that it may call the following witnesses:

a.   James Senske and Brian Mallak, who are the Bank's President and Senior Vice President, respectively, whose business address is 7650 Edinborough Way, Suite 150, Edina, Minnesota.

b.   Donald Driggs.

### V.   CONCLUSION.

30.   Based on the foregoing, the Bank respectfully requests that the Motion be granted.

Respectfully submitted,

MOSS & BARNETT
A Professional Association

Dated:  August 19, 2008

By /e/ James A. Rubenstein
   James A. Rubenstein, #94080
   Lorie A. Klein, #311790
4800 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-4129
Telephone:  (612) 877-5000
**Attorneys for Commerce Bank**

---

[2] Apparently the Debtor believes, erroneously, that the maturity date of the original Note was March 31, 2034.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                    Bky. Case No. 08-41984-GFK

Donald Andrew Driggs,                                     Chapter 11 Case

        Debtor.

## VERIFICATION

I, _BRIAN MALLAK, SENIOR VICE PRESIDENT_ for Commerce Bank,

declare under penalty of perjury that the factual information in the foregoing Notice of

Hearing and Motion of Commerce Bank for Relief From the Automatic Stay and For

Expedited Relief is true and correct according to the best of my knowledge, information

and belief.

Executed on: August _19_, 2008          By: _____

1213739v1

| DONALD A. DRIGGS<br>2925 CASCO POINT<br>WAYZATA, MN 55391 | COMMERCE BANK<br>CENTENNIAL LAKES OFFICE<br>7650 EDINBOROUGH WAY, SUITE 150<br>EDINA, MN 55435 | Loan Number ____ .622<br>Date _____ 06-29-2007<br>Maturity Date _12-29-2007<br>Loan Amount $ 501,109.13<br>Renewal Of ____ .622 |
| **BORROWER'S NAME AND ADDRESS**<br>"I", "me" and "my" means each borrower above,<br>together and separately. | **LENDER'S NAME AND ADDRESS**<br>"You" and "your" means the lender, its successors<br>and assigns. | |

I promise to pay you, at your address listed above, the PRINCIPAL sum of  FIVE HUNDRED ONE THOUSAND ONE HUNDRED NINE AND 13/100

_____ Dollars $ 501,109.13

☒ **Single Advance:** I will receive all of the loan amount on 06-29-2007 _____. There will be no additional advances under this note.

☐ **Multiple Advance:** The loan amount shown above is the maximum amount I can borrow under this note. On _____

I will receive $ _____ and future principal advances are permitted.

**Conditions:** The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount more than one time. All other conditions of this note apply
      to this feature. This feature expires on _____

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from 06-29-2007 _____ at the rate of _____ 8.750 % per year until
12-29-2007

☐ **Variable Rate:** This rate may then change as stated below.

☐ **Index Rate:** The future rate will be _____ the following index rate: _____

☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

☐ **Frequency and Timing:** The rate on this note may change as often as _____

      A change in the interest rate will take effect _____

☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than
      _____ %. The rate may not change more than _____ % each _____

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:

☐ The amount of each scheduled payment will change.      ☐ The amount of the final payment will change.

☐

**ACCRUAL METHOD:** You will calculate interest on a _____ ACTUAL/360 _____ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:

☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).

☒ at a rate equal to 12.0% PER ANNUM

☒ **LATE CHARGE:** If I make a payment more than ___ 10 ___ days after it is due, I agree to pay a late charge of 5.000% OF THE LATE AMOUNT WITH A
MIN OF $25.00

☐ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which   ☐ are   ☐ are not   included in the principal
      amount above: _____

☐ **Authority:** The interest rate and other charges for this loan are authorized by _____

**PAYMENTS:** I agree to pay this note as follows:

ON DEMAND, BUT IF NO DEMAND IS MADE THEN 4 MONTHLY INTEREST PAYMENTS RANGING FROM $3853.92 TO $7428.64 BEGINNING 06-29-2007 AND 1 PAYMENT OF
$504,763.05 ON 12-29-2007.

**ADDITIONAL TERMS:**  AFTER AND DURING THE CONTINUANCE OF AN EVENT OF DEFAULT BY BORROWER UNDER THE LOAN EVIDENCED BY THIS NOTE, THE INTEREST RATE
APPLICABLE TO THIS NOTE SHALL BE INCREASED TO A RATE PER ANNUM THAT IS EQUAL TO 3.0% ABOVE THE INTEREST RATE THAT WOULD OTHERWISE APPLY UNDER THIS
NOTE.

---

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date): SEPARATE REAL ESTATE MORTGAGE, FIXTURE FILING STMT, ASSIGN OF LEASES & RENTS, & SECURITY AGREEMENT ALL DATED MARCH 29, 2004

(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure the note.)

Signature for Lender

_____
COLETTE R. FLAHERTY, ASSISTANT VICE PRESIDENT

_____

**PURPOSE:** The purpose of this loan is PURCHASE INVESTMENT PROPERTY

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING
THOSE ON PAGE 2).** I have received a copy on today's date.

_____
DONALD A. DRIGGS

_____

_____

**EXHIBIT**

**A**

UNIVERSAL NOTE

Experts   © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN   Form UN-MN 3/7/2002

39—937

SCANNED

OFFICE OF THE REGISTRAR
OF TITLES
HENNEPIN COUNTY, MINNESOTA
CERTIFIED FILED ON

MAR 30 2004

*Michael P. Cunning* 4pm
REGISTRAR OF TITLES
BY *R.M.K.H.* DEPUTY

16-1
55
50

copy
taken

1037286

3939937

BOX 104
NCS-77425-mpls

# REAL ESTATE MORTGAGE
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage is 03-29-2004 _____ and the parties and their addresses
are as follows:

MORTGAGOR: DONALD A. DRIGGS, A SINGLE PERSON
2925 CASCO POINT
WAYZATA, MN 55391

Henn Co      MRT
VLV      # 134466
3/30/2004
Paid    $1,260.00

☐ Refer to the Addendum which is attached and incorporated herein for additional Mortgagors.

LENDER:
COMMERCE BANK
CENTENNIAL LAKES OFFICE
ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF MINNESOTA
7850 EDINBOROUGH WAY, SUITE 150  EDINA, MN  55435

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to
secure the Secured Debt (hereafter defined), Mortgagor grants, bargains, sells, conveys and mortgages to Lender, with
the power of sale, the following described property: LOT 6, BLOCK 16, "CALHOUN PARK", HENNEPIN COUNTY, MINNESOTA

RETURN TO:
First American Title Insurance Co.
National Commercial Services
1900 Midwest Plaza West
801 Nicollet Mall
Minneapolis, MN  55402

The property is located in _____ HENNEPIN _____ at 3022 HENNEPIN AVENUE _____
                                     (County)

_____ , _____ MINNEAPOLIS _____ Minnesota _____ 55408 _____
         (Address)              (City)                        (Zip Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all
diversion payments or third party payments made to crop producers, and all existing and future improvements,
structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described
above (all referred to as "Property"). The term Property also includes, but is not limited to, any and all water wells,
water, ditches, reservoirs, reservoir sites and dams located on the real estate and all riparian and water rights associated
with the Property, however established.

MINNESOTA - AGRICULTURAL/COMMERCIAL REAL ESTATE SECURITY INSTRUMENT (NOT FOR FNMA, FHLMC, FHA OR VA USE, AND NOT FOR CONSUMER PURPOSES)   *(page 1 of 8)*

*Expere*  © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCORESIC-MN  6/20/2001

**EXHIBIT**

B

3. **MAXIMUM OBLIGATION LIMIT.** ☒ Notwithstanding anything to the contrary herein, enforcement of this Security Instrument is limited to a predetermined debt amount of $ 525,000.00 _____ under chapter 287 of Minnesota Statutes. ☐ This Security Instrument secures an indeterminate amount and the mortgage registration tax will be paid according to chapter 287 of Minnesota Statutes.
Additional amounts secured by this Security Instrument include interest and any other amount advanced by Lender in protection of the Property or this Security Instrument including but not limited to taxes, assessments, charges, claims, fines, impositions, insurance premiums, amounts due under prior or superior mortgages and other prior or superior liens, encumbrances and interests, legal expenses and attorneys' fees.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" includes, but is not limited to, the following:
   A.  The promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all extensions, renewals, modifications or substitutions (Evidence of Debt). *(You must specifically identify the debt(s) secured and you should include the **final maturity** date of such debt(s).)*
       PROMISSORY NOTE #200622 DATED MARCH 29, 2004 IN THE PREDETERMINED LUMP SUM OF $525,000.00

   B.  All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Mortgage whether or not this Mortgage is specifically referred to in the evidence of debt. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. Nothing in this Security Instrument shall constitute a commitment to make additional future advances or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.
   C.  All obligations Mortgagor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.
   D.  All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Mortgage, plus interest at the highest rate in effect, from time to time, as provided in the Evidence of Debt.
   E.  Mortgagor's performance under the terms of any instrument evidencing a debt by Mortgagor to Lender and any Mortgage securing, guarantying, or otherwise relating to the debt.

   If more than one person signs this Mortgage as Mortgagor, each Mortgagor agrees that this Mortgage will secure all future advances and future obligations described above that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. This Mortgage will not secure any other debt if Lender fails, with respect to such other debt, to make any required disclosure about this Mortgage or if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Mortgagor agrees to make all payments on the Secured Debt when due and in accordance with the terms of the Evidence of Debt or this Mortgage.

6. **WARRANTY OF TITLE.** Mortgagor covenants that Mortgagor is lawfully seized of the estate conveyed by this Mortgage and has the right to grant, bargain, convey, sell, and mortgage, with the power of sale, the Property and warrants that the Property is unencumbered, except for encumbrances of record.

7. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Mortgage. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses which Mortgagor may have against parties who supply labor or materials to improve or maintain the Property.

8. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property and that may have priority over this Mortgage, Mortgagor agrees:
   A.  To make all payments when due and to perform or comply with all covenants.
   B.  To promptly deliver to Lender any notices that Mortgagor receives from the holder.
   C.  Not to make any modification or extension of, and not to request or accept any future advances under any note or agreement secured by the other mortgage, deed of trust or security agreement unless Lender consents in writing.

*(page 2 of 8)*

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of any lien, encumbrance, transfer, or sale, or contract for any of these on the Property. However, if the Property includes Mortgagor's residence, this section shall be subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. For the purposes of this section, the term "Property" also includes any interest to all or any part of the Property. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Mortgage is released.

10. **TRANSFER OF AN INTEREST IN THE MORTGAGOR.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if (1) a beneficial interest in Mortgagor is sold or transferred; (2) there is a change in either the identity or number of members of a partnership or similar entity; or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity. However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Mortgage.

11. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Mortgagor makes to Lender the following warranties and representations which shall be continuing as long as the Secured Debt remains outstanding:
    A. Mortgagor is an entity which is duly organized and validly existing in the Mortgagor's state of incorporation (or organization). Mortgagor is in good standing in all states in which Mortgagor transacts business. Mortgagor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Mortgagor operates.
    B. The execution, delivery and performance of this Mortgage by Mortgagor and the obligation evidenced by the Evidence of Debt are within the power of Mortgagor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.
    C. Other than disclosed in writing Mortgagor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Mortgagor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

12. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will give Lender prompt notice of any loss or damage to the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor will not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restriction limiting or defining the uses which may be made of the Property or any part of the Property, without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor or any other owner made under law or regulation regarding use, ownership and occupancy of the Property. Mortgagor will comply with all legal requirements and restrictions, whether public or private, with respect to the use of the Property. Mortgagor also agrees that the nature of the occupancy and use will not change without Lender's prior written consent.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Mortgage. Mortgagor shall not partition or subdivide the Property without Lender's prior written consent. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

13. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any of Mortgagor's duties under this Mortgage, or any other mortgage, deed of trust, security agreement or other lien document that has priority over this Mortgage, Lender may, without notice, perform the duties or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may do whatever is necessary to protect Lender's security interest in the Property. This may include completing the construction.

Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Mortgage. Any amounts paid by Lender for insuring, preserving or otherwise protecting the Property and Lender's security interest will be due on demand and will bear interest from the date of the payment until paid in full at the interest rate in effect from time to time according to the terms of the Evidence of Debt.

14. **CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

*(page 3 of 8)*

Express    © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCORESIC-MN  6/20/2001

**15. DEFAULT.** Mortgagor will be in default if any of the following occur:
- A. Any party obligated on the Secured Debt fails to make payment when due;
- B. A breach of any term or covenant in this Mortgage, any prior mortgage or any construction loan agreement, security agreement or any other document evidencing, guarantying, securing or otherwise relating to the Secured Debt;
- C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Mortgagor or any person or entity obligated on the Secured Debt;
- D. The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Mortgagor or any person or entity obligated on the Secured Debt;
- E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;
- F. A material adverse change in Mortgagor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or
- G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**16. REMEDIES ON DEFAULT.** If the Secured Debt is subject to Minn. Stat. § 47.20, subd. 8, Lender will give borrower written notice of default prior to foreclosure, by certified mail at the address of the Property listed in this Security Instrument or such other address borrower may have designated to Lender in writing, unless the default consists of the sale of the Property without Lender's consent. The notice will specify: (a) the nature of the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is mailed by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the Security Instrument and sale of the mortgaged premises; (e) that the borrower has the right to reinstate the Security Instrument after acceleration; and (f) that the borrower has the right to bring a court action to assert the nonexistence of a default or any other defense of the borrower to acceleration and sale. Additionally, in some other instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, mediation notices or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Mortgage in a manner provided by law if this Mortgagor is in default. Upon default, Lender shall have the right, without declaring the whole indebtedness due and payable, to foreclose against all or any part of the Property. This Mortgage shall continue as a lien on any part of the Property not sold on foreclosure.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the Evidence of Debt, other evidences of debt, this Mortgage and any related documents including without limitation, the power to sell the Property.

If there is a default, Lender may, in addition to any other permitted remedy, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Mortgagor at such time and place as Lender designates. If Lender invokes the power of sale, Lender shall give notice of the sale including the time, terms and place of sale and a description of the property to be sold as required by the applicable law in effect at the time of the proposed sale. Lender or its designee may purchase the Property at any sale.

Upon sale of the Property and to the extent not prohibited by law, Lender shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser. Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Mortgage; and (c) any excess to the person or persons legally entitled to it. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

If the Property is sold pursuant to this section, Mortgagor, or any person holding possession of the Property through Mortgagor, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Mortgagor or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether expressly set forth or not. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**17. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Mortgage. Mortgagor will also pay on demand all of Lender's expenses incurred in collecting, insuring, preserving or protecting the Property or in any inventories, audits, inspections or other examination by Lender in respect to the Property. Mortgagor agrees to pay all costs and expenses incurred by Lender in enforcing or protecting Lender's rights and remedies under this Mortgage, including, but not limited to, attorneys' fees, court costs, and other legal expenses. Once the Secured Debt is fully and finally paid, Lender agrees to release this Mortgage and Mortgagor agrees to pay for any recordation costs. All such amounts are due on demand and will bear interest from the time of the advance at the highest rate in effect, from time to time, as provided in the Evidence of Debt and as permitted by law.

*(page 4 of 8)*

Expere™ © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCORESIC-MN 6/20/2001

18. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) "Environmental Law" means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) "Hazardous Substance" means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law. Mortgagor represents, warrants and agrees that, except as previously disclosed and acknowledged in writing:

  A. No Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

  B. Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

  C. Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.

  D. Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

  E. Mortgagor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.

  F. There are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

  G. Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

  H. Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law.

  I. Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

  J. Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.

  K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Mortgage and in return Mortgagor will provide Lender with collateral of at least equal value to the Property secured by this Mortgage without prejudice to any of Lender's rights under this Mortgage.

  L. Notwithstanding any of the language contained in this Mortgage to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Mortgage regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

19. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any action, real or threatened, by private or public entities to purchase or take any or all of the Property, including any easements, through condemnation, eminent domain, or any other means. Mortgagor further agrees to notify Lender of any proceedings instituted for the establishment of any sewer, water, conservation, ditch, drainage, or other district relating to or binding upon the Property or any part of it. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims and to collect and receive all sums resulting from the action or claim. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Mortgage. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

Experd™  © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO/RESIC-MN  6/20/2001

**20. INSURANCE.** Mortgagor agrees to maintain insurance as follows:

A.  Mortgagor shall keep the improvements now existing or hereafter built on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Mortgage.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "lender loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless Lender and Mortgagor otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Debt, whether or not then due, with any excess paid to Mortgagor. If Mortgagor abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Secured Debt whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Mortgagor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of scheduled payments or change the amount of the payments. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

B.  Mortgagor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.

C.  Mortgagor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

**21. NO ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

**22. FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem necessary. Mortgagor warrants that all financial statements and information Mortgagor provides to Lender are, or will be, accurate, correct, and complete. Mortgagor agrees to sign, deliver, and file as Lender may reasonably request any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Mortgage and Lender's lien status on the Property. If Mortgagor fails to do so, Lender may sign, deliver, and file such documents or certificates in Mortgagor's name and Mortgagor hereby irrevocably appoints Lender or Lender's agent as attorney in fact to do the things necessary to comply with this section.

**23. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Mortgage are joint and individual. If Mortgagor signs this Mortgage but does not sign the Evidence of Debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. Mortgagor agrees that Lender and any party to this Mortgage may extend, modify or make any change in the terms of this Mortgage or the Evidence of Debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Mortgage. The duties and benefits of this Mortgage shall bind and benefit the successors and assigns of Mortgagor and Lender.

If this Mortgage secures a guaranty between Lender and Mortgagor and does not directly secure the obligation which is guarantied, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation including, but not limited to, anti-deficiency or one-action laws.

**24. APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Mortgage is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Mortgage is complete and fully integrated. This Mortgage may not be amended or modified by oral agreement. Any section or clause in this Mortgage, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section or clause of this Mortgage cannot be enforced according to its terms, that section or clause will be severed and will not affect the enforceability of the remainder of this Mortgage. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Mortgage are for convenience only and are not to be used to interpret or define the terms of this Mortgage. Time is of the essence in this Mortgage.

*(page 6 of 8)*

Experi©  ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO/RESIC-MN  6/20/2001

**25. NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Mortgage, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

**26. WAIVER OF HOMESTEAD.** Except to the extent prohibited by law, Mortgagor waives all homestead exemption rights relating to the Property.

**27. U.C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this Mortgage:

☐ **Construction Loan.** This Mortgage secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property.

☐ **Crops; Timber; Minerals; Rents, Issues, and Profits.** Mortgagor grants to Lender a security interest in all crops, timber and minerals located on the Property as well as all rents, issues, and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property").

☐ **Personal Property.** Mortgagor grants to Lender a security interest in all personal property located on or connected with the Property. This security interest includes all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Mortgagor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property. The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.

☐ **Filing As Financing Statement.** Mortgagor agrees and acknowledges that this Mortgage also suffices as a financing statement and as such, may be filed of record as a financing statement for purposes of Article 9 of the Uniform Commercial Code. A carbon, photographic, image or other reproduction of this Mortgage is sufficient as a financing statement.

**28. OTHER TERMS.** If checked, the following are applicable to this Mortgage:

☐ **Agricultural Property.** Mortgagor covenants and warrants that the Property will be used principally for agricultural or farming purposes and that Mortgagor is an individual or entity allowed to own agricultural land as specified by law.

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Mortgage and in any attachments. Mortgagor also acknowledges receipt of a copy of this Mortgage on the date stated above on Page 1.

☐ Actual authority was granted to the parties signing below by resolution signed and dated _____.

Entity Name: _____

| | |
|---|---|
| (Signature) DONALD A. DRIGGS | (Signature) |
| (Date) | (Date) |
| (Signature) | (Signature) |
| (Date) | (Date) |

☐ Refer to the Addendum which is attached and incorporated herein for additional Mortgagors, signatures and acknowledgments.

**ACKNOWLEDGMENT:**

(Individual)

STATE OF <u>MINNESOTA</u> , COUNTY OF <u>Hennepin</u> } ss.
This instrument was acknowledged before me this <u>29TH</u> day of <u>MARCH, 2004</u>
by <u>DONALD A. DRIGGS, A SINGLE PERSON</u> .
My commission expires:

(Seal)

HJORDIS T BJORKLUND
NOTARY PUBLIC - MINNESOTA
ANOKA COUNTY
My Commission Expires 1/31/2005

(Notary Public)

(Business
or Entity
Acknowledgment)

STATE OF _____ , COUNTY OF _____ } ss.
This instrument was acknowledged before me this _____ day of _____
by _____
_____ (Title(s))
of _____
_____ (Name of Business or Entity)
a _____ on behalf of the business or entity.
My commission expires:

(Seal)

_____
(Notary Public)

This instrument was prepared by (name, address): COMMERCE BANK
7650 EDINBOROUGH WAY, SUITE 150
EDINA, MN 55435

RETURN TO:
First American Title Insurance Co.
National Commercial Services
1900 Midwest Plaza West
801 Nicollet Mall
Minneapolis, MN 55402

*(page 8 of 8)*

39938

# ASSIGNMENT OF LEASES AND RENTS

1. **DATE AND PARTIES.** The date of this Assignment of Leases and Rents (Assignment) is
   _____03-29-2004_____ . The parties and their addresses are:

   **ASSIGNOR:**   DONALD A. DRIGGS, A SINGLE PERSON
                   2925 CASCO POINT
                   WAYZATA, MN 55391

   ☐ Refer to the Addendum that is attached and incorporated herein for additional Assignors.

   **LENDER:**   COMMERCE BANK
                 CENTENNIAL LAKES OFFICE
                 ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF MINNESOTA
                 7650 EDINBOROUGH WAY, SUITE 150 EDINA, MN 55435

2. **ASSIGNMENT OF LEASES AND RENTS.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Assignor's performance under this Assignment, Assignor irrevocably assigns, grants, bargains, conveys, mortgages and warrants to Lender as additional security all the right, title and interest in the following (all referred to as Property).

   A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the non-homestead portion of the Property, including any extensions, renewals, modifications or replacements (all referred to as Leases).

   B. Rents, issues and profits (all referred to as Rents), including but not limited to security deposits, minimum rent, percentage rent, additional rent, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Assignor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property.

   C. The term Property as used in this Assignment shall include the following described real property:
   LOT 6, BLOCK 16, "CALHOUN PARK", HENNEPIN COUNTY, MINNESOTA



**EXHIBIT**

C

The Property is located in _____**HENNEPIN**_____ County at
_____**3022 HENNEPIN AVENUE, MINNEAPOLIS, MN 55408**_____ (Address, City, State,
ZIP Code).

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be
regarded as a security agreement.

3. **MAXIMUM OBLIGATION LIMIT.** Choose one
   - ☐ **Indeterminate Amount.** This Assignment secures an indeterminate amount and the mortgage registration tax
     will be paid pursuant to Minn. Stat. Chapter 287.
   - ☒ **Predetermined Amount.** Notwithstanding anything to the contrary herein, enforcement of this Assignment is
     limited to a predetermined debt amount of $ 525,000.00_____ under Minn. Stat. Chapter 287.
   - ☐ **Revolving Line of Credit.** Notwithstanding anything to the contrary herein, the maximum outstanding principal
     amount secured by this Assignment at any one time will not exceed $ _____.
   Additional amounts secured by this Assignment include interest and any other amount advanced by Lender in
   protection of the Property or this Assignment, including but not limited to taxes, assessments, charges, claims, fines,
   impositions, insurance premiums, amounts due under prior or superior mortgages and other prior or superior liens,
   encumbrances and interests, legal expenses and attorneys' fees.

4. **SECURED DEBTS.** This Assignment will secure the following Secured Debts:
   A. ☐ **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements.
      (Include items such as borrowers' names, note amounts, interest rates, maturity dates, initial advances, etc.)




      - ☐ One or more of the debts secured by this Assignment contains a future advance provision.
   B. ☒ **All Debts.** All present and future debts from Assignor and DONALD A. DRIGGS _____
      to Lender, even if this Assignment is not specifically referenced or if the future debt is unrelated to or of a
      different type than this debt. If more than one person signs this Assignment, each agrees that it will secure
      debts incurred either individually or with others who may not sign this Assignment. Nothing in this Assignment
      constitutes a commitment to make additional or future loans or advances. Any such commitment must be in
      writing. In the event that Lender fails to provide notice of the right of rescission, Lender waives any subsequent
      security interest in the Assignor's principal dwelling that is created by this Assignment. This Assignment will
      not secure any debt for which a non-possessory, non-purchase money security interest is created in "household
      goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and
      deceptive credit practices. This Assignment will not secure any debt for which a security interest is created in
      "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law
      governing securities.

   C. **Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Assignment.

5. **PAYMENTS.** Assignor agrees that all payments under the Secured Debts will be paid when due and in accordance
   with the terms of the Secured Debts and this Assignment.

6. **COLLECTION OF RENTS.** Assignor may collect, receive, enjoy and use the Rents so long as Assignor is not in default.
   Assignor will not collect in advance any Rents due in future lease periods, unless Assignor first obtains Lender's
   written consent. Upon default, Assignor will receive any Rents in trust for Lender and Assignor will not commingle the
   Rents with any other funds. When Lender so directs, Assignor will endorse and deliver any payments of Rents from
   the Property to Lender. Amounts collected will be applied first as set forth at Minn. Stat. Ann. § 576.01, subdivision
   2, and then at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the
   Property, and other necessary expenses. Assignor agrees that this Assignment is immediately effective between
   Assignor and Lender and effective as to third parties on the recording of this Assignment.

   This Assignment applies when, as additional security for the debt secured by the mortgage, it secures an original
   principal debt of $100,000 or more or is a lien upon residential real estate containing more than four dwelling units,
   and is not a lien upon Property which is entirely homesteaded as agricultural property or residential real estate
   containing four or fewer dwelling units where at least one of the units is homesteaded. This Assignment may only be
   enforced against the nonhomestead portion of the assigned Property.

   *(page 2 of 7)*

7.  **WARRANTIES AND REPRESENTATIONS.** To induce Lender to enter into the Loan, Assignor makes these representations and warranties for as long as this Assignment is in effect.

A.  **Power.** Assignor is duly organized, validly existing and in good standing under the laws in the jurisdiction where Assignor was organized and is duly qualified, validly existing and in good standing in all jurisdictions in which Assignor operates or Assignor owns or leases property. Assignor has the power and authority to enter into this transaction and to carry on Assignor's business or activity as now conducted.

B.  **Authority.** The execution, delivery and performance of this Assignment and the obligation evidenced by this Assignment: are within Assignor's duly authorized powers; has received all necessary governmental approval; will not violate any provision of law or order of court or governmental agency; and will not violate any agreement to which Assignor is a party or to which Assignor is or any of Assignor's property is subject.

C.  **Name and Place of Business.** Other than previously disclosed in writing to Lender, Assignor has not changed Assignor's name or principal place of business within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Assignor does not and will not use any other name and will preserve Assignor's existing name, trade names and franchises.

D.  **Ownership or Lease of Property.** Assignor owns or leases all property that Assignor needs to conduct Assignor's business and activities. All of Assignor's property is free and clear of all liens, security interests, encumbrances and other adverse claims and interests, except those Lender previously agreed to in writing.

E.  **Compliance with Laws.** Assignor is not violating any laws, regulations, rules, orders, judgments or decrees applicable to Assignor or Assignor's property, except for those that Assignor is challenging in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its challenge should Assignor lose.

F.  **Title.** Assignor has good title to the Leases, Rents and Property and the right to assign, grant, bargain, convey mortgage and warrant to Lender as additional security the Leases and Rents, and no other person has any right in the Leases and Rents.

G.  **Recordation.** Assignor has recorded the Leases as required by law or as otherwise prudent for the type and use of the Property.

H.  **Default.** No default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Assignor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Assignor or any party to the Lease defaults or fails to observe any applicable law, Assignor will promptly notify Lender.

I.  **Lease Modification.** Assignor has not sublet, modified, extended, canceled, or otherwise altered the Leases, or accepted the surrender of the Property covered by the Leases (unless the Leases so required).

J.  **Encumbrance.** Assignor has not assigned, compromised, subordinated or encumbered the Leases and Rents.

8.  **COVENANTS.** Assignor agrees to the following covenants:

A.  **Rent Abatement and Insurance.** When any Lease provides for an abatement of Rents due to fire, flood or other casualty, Assignor will insure against this risk of loss with a policy satisfactory to Lender. Assignor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld.

B.  **Copies of Leases.** Assignor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed.

C.  **Right to Rents.** Immediately after the execution of this Assignment, Assignor will notify all current and future tenants and others obligated under the Leases of Lender's right to the Leases and Rents, and will request that they immediately pay all future Rents directly to Lender when Assignor or Lender asks them to do so.

D.  **Accounting.** When Lender requests, Assignor will provide to Lender an accounting of Rents, prepared in a form acceptable to Lender, subject to generally accepted accounting principles and certified by Assignor or Assignor's accountant to be current, accurate and complete as of the date requested by Lender.

E.  **Lease Modification.** Assignor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so required) without Lender's written consent.

F.  **Encumbrance.** Assignor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent.

G.  **Future Leases.** Assignor will not enter into any future Leases without prior written consent from Lender. Assignor will execute and deliver such further assurances and assignments as to these future Leases as Lender requires from time to time.

H.  **Personal Property.** Assignor will not sell or remove any personal property on the Property, unless Assignor replaces this personal property with like kind for the same or better value.

I.  **Prosecution and Defense of Claims.** Assignor will appear in and prosecute its claims or defend its title to the Leases and Rents against any claims that would impair Assignor's interest under this Assignment and, on Lender's request, Assignor will also appear in any action or proceeding on behalf of Lender. Assignor agrees to assign to Lender, as requested by Lender, any right, claims or defenses which Assignor may have against parties who supply labor or materials to improve or maintain the leaseholds subject to the Leases and/or the Property.

J.  **Liability and Indemnification.** Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses or damages due to Lender's gross negligence or intentional torts to the extent permitted by law. Otherwise, Assignor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

Express ©2001 Bankers Systems, Inc., St. Cloud, MN Form ASMT-RENT-MN 2/25/2002

K. **Leasehold Estate.** Assignor will not cause or permit the leasehold estate under the Leases to merge with Assignor's reversionary interest, and agrees that the Leases shall remain in full force and effect regardless of any merger of the Assignor's interests and of any merger of the interests of Assignor and any party obligated under the Leases.
L. **Insolvency.** Lender will be the creditor of each tenant and of anyone else obligated under the Leases who is subject to an assignment for the benefit of creditors, an insolvency, a dissolution or a receivership proceeding, or a bankruptcy.

9.  **TRANSFER OF AN INTEREST IN THE ASSIGNOR.** If Assignor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if:
    A. A beneficial interest in Assignor is sold or transferred.
    B. There is a change in either the identity or number of members of a partnership or similar entity.
    C. There is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity.
    However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Assignment.

10. **DEFAULT.** Assignor will be in default if any of the following occur with regard to the Secured Debts that are secured by this Assignment:
    A. **Payments.** Assignor fails to make a payment in full when due.
    B. **Insolvency or Bankruptcy.** Assignor makes an assignment for the benefit of creditors or becomes insolvent, either because Assignor's liabilities exceed Assignor's assets or Assignor is unable to pay Assignor's debts as they become due; or Assignor petitions for protection under federal, state or local bankruptcy, insolvency or debtor relief laws, or is the subject of a petition or action under such laws and fails to have the petition or action dismissed within a reasonable period of time not to exceed 60 days.
    C. **Death or Incompetency.** If Assignor is an individual, Assignor dies or is declared legally incompetent.
    D. **Business Termination.** If Assignor is not an individual, Assignor merges, dissolves, reorganizes or ends its business or existence, or a partner or majority owner dies or is declared legally incompetent.
    E. **Failure to Perform.** Assignor fails to perform any condition or to keep any promise or covenant of this Assignment, any other document evidencing or pertaining to the Loan, or any other debt or agreement Assignor has with Lender.
    F. **Misrepresentation.** Assignor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.
    G. **Property Transfer.** Assignor transfers all or a substantial part of Assignor's money or property.
    H. **Property Value.** The value of the Property declines or is impaired.
    I. **Name Change.** Assignor changes Assignor's name or assumes an additional name without notifying Lender before making such a change.
    J. **Material Change.** Without first notifying Lender, there is a material change in Assignor's business, including ownership, management, and financial conditions.
    K. **Insecurity.** Lender reasonably believes that Lender is insecure.

11. **REMEDIES.** After Assignor defaults, and after Lender gives any legally required notice and opportunity to cure the default, Lender may at Lender's option do any one or more of the following:
    A. **Acceleration.** Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due.
    B. **Additional Security.** Lender may demand additional security or additional parties to be obligated to pay the Secured Debts.
    C. **Sources.** Lender may use any and all remedies Lender has under the state law where the Property is located or federal law or in any instrument evidencing or pertaining to the Secured Debts.
    D. **Insurance Benefits.** Lender may make a claim for any and all insurance benefits or refunds that may be available on Assignor's default.
    E. **Payments Made On Assignor's Behalf.** Amounts advanced on Assignor's behalf will be immediately due and may be added to the Secured Debts.
    F. **Rents.** Lender may directly collect and retain Rents in Lender's name without taking possession of the Property and to demand, collect, receive, and sue for the Rents, giving proper receipts and releases. Any amounts collected will be applied first as set forth in M.S.A. 576.01(2), then, at Lender's discretion, to the reasonable expenses of collection from any collected and retained Rents. Lender may apply the balance as provided for by the Secured Debts.
    G. **Entry.** Lender may enter, take possession, manage and operate all or any part of the Property; make, modify, enforce or cancel or accept the surrender of any Leases; obtain or evict any tenants and licensees; increase or reduce Rents; decorate, clean and make repairs or do any other act or incur any other cost Lender deems proper to protect the Property as fully as Assignor could do. Any funds collected from the operation of the Property may be applied in such order as Lender may deem proper, including, but not limited to, payment of the following: operating expenses, management, brokerage, attorneys' and accountants' fees, the Secured Debts, and toward the maintenance of reserves for repair or replacement. Lender may take such action without regard to the adequacy of the security, with or without any action or proceeding, through any person or agent, or receiver to be appointed by a court, and irrespective of Assignor's possession. The collection and application of the Rents or the entry upon and taking possession of the Property as set out in this section shall not cure or waive any notice of default under the Secured Debts, this Assignment, or invalidate any act pursuant to such notice. The enforcement of such remedy by Lender, once exercised, shall continue for so long as Lender shall elect, notwithstanding that such collection and application of Rents may have cured the original default.

*(page 4 of 7)*

Expert™ ©2001 Bankers Systems, Inc., St. Cloud, MN Form ASMT-RENT-MN 2/25/2002

H. **Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

12. **APPOINTMENT OF A RECEIVER.** On or after an Assignor's default, Assignor agrees to Lender making an application to the court for an appointment of a receiver for the benefit of Lender to take possession of the Property and the Leases, with the power to receive, collect and apply the Rents. Any Rents collected will be applied as the court authorizes to pay taxes, to provide insurance, to make repairs and to pay costs or any other expenses relating to the Property, the Leases and Rents, and any remaining sums shall be applied to the Secured Debts. Assignor agrees that this appointment of a receiver may be without giving bond, without reference to the then-existing value of the Property, and without regard to the insolvency of any person liable for any of the Secured Debts.

13. **COLLECTION EXPENSES AND ATTORNEYS' FEES.** To the extent permitted by law, Assignor agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under this Assignment. Unless the applicable law that governs this Assignment is North Dakota, expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately. These expenses will bear interest from the date of payment until paid in full at the contract interest rate then in effect for the Loan. To the extent permitted by the United States Bankruptcy Code, Assignor agrees to pay the reasonable attorneys' fees Lender incurs to collect this Assignment as awarded by any court exercising jurisdiction under the Bankruptcy Code.

14. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substances" under any Environmental Law.

Assignor represents, warrants and agrees that:
A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.
B. Except as previously disclosed and acknowledged in writing to Lender, Assignor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.
C. Assignor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Assignor will take all necessary remedial action in accordance with Environmental Law.
D. Except as previously disclosed and acknowledged in writing to Lender, Assignor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Assignor or any tenant of any Environmental Law. Assignor will immediately notify Lender in writing as soon as Assignor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.
E. Except as previously disclosed and acknowledged in writing to Lender, Assignor and every tenant have been, are and will remain in full compliance with any applicable Environmental Law.
F. Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.
G. Assignor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.
H. Assignor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Assignor and any tenant are in compliance with applicable Environmental Law.

*(page 5 of 7)*

Ex̲p̲e̲r̲e̲ṭ™  ©2001 Bankers Systems, Inc., St. Cloud, MN Form ASMT-RENT-MN 2/25/2002

I. Upon Lender's request and at any time, Assignor agrees, at Assignor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Assignor's obligations under this section at Assignor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Assignor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses to the extent permitted by law, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Assignment and in return Assignor will provide Lender with collateral of at least equal value to the Property secured by this Assignment without prejudice to any of Lender's rights under this Assignment.

L. Notwithstanding any of the language contained in this Assignment to the contrary, the terms of this section will survive any foreclosure or satisfaction of this Assignment regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

**15. TERM.** This Assignment will remain in full force and effect until the Secured Debts are paid or otherwise discharged and Lender is no longer obligated to advance funds under any loan or credit agreement which is a part of the Secured Debts. If any or all payments of the Secured Debts are subsequently invalidated, declared void or voidable, or set aside and are required to be repaid to a trustee, custodian, receiver or any other party under any bankruptcy act or other state or federal law, then the Secured Debts will be revived and will continue in full force and effect as if this payment had not been made.

**16. CO-SIGNERS.** If Assignor signs this Assignment but does not sign the Secured Debts, Assignor does so only to assign Assignor's interest in the Property to secure payment of the Secured Debts and Assignor does not agree to be personally liable on the Secured Debts. If this Assignment secures a guaranty between Lender and Assignor, Assignor agrees to waive any rights that may prevent Lender from bringing any action or claim against Assignor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws.

**17. WAIVERS.** Except to the extent prohibited by law, Assignor waives all homestead exemption rights relating to the Property.

**18. U.C.C. PROVISIONS.**

☐ **Construction Loan.** This Assignment secures an obligation incurred for the construction of an improvement on the Property.

**19. OTHER TERMS.** If checked, the following are applicable to this Assignment:

☐ **Line of Credit.** The Secured Debts include a revolving line of credit provision. Although the Secured Debts may be reduced to a zero balance, this Assignment will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

☐ **Additional Terms.**

**20. APPLICABLE LAW.** This Assignment is governed by the laws of Minnesota, except to the extent otherwise required by the laws of the jurisdiction where the Property is located, and the United States of America.

**21. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Assignor's obligations under this Assignment are independent of the obligations of any other Assignor. Lender may sue each Assignor individually or together with any other Assignor. Lender may release any part of the Property and Assignor will still be obligated under this Assignment for the remaining Property. The duties and benefits of this Assignment will bind and benefit the successors and assigns of Lender and Assignor.

**22. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Assignment may not be amended or modified by oral agreement. No amendment or modification of this Assignment is effective unless made in writing and executed by Assignor and Lender. This Assignment is the complete and final expression of the agreement. If any provision of this

*(page 6 of 7)*

Expere™ ©2001 Bankers Systems, Inc., St. Cloud, MN  Form ASMT-RENT-MN  2/25/2002

Assignment is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

23. **INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Assignment.

24. **NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail and by registered or certified mail, return receipt requested, to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one party will be deemed to be notice to all parties. Assignor will inform Lender in writing of any change in Assignor's name, address or other application information. Assignor will provide Lender any financial statements or information Lender requests. All financial statements and information Assignor gives Lender will be correct and complete. Assignor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Assignor's obligations under this Assignment and to confirm Lender's lien status on any Property. Time is of the essence.

25. **SIGNATURES.** By signing, Assignor agrees to the terms and covenants contained in this Assignment. Assignor also acknowledges receipt of a copy of this Assignment.

(Entity Name)

(Signature)  DONALD A. DRIGGS                                   (Signature)

**ACKNOWLEDGMENT:**

(Individual)  STATE OF MINNESOTA _____ , COUNTY OF Hennepin _____ } ss.
This instrument was acknowledged before me this ____29TH____ day of ____MARCH, 2004____.
by DONALD A. DRIGGS, A SINGLE PERSON _____
My commission expires:

HJORDIS T BJORKLUND
NOTARY PUBLIC - MINNESOTA
ANOKA COUNTY
My Commission Expires 1/31/2005

(Notary Public)

STATE OF _____ , COUNTY OF _____ } ss.
(Business or Entity Acknowledgment)  This instrument was acknowledged before me this _____ day of _____
by _____
_____ (Title(s))
of _____ [Name of Business or Entity]
a _____ on behalf of the business or entity.
My commission expires:

_____
(Notary Public)

This instrument was prepared by (name, address): COMMERCE BANK
7650 EDINBOROUGH WAY, SUITE 150 EDINA, MN 55435

Experts™  ©2001 Bankers Systems, Inc., St. Cloud, MN  Form ASMT-RENT-MN  2/25/2002

*(page 7 of 7)*



RETURN TO:
First American Title Insurance Co.
National Commercial Services
1900 Midwest Plaza West
801 Nicollet Mall
Minneapolis, MN  55402

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| DONALD A. DRIGGS<br>2925 CASCO POINT<br>WAYZATA, MN 55391 | COMMERCE BANK<br>CENTENNIAL LAKES OFFICE<br>7650 EDINBOROUGH WAY, SUITE 150<br>EDINA, MN 55435 |

Type: ☒ individual ☐ partnership ☐ corporation ☐ _____
State of organization/registration (if applicable) _____
☐ If checked, refer to addendum for additional Debtors and signatures.

## COMMERCIAL SECURITY AGREEMENT

The date of this Commercial Security Agreement (Agreement) is 03-29-2004 _____

SECURED DEBTS. This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and the payment and performance of the following described Secured Debts that (check one) ☒ Debtor ☐ _____
_____ (Borrower) owes to Secured Party:

☐ Specific Debts. The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):

☒ All Debts. All present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated to or of a different type than the current debt. Nothing in this Agreement is a commitment to make future loans or advances.

SECURITY INTEREST. To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

PROPERTY DESCRIPTION. The Property is described as follows:

☒ Accounts and Other Rights to Payment: All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor.

☒ Inventory: All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business.

☒ Equipment: All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment.

☒ Instruments and Chattel Paper: All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

☒ General Intangibles: All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name.

☐ Documents: All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.

☐ Farm Products and Supplies: All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in Debtor's farming operations.

☐ Government Payments and Programs: All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☐ Investment Property: All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

☒ Deposit Accounts: All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

☒ Specific Property Description: The Property includes, but is not limited by, the following (if required, provide real estate description):

PURCHASE MONEY SECURITY INTEREST IN ALL BUSINESS ASSETS INCLUDING ALL RESTUARANT EQUIPMENT LOCATED AT 3022 HENNPEIN AVENUE, MINNEAPOLIS, MN 55408.

USE OF PROPERTY. The Property will be used for ☐ personal ☒ business ☐ agricultural ☐ _____ purposes.

SIGNATURES. Debtor agrees to the terms on pages 1 and 2 of this Agreement and acknowledges receipt of a copy of this Agreement.

| DEBTOR | SECURED PARTY |
|---|---|
| | COMMERCE BANK, CENTENNIAL LAKES OFFICE |
| *[signature]* | *[signature]* |
| DONALD A. DRIGGS | SHANNON N HEROUX |
| | COMMERCIAL LENDER |

Expere™ ©2000 Bankers Systems, Inc., St. Cloud, MN Form SA-BUS 7/24/2001

**EXHIBIT**

D

(page 1 of 2)

**GENERAL PROVISIONS.** Each Debtor's obligations under this Agreement are independent of the obligations of any other Debtor. Secured Party may sue each Debtor individually or together with any other Debtor. Secured Party may release any part of the Property and Debtor will remain obligated under this Agreement. The duties and benefits of this Agreement will bind the successors and assigns of Debtor and Secured Party. No modification of this Agreement is effective unless made in writing and signed by Debtor and Secured Party. Whenever used, the plural includes the singular and the singular includes the plural. Time is of the essence.

**APPLICABLE LAW.** This Agreement is governed by the laws of the state in which Secured Party is located. In the event of a dispute, the exclusive forum, venue, and place of jurisdiction will be the state in which Secured Party is located, unless otherwise required by law. If any provision of this Agreement is unenforceable by law, the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**NAME AND LOCATION.** Debtor's name indicated on page 1 is Debtor's exact legal name. If Debtor is an individual, Debtor's address is Debtor's principal residence. If Debtor is not an individual, Debtor's address is the location of Debtor's chief executive offices or sole place of business. If Debtor is an entity organized and registered under state law, Debtor has provided Debtor's state of registration on page 1. Debtor will provide verification of registration and location upon Secured Party's request. Debtor will provide Secured Party with at least 30 days notice prior to any change in Debtor's name, address, or state of organization or registration.

**WARRANTIES AND REPRESENTATIONS.** Debtor has the right, authority, and power to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing Debtor or Debtor's property, or to which Debtor is a party. Debtor makes the following warranties and representations which continue as long as this Agreement is in effect:

(1) Debtor is duly organized and validly existing in all jurisdictions in which Debtor does business;

(2) the execution and performance of the terms of this Agreement have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law or order;

(3) other than previously disclosed to Secured Party, Debtor has not changed Debtor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name; and

(4) Debtor does not and will not use any other name without Secured Party's prior written consent.

Debtor owns all of the Property, and Secured Party's claim to the Property is ahead of the claims of any other creditor, except as otherwise agreed and disclosed to Secured Party prior to any advance on the Secured Debts. The Property has not been used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**DUTIES TOWARD PROPERTY.** Debtor will protect the Property and Secured Party's interest against any competing claim. Except as otherwise agreed, Debtor will keep the Property in Debtor's possession at the address indicated on page 1 of this Agreement. Debtor will keep the Property in good repair and use the Property only for purposes specified on page 1. Debtor will not use the Property in violation of any law and will pay all taxes and assessments levied or assessed against the Property. Secured Party has the right of reasonable access to inspect the Property, including the right to require Debtor to assemble and make the Property available to Secured Party. Debtor will immediately notify Secured Party of any loss or damage to the Property. Debtor will prepare and keep books, records, and accounts about the Property and Debtor's business, to which Debtor will allow Secured Party reasonable access.

Debtor will not sell, offer to sell, license, lease, or otherwise transfer or encumber the Property without Secured Party's prior written consent. Any disposition of the Property will violate Secured Party's rights, unless the Property is inventory sold in the ordinary course of business at fair market value. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, Debtor will record Secured Party's interest on the face of the chattel paper or instruments.

If the Property includes accounts, Debtor will not settle any account for less than the full value, dispose of the accounts by assignment, or make any material change in the terms of any account without Secured Party's prior written consent. Debtor will collect all accounts in the ordinary course of business, unless otherwise required by Secured Party. Debtor will keep the proceeds of the accounts, and any goods returned to Debtor, in trust for Secured Party and will not commingle the proceeds or returned goods with any of Debtor's other property. Secured Party has the right to require Debtor to pay Secured Party the full price on any returned items. Secured Party may require account debtors to make payments under the accounts directly to Secured Party. Debtor will deliver the accounts to Secured Party at Secured Party's request. Debtor will give Secured Party all statements, reports, certificates, lists of account debtors (showing names, addresses, and amounts owing), invoices applicable to each account, and any other data pertaining to the accounts as Secured Party requests.

If the Property includes farm products, Debtor will provide Secured Party with a list of the buyers, commission merchants, and selling agents to or through whom Debtor may sell the farm products. Debtor authorizes Secured Party to notify any additional parties regarding Secured Party's interest in Debtor's farm products, unless prohibited by law. Debtor agrees to plant, cultivate, and harvest crops in due season. Debtor will be in default if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

If Debtor pledges the Property to Secured Party (delivers the Property into the possession or control of Secured Party or a designated third party), Debtor will, upon receipt, deliver any proceeds and products of the Property to Secured Party. Debtor will provide Secured Party with any notices, documents, financial statements, reports, and other information relating to the Property Secured Party receives as the owner of the Property.

**PERFECTION OF SECURITY INTEREST.** Debtor authorizes Secured Party to file a financing statement covering the Property. Debtor will comply with, facilitate, and otherwise assist Secured Party in connection with obtaining possession or control over the Property for purposes of perfecting Secured Party's interest under the Uniform Commercial Code.

**INSURANCE.** Debtor agrees to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Agreement. Debtor will maintain this insurance in the amounts Secured Party requires. Debtor may choose the insurance company, subject to Secured Party's approval, which will not be unreasonably withheld. Debtor will have the insurance provider name Secured Party as loss payee on the insurance policy. Debtor will give Secured Party and the insurance provider immediate notice of any loss. Secured Party may apply the insurance proceeds toward the Secured Debts. Secured Party may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If Secured Party acquires the Property in damaged condition, Debtor's rights to any insurance policies and proceeds will pass to Secured Party to the extent of the Secured Debts. Debtor will immediately notify Secured Party of the cancellation or termination of insurance. If Debtor fails to keep the Property insured, or fails to provide Secured Party with proof of insurance, Secured Party may obtain insurance to protect Secured Party's interest in the Property. The insurance may include coverages not originally required of Debtor, may be written by a company other than one Debtor would choose, and may be written at a higher rate than Debtor could obtain if Debtor purchased the insurance.

**AUTHORITY TO PERFORM.** Debtor authorizes Secured Party to do anything Secured Party deems reasonably necessary to protect the Property and Secured Party's interest in the Property. If Debtor fails to perform any of Debtor's duties under this Agreement, Secured Party is authorized, without notice to Debtor, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and take any action to realize the value of the Property. Secured Party's authority to perform for Debtor does not create an obligation to perform, and Secured Party's failure to perform will not preclude Secured Party from exercising any other rights under the law or this Agreement.

If Secured Party performs for Debtor, Secured Party will use reasonable care. Reasonable care will not include any steps necessary to preserve rights against prior parties or any duty to take action in connection with the management of the Property.

If Secured Party comes into possession of the Property, Secured Party will preserve and protect the Property to the extent required by law. Secured Party's duty of care with respect to the Property will be satisfied if Secured Party exercises reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

Secured Party may enforce the obligations of an account debtor or other person obligated on the Property. Secured Party may exercise Debtor's rights with respect to the account debtor's or other person's obligations to make payment or otherwise render performance to Debtor, and enforce any security interest that secures such obligations.

**PURCHASE MONEY SECURITY INTEREST.** If the Property includes items purchased with the Secured Debts, the Property purchased with the Secured Debts will remain subject to Secured Party's security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, payments will be applied in the order Secured Party selects. No security interest will be terminated by application of this formula.

**DEFAULT.** Debtor will be in default if:

(1) Debtor (or Borrower, if not the same) fails to make a payment in full when due;

(2) Debtor fails to perform any condition or keep any covenant on this or any debt or agreement Debtor has with Secured Party;

(3) a default occurs under the terms of any instrument or agreement evidencing or pertaining to the Secured Debts;

(4) anything else happens that either causes Secured Party to reasonably believe that Secured Party will have difficulty in collecting the Secured Debts or significantly impairs the value of the Property.

**REMEDIES.** After Debtor defaults, and after Secured Party gives any legally required notice and opportunity to cure the default, Secured Party may at Secured Party's option do any one or more of the following:

(1) make all or any part of the Secured Debts immediately due and accrue interest at the highest post-maturity interest rate;

(2) require Debtor to gather the Property and make it available to Secured Party in a reasonable fashion;

(3) enter upon Debtor's premises and take possession of all or any part of Debtor's property for purposes of preserving the Property or its value and use and operate Debtor's property to protect Secured Party's interest, all without payment or compensation to Debtor;

(4) use any remedy allowed by state or federal law, or provided in any agreement evidencing or pertaining to the Secured Debts.

If Secured Party repossesses the Property or enforces the obligations of an account debtor, Secured Party may keep or dispose of the Property as provided by law. Secured Party will apply the proceeds of any collection or disposition first to Secured Party's expenses of enforcement, which includes reasonable attorneys' fees and legal expenses to the extent not prohibited by law, and then to the Secured Debts. Debtor (or Borrower, if not the same) will be liable for the deficiency, if any.

By choosing any one or more of these remedies, Secured Party does not give up the right to use any other remedy. Secured Party does not waive a default by not using a remedy.

**WAIVER.** Debtor waives all claims for damages caused by Secured Party's acts or omissions where Secured Party acts in good faith.

**NOTICE AND ADDITIONAL DOCUMENTS.** Where notice is required, Debtor agrees that 10 days prior written notice will be reasonable notice to Debtor under the Uniform Commercial Code. Notice to one party is notice to all parties. Debtor agrees to sign, deliver, and file any additional documents and certifications Secured Party considers necessary to perfect, continue, or preserve Debtor's obligations under this Agreement and to confirm Secured Party's lien status on the Property.

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

RETURN TO:
First American Title Insurance Company
1900 Midwest Plaza West
801 Nicollet Mall
Minneapolis, MN  55402

Filing NO: 200411214386
Filing Date: 2004/04/01
Filing Time: 3:50 PM
State of Minnesota
Processing Office: Secretary of State
Filed by: nehno01

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only **one** debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| DRIGGS | DONALD | A | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2925 CASCO POINT | WAYZATA | MN | 55391 | |

| 1d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only **one** debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only **one** secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| COMMERCE BANK, CENTENNIAL LAKES OFFICE | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 7650 EDINBOROUGH WAY, SUITE 150 | EDINA | MN | 55435 | |

**4. This FINANCING STATEMENT covers the following collateral:**
PURCHASE MONEY SECURITY INTEREST IN ALL BUSINESS ASSETS INCLUDING ALL RESTUARANT EQUIPMENT LOCATED AT 3022 HENNEPIN AVENUE, MINNEAPOLIS, MN 55408

NCS-_77425_-MPLS (ML)

See attached addendum

**5. ALTERNATIVE DESIGNATION (if applicable):** ☐ LESSEE/LESSOR   ☐ CONSIGNEE/CONSIGNOR   ☐ BAILEE/BAILOR   ☐ SELLER/BUYER   ☐ AG. LIEN   ☐ NON-UCC FILING

**6.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.     Attach Addendum [if applicable]    **7.** Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]  [optional]   ☐ All Debtors   ☐ Debtor 1   ☐ Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**

DEBTOR COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)          Bankers Systems, Inc., St. Cloud, MN  Form UCC-1-LAZ 5/30/2001

**EXHIBIT**

tabbies®

E

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

In re:                                                    Bky. Case No. 08-41984-GFK

Donald Andrew Driggs,                                              Chapter 11 Case

Debtor.

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## FOR RELIEF FROM THE AUTOMATIC STAY AND EXPEDITED RELIEF

Commerce Bank, a Minnesota state banking corporation (the "Bank") seeks relief from the automatic stay to proceed with its remedies with respect to the real and personal property of the Debtor located in Hennepin County, Minnesota described as follows:

Lot 6, Block 16, Calhoun Park, Hennepin County, Minnesota

with a street address of 3022 Hennepin Avenue, known as the Suburban World Theatre (the "Collateral").  This memorandum is submitted in support of the Bank's motion (the "Motion").

### FACTS

The Petition commencing this Chapter 11 case was filed on April 24, 2008.  As is set forth more fully in the Motion, the Bank is a first secured creditor on virtually all of the real estate, fixtures and personal property of the Collateral.  The Debtor's authorization to use cash collateral expired on August 11, 2008.  The Debtor has failed to file complete reports with the Office of the United States Trustee for the months of April, June and July, 2008.

1213739v1

## DISCUSSION

**A.    CAUSE TO LIFT THE AUTOMATIC STAY.**

11 U.S.C. § 362(d) provides in pertinent part that:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if –
>> (A) the debtor does not have an equity in such property; and
>> (B) such property is not necessary to an effective reorganization…

The term "cause" in Section 362 is not defined in the Bankruptcy Code.  Whether cause exists to lift the stay must be decided on a case-by-case basis.  *Murray Industries, Inc. v. Aristech Chemical Corporation*, 121 B.R. 635, 636 (Bankr. M.D. Fla. 1990).

The Bank moves for relief from the automatic stay under 11 U.S.C. §§  362(d)(1) and (d)(2).  Cause exists under Section 361(d)(1) because the Bank lacks adequate protection of its interest in the Collateral.  The Debtor has allowed his authorization to use cash collateral to expire as of August 11, 2008.  In addition, the Debtor has failed to inform the Bank of his financial performance post-petition in that he has not furnished all of the financial reports requested, nor has he furnished copies of the monthly reports due to the Office of the United States Trustee.  In fact, as of the morning of August 18, 2008, it appears that complete reports had not been filed with the Office of the United States Trustee for the months of April, June and July, 2008.

In addition, the purpose of adequate protection is to protect the secured party from decrease in the value of its interest in its collateral.  11 U.S.C. § 361.  In this case,

the value of the Collateral is declining.  It appears that a company wholly owned by the

Debtor is actually in possession of and operating the Suburban World Theatre.  Despite

requests, no information has been supplied as to the financial performance of the

Suburban World Theatre and nor is there any specific information given concerning the

terms in which the entity occupies the Suburban World Theatre.

In addition, as set forth more fully in the Motion, the encumbrances against the

property exceed the declared value, and therefore the Debtor has no equity in the

property and is not necessary to an effective reorganization.  Thus, the Bank is also

entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2).

Accordingly, the stay should be lifted to permit the Bank to take appropriate

action to exercise its rights in the Collateral.

**B.      EXPEDITED RELIEF.**

Local Bankruptcy Rule 9006-1(e) authorizes a request for expedited relief to be

made in the Motion as to which such relief is sought.  Bankruptcy Rule 9006 provides

that the period of required notice for a motion such as the Bank's present motion "the

court for cause shown may in its discretion with or without motion or notice order the

period reduced."

Expedited consideration of the Motion is appropriate in this case because the

Debtor's authorization for use of cash collateral has expired, and the Debtor has failed

to furnish reports to describe his post-petition financial performance.

## <u>CONCLUSION</u>

Based upon the foregoing, the Bank respectfully requests that the automatic stay

be modified in accordance with the Motion.

Respectfully submitted,

MOSS & BARNETT
A Professional Association

Dated:  August 19, 2008

By /e/ James A. Rubenstein
    James A. Rubenstein, #94080
    Lorie A. Klein, #311790
4800 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-4129
Telephone:  (612) 877-5000
**Attorneys for Commerce Bank**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

_____

In re:                                                          Bky. Case No. 08-41984-GFK

Donald Andrew Driggs,                                                  Chapter 11 Case

                    Debtor.

_____

Maureen A. Montpetit, employed by Moss & Barnett, with office address of 4800 Wells
Fargo Center, 90 South 7th Street, Minneapolis, MN 55402, declares under penalty of
perjury that on August 19, 2008, I caused the following documents: **(1) Notice of
Hearing and Motion of Commerce Bank for Relief From the Automatic Stay and
For Expedited Relief; (2) Memorandum of Law in Support of Motion for Relief from
the Automatic Stay; (3) [proposed] Order Granting Relief from the Automatic
Stay; and (4) Certificate of Service** to be filed electronically with the Clerk of
Bankruptcy Court through ECF, and that the following has been served with a copy of
said documents through notification by ECF or by first class mail:

Jamie R. Pierce, Esq.                                  Sarah J. Wencil
Hinshaw & Culbertson LLP                               Office of the U.S. Trustee
333 South Seventh Street                               1015 U.S. Courthouse
Suite 2000                                             300 South Fourth Street
Minneapolis, MN 55402                                  Minneapolis, MN 55415
jpierce@hinshawlaw.com                                 ustpregion12.mn.ecf@usdoj.gov
                                                       Sarah.J.Wencil@usdoj.gov


James L. Wiant, Esq.                                   Corey J. Eilers, Esq.
Rinke-Noonan                                           Koepke Law Group, P.A.
1015 West St. Stephen State Bank                       3161 Fernbrook Lane, N.
1015 West St. Germain St., Suite 300                   Plymouth, MN 55447
P. O. Box 1497                                         Attorneys for Home Federal Savings Bank
St. Cloud, MN 56302
Attorneys for St. Stephen State Bank


Joe M. Lozano, Jr., Esq.                               James A. Geske, Esq.
Brice, Vander Linden & Wernick, P.C.                   Wilford & Geske
9441 LBJ Freeway, Suite 350                            7650 Currell Blvd., Suite 300
Dallas, TX 75243                                       Woodbury, MN 55125
Attorneys for CitiMortgage, Inc.                       JGeske@wilfordgeske.com


Executed:  August 19, 2008        Signed:  /e/ Maureen A. Montpetit
                                           Maureen A. Montpetit

1213739v1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

_____

In re:                                                                    Bky. Case No. 08-41984-GFK

Donald Andrew Driggs,                                                      Chapter 11 Case

                    Debtor.

_____

## ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

This matter came before the Court for hearing on the Motion of Commerce Bank

(the "Bank") seeking relief from the automatic stay of 11 U.S.C. § 362(a) of the

Bankruptcy Code and seeking expedited relief (the "Motion").  Appearances were as

noted in the record.

Based upon the proceedings, the Motion and the file herein, the Court now finds

that the Bank is entitled to the relief requested.  Accordingly,

IT IS HEREBY ORDERED that:

1.      The request for expedited relief is granted;

2.      The automatic stay of 11 U.S.C. § 362(a) of the Bankruptcy Code is

immediately terminated as to the Bank, and the Bank is authorized to exercise its rights

and remedies with respect to any and all of its collateral in which the Debtor has an

interest including, without limitation, the estate's interest in the real property and fixtures

legally described on **Exhibit A** annexed hereto; and

3.      Notwithstanding Federal Rule of Bankruptcy Procedure 4001(a)(3), this

Order is effective immediately.

Dated: _____, 2008

                                        _____
                                        The Honorable Nancy C. Dreher
                                        Chief Judge of U.S. Bankruptcy Court

1213739v1

**EXHIBIT A**

Lot 6, Block 16, Calhoun Park, Hennepin County, Minnesota