# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

_____

In re:

Donald Andrew Driggs,                                    Chapter 11

               Debtor.                                    Case No. 08-41984-GFK

_____

## NOTICE OF HEARING AND MOTION
## FOR RELIEF FROM THE AUTOMATIC STAY

_____

To:  all parties in interest identified in local rule 9013-3(a)(2):

1.      State Bank of Delano (the "Bank") moves the Court for the relief requested below and gives notice of hearing with this Motion.

2.      The hearing on this Motion will be held on **September 15, at 10:30 a.m.**, or as soon thereafter as counsel may be heard, in Courtroom 7 West, U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415.

3.      Any response to this Motion must be filed and delivered not later than September 10, 2008, which is 3 days before the time set for the hearing (excluding Saturday, Sundays, and holidays) or filed and served by mail not later than September 4, 2008, which is 7 days before the time set for the hearing (excluding Saturdays, Sundays and holidays). UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE BANKRUPTCY COURT MAY ENTER AN ORDER GRANTING THE RELIEF REQUESTED WITHOUT A HEARING.

4.      This Motion is filed under Fed. R. Bankr. P. 4001 and Local Rules 9013-1 through 9013-3. The Bank requests relief from the automatic stay imposed by 11 U.S.C.

§ 362(a) under 11 U.S.C. § 362(d)(1) and (2) with respect to one of the Debtor's boats. Specifically, the Bank requests that the Court enter an order lifting the automatic stay, so that the Bank may, at its option, exercise its rights and remedies with respect to the boat, which secures a loan from the Bank to the Debtor. The Bank further requests a waiver of the 10-day stay of order under Rule 4001(a)(3).

5.     The Debtors commenced this case on April 24, 2008 (the "Petition Date"). The case is now pending in this Court. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 1334 and 157(a), Local Rule 1070-1, 11 U.S.C. § 362(d) and applicable rules. This is a core proceeding.

**The Loan**

6.     The Debtor and the Bank entered into that certain Business Loan Agreement dated November 24, 2006 (the "**Loan Agreement**"), under which the Bank agreed to loan the Debtor $45,050 (the "**Loan**"). A true and correct copy of the Loan Agreement is attached hereto as **Exhibit A**.

7.     To evidence the Debtor's obligation to repay the Loan, the Debtor executed and delivered to the Bank a promissory note in the original principal amount of $45,050 and dated November 24, 2006 (the "**Note**"). A true and correct copy of the Note is attached hereto as **Exhibit B**.

8.     The Note was subsequently modified pursuant to that certain Change in Terms Agreement executed and delivered by the Debtor to the Bank and dated April 16, 2007 (the "**First Change-in-Terms Agreement**"), under which the maturity date of the

Note was extended to August 30, 2007. A true and correct copy of the First Change-in-Terms Agreement is attached hereto as **Exhibit C**.

9.     The Note was subsequently modified again pursuant to that certain Change in Terms Agreement executed and delivered by the Debtor to the Bank and dated October 1, 2007 (the "**Second Change-in-Terms Agreement**"), under which the maturity date of the Note was extended to April 1, 2008. A true and correct copy of the Second Change-in-Terms Agreement is attached hereto as **Exhibit D**.

10.    To secure the Debtors' obligations under the Note, the Debtor executed and delivered to the Bank that certain Commercial Security Agreement dated November 24, 2006 (the "**Security Agreement**"), under which the Debtor granted the Bank a security interest in the Debtor's 1927 Hutchinson 30' Wood Boat with Chrysler 383 V-8 Hemi Engine (the "**Boat**"). A true and correct copy of the Security Agreement is attached hereto as **Exhibit E**.

11.    In addition to the Security Agreement, the Debtor executed and delivered to the Bank that certain Notification of Assignment, Release or Grant of Secured Interest, a true and correct copy of which is attached hereto as **Exhibit F**.

12.    To perfect the Bank's security interest in the Boat, the Bank filed a UCC-1 Financing Statement with the Minnesota Secretary of State's Office on November 27, 2006, as Document No. 200614425714. A true and correct copy of the UCC-1 Financing Statement is attached hereto as **Exhibit G**.

13.    The documents identified above, and all documents and instruments related thereto, may be referred to collectively as the "Loan Documents."

14.     The Debtor defaulted under the terms of the Loan Documents by, among other things, failing to pay the Note in full upon its maturity date of April 1, 2008.

**Relief from the Automatic Stay**

15.     As of the Petition Date, the amount secured by the Boat and not paid by the Debtor exceeded, and continues to exceed, $52,000.

16.     Assuming for purposes of this Motion that the Debtors' bankruptcy schedules are accurate, the fair market value of the Boat is $45,000. Moreover, the Debtor claims in his disclosure statement and plan of reorganization that the fair market value of the Boat is $12,000. Either way, there is no equity in the Boat.

17.     Further, although this case is under Chapter 11, the Boat is not necessary to effectively reorganize. In fact, the Debtor testified at the meeting of creditors that he did not believe that the Boat was a "real crucial part" of his ability to reorganize. Attached hereto as **Exhibit H** is partial transcript of the meeting of creditors during which the Debtor so testified. Also, the Boat is in disrepair and needs to be fixed before it is seaworthy. See Exhibit H. So not only is the Boat unnecessary to reorganize, but incurring costs to repair the boat will actually hinder any attempt to reorganize. Therefore, relief from stay should be granted under 11 U.S.C. § 362(d)(2).

18.     In addition, "cause" exists for relief from stay under § 362(d)(1) because the Boat is declining in value due to faulty restoration efforts, the removal of parts, and potential wood decay. Therefore, the Bank is not adequately protected. (See Exhibit H.)

19.     Cause also exists because the Boat is not insured, as required by the Loan Documents. (See Exhibit H.)

20.    This Motion is based on all the records, files, pleadings, and proceedings in this case and upon all evidence received at the hearing in support of this Motion. The Bank does not believe that oral testimony will be required. If testimony is required, the Bank intends to call the Debtor to provide testimony in support of this Motion. In addition, pursuant to Local Rule 9013-2(c), the Bank hereby gives notice that it may call Steven Gilmer, President of the Bank, to provide testimony regarding the facts alleged herein.

WHEREFORE, the Bank respectfully moves the Court for an order as follows:

1.    Terminating the automatic stay so that the Bank may pursue all of its rights and remedies with respect to the Boat; and

2.    Waiving the 10-day stay of order pursuant to Rule 4001(a)(3).

Dated:  September 4, 2008                WINTHROP & WEINSTINE, P.A.

By: ___/e/ Michael A. Rosow_____
    Daniel C. Beck, #192053
    Michael A. Rosow, #317998

225 South Sixth Street
Minneapolis, Minnesota 55402
612-604-6649

Attorneys for State Bank of Delano

## VERIFICATION

I, Steven Gilmer, declare under penalty of perjury that I am the President of State

Bank of Delano, that I have read the foregoing document, and that the factual information

contained therein is true and correct according to the best of my knowledge, information,

and belief.

Dated:  September 4, 2008

Steven Gilmer

4009038v1

- 6 -

# BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $45,050.00 | 11-24-2006 | 04-15-2007 | 33079 | 610 | 111283 | 011 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:** Donald A. Driggs
2925 Casco Point Road
Wayzata, MN  55391

**Lender:** State Bank of Delano
1300 Babcock Blvd East, PO Box 530
Delano, MN  55328-0530

---

**THIS BUSINESS LOAN AGREEMENT** dated November 24, 2006, is made and executed between Donald A. Driggs ("Borrower") and State Bank of Delano ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement ("Loan"). Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of November 24, 2006, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until April 15, 2007.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times during the Indebtedness exists:

**Business Activities.** Borrower maintains an office at 2925 Casco Point Road, Wayzata, MN  55391. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's principal office address or any change in Borrower's name. Borrower shall do all things necessary to comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: **None.**

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents do not conflict with, result in a violation of, or constitute a default under (1) any provision of any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all liens and security interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with accounting principles acceptable to Lender, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with the following:

**Annual Statements.** As soon as available, but in no event later than sixty (60) days after the end of each fiscal year, Borrower's balance sheet and income statement for the year ended, prepared by Borrower in form satisfactory to Lender.

**Tax Returns.** As soon as available, but in no event later than sixty (60) days after the applicable filing date for the tax reporting period ended, Federal and other governmental tax returns, prepared by a tax professional satisfactory to Lender.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to


EXHIBIT
A

discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, or (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change ownership, dissolve or transfer or sell Collateral out of the ordinary course of business.

**Agreements.** Borrower will not enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan advances or to disburse Loan proceeds if: (A) Borrower or any guarantor is in default under the terms of this Agreement or any other agreement that Borrower has with Lender; (B) Borrower or any guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any guarantor, or in the value of any collateral securing any Loan; or (D) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guaranty of the Loan or any other loan with Lender; or (E) Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Default.** Borrower fails to comply with any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents.

**False Statements.** Any representation or statement made by Borrower to Lender is false in any material respect.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Insecurity.** Lender in good faith believes itself insecure.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means Donald A. Driggs and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means State Bank of Delano, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note executed by Donald A. Driggs in the principal amount of $45,050.00 dated November 24, 2006, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants,

**BUSINESS LOAN AGREEMENT**
**(Continued)**

arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

**BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED NOVEMBER 24, 2006.**

**BORROWER:**

X _____

Donald A. Driggs

**LENDER:**

**STATE BANK OF DELANO**

By: _____

Steven R. Gilmer, President

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $45,050.00 | 11-24-2006 | 04-15-2007 | 33079 | 510 | 111283 | 011 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Donald A. Driggs
2925 Casco Point Road
Wayzata, MN  55391

**Lender:** State Bank of Delano
1300 Babcock Blvd East, PO Box 530
Delano, MN  55328-0530

---

**Principal Amount: $45,050.00**         **Interest Rate: 12.000%**         **Date of Note: November 24, 2006**

**PROMISE TO PAY.** Donald A. Driggs ("Borrower") promises to pay to State Bank of Delano ("Lender"), or order, in lawful money of the United States of America, the principal amount of Forty-five Thousand Fifty & 00/100 Dollars ($45,050.00), together with interest at the rate of 12.000% per annum on the unpaid principal balance from November 24, 2006, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in one principal payment of $45,050.00 plus interest on April 15, 2007. This payment due on April 15, 2007, will be for all principal and all accrued interest not yet paid. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.  In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a **minimum interest charge of $50.00**. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: State Bank of Delano, 1300 Babcock Blvd East, PO Box 530, Delano, MN  55328-0530.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 2.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Minnesota.**

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Wright County, State of Minnesota.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $20.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: a boat described in a Commercial Security Agreement dated November 24, 2006.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. In addition, Lender shall have all the rights and remedies provided in the related documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower shall not affect Lender's right to declare a default and to exercise its rights and remedies. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any

**EXHIBIT**

**B**

party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**SECTION DISCLOSURE.** To the extent not preempted by federal law, this loan is made under Minnesota Statutes, Section 47.59.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X   COPY
Donald A. Driggs

LASER PRO Lending, Ver. 5.33.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - MN C:\CFI\LPL\D20.FC TR-3602 PR-9

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $45,050.00 | 04-16-2007 | 08-30-2007 | 33079 | 510 | 111283 | 011 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Donald A. Driggs
2925 Casco Point Road
Wayzata, MN  55391

**Lender:** State Bank of Delano
1300 Babcock Blvd East, PO Box 530
Delano, MN  55328-0530

---

**Principal Amount:  $45,050.00**          **Interest Rate:  12.000%**          **Date of Agreement:  April 16, 2007**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Consumer Promissory Note dated November 24, 2006 in the amount of $45,050.00.

**DESCRIPTION OF COLLATERAL.** 1927 Hutchinson 30' Wood Runabout Boat with Chrysler 383 V-8 Hemi Engine.

**DESCRIPTION OF CHANGE IN TERMS.** Extend Maturity date to August 30, 2007.

**PROMISE TO PAY.** Donald A. Driggs ("Borrower") promises to pay to State Bank of Delano ("Lender"), or order, in lawful money of the United States of America, the principal amount of Forty-five Thousand Fifty & 00/100 Dollars ($45,050.00), together with interest at the rate of 12.000% per annum on the unpaid principal balance from April 16, 2007, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in one principal payment of $45,050.00 plus interest on August 30, 2007. **This payment due on August 30, 2007, will be for all principal and all accrued interest not yet paid.** Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Interest on this loan is computed on a 365/360 simple interest basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a **minimum interest charge of $50.00.** Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: State Bank of Delano, 1300 Babcock Blvd East, PO Box 530, Delano, MN  55328-0530.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this loan shall be increased by 2.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Minnesota.**

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Wright County, State of Minnesota.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $20.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by Commerical Security Agreement dated November 24, 2006 on 1927 Hutchinson 30' Wood Runabout Boat with Chrysler 383 V-8 Hemi Engine.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced by or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement, then all persons signing below acknowledge that this Agreement is given conditionally, based on the



**EXHIBIT**
**C**

Loan No: 33079

Page 2

representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it.  This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**SUCCESSORS AND ASSIGNS.**  Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns.  If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**MISCELLANEOUS PROVISIONS.**  If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement.  Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them.  In addition, Lender shall have all the rights and remedies provided in the related documents or available at law, in equity, or otherwise.  Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently.  Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower shall not affect Lender's right to declare a default and to exercise its rights and remedies.  Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor.  Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability.  All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone.  All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.  The obligations under this Agreement are joint and several.

**SECTION DISCLOSURE.**  To the extent not preempted by federal law, this loan is made under Minnesota Statutes, Section 47.59.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT.  BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

BORROWER:

X  COPY
Donald A. Driggs

LASER PRO Lending, Ver. 5.36.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2007.  All Rights Reserved.  - MN  C:\CPI\LPL\D20C.FC  TR-2804  PR-9

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $45,050.00 | 10-01-2007 | 04-01-2008 | 33079 | 510 | 111283 | 011 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Donald A. Driggs
2925 Casco Point Road
Wayzata, MN 55391

**Lender:** State Bank of Delano
1300 Babcock Blvd East, PO Box 530
Delano, MN 55328-0530

---

**Principal Amount: $45,050.00**          **Interest Rate: 12.000%**          **Date of Agreement: October 1, 2007**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note dated November 24, 2006 in the amount of $45,050.00.

**DESCRIPTION OF COLLATERAL.** 1927 Hutchinson 30' Wood Runabout Boat with Chrysler 383 V-8 Hemi Engine.

**DESCRIPTION OF CHANGE IN TERMS.** Extend Maturity date to April 1, 2008.

**PROMISE TO PAY.** Donald A. Driggs ("Borrower") promises to pay to State Bank of Delano ("Lender"), or order, in lawful money of the United States of America, the principal amount of Forty-five Thousand Fifty & 00/100 Dollars ($45,050.00), together with interest at the rate of 12.000% per annum on the unpaid principal balance from October 1, 2007, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in one principal payment of $45,050.00 plus interest on April 1, 2008. This payment due on April 1, 2008, will be for all principal and all accrued interest not yet paid. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Interest on this loan is computed on a 365/360 simple interest basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a **minimum interest charge of $50.00**. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: State Bank of Delano, 1300 Babcock Blvd East, PO Box 530, Delano, MN 55328-0530.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this loan shall be increased by 2.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Minnesota.**

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Wright County, State of Minnesota.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $20.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by Commerical Security Agreement dated November 24, 2006 on 1927 Hutchinson 30' Wood Runabout Boat with Chrysler 383 V-8 Hemi Engine.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the



**EXHIBIT**
**D**

tabbies®

**CHANGE IN TERMS AGREEMENT**
**(Continued)**

| Loan No: 33079 | Page 2 |
|---|---|

representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. In addition, Lender shall have all the rights and remedies provided in the related documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower shall not affect Lender's right to declare a default and to exercise its rights and remedies. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

**SECTION DISCLOSURE.** To the extent not preempted by federal law, this loan is made under Minnesota Statutes, Section 47.59.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

**BORROWER:**

X  COPY
Donald A. Driggs

LASER PRO Lending, Ver. 5.36.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2007.  All Rights Reserved.  - MN  C:\CFI\LPL\D20C.FC  TR-3604  PR-9

**COMMERCIAL SECURITY AGREEMENT**

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $45,050.00 | 11-24-2006 | 04-15-2007 | 33079 | 510 | 111283 | 011 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Grantor:**  Donald A. Driggs
2925 Casco Point Road
Wayzata, MN  55391

**Lender:**  State Bank of Delano
1300 Babcock Blvd East, PO Box 530
Delano, MN  55328-0530

THIS COMMERCIAL SECURITY AGREEMENT dated November 24, 2006, is made and executed between Donald A. Driggs ("Grantor") and State Bank of Delano ("Lender").

**GRANT OF SECURITY INTEREST.**  For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.**  The word "Collateral" as used in this Agreement means the following described property in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

**1927 Hutchinson 30' Wood Runabout Boat with Chrysler 383 V-8 Hemi Engine**

In addition, the word "Collateral" also includes all the following:

(A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**RIGHT OF SETOFF.**  To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.**  With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.**  Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

**Notices to Lender.**  Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the authorized signer(s); (4) change in Grantor's principal office address; (5) change in Grantor's principal residence; (6) conversion of Grantor to a new or different type of business entity; or (7) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or principal residence will take effect until after Lender has received notice.

**No Violation.**  The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party.

**Enforceability of Collateral.**  To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.**  Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.**  Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Minnesota, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.**  Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.**  Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.**  Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.**  Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.**  Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs,



EXHIBIT

E

reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help,

repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Minnesota Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** **This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Minnesota.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Wright County, State of Minnesota.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents

necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means Donald A. Driggs and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto or common law, and shall also include pollutants, contaminants, polychlorinated biphenyls, asbestos, urea formaldehyde, petroleum and petroleum products, and agricultural chemicals.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Donald A. Driggs.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means State Bank of Delano, its successors and assigns.

**Note.** The word "Note" means the Note executed by Donald A. Driggs in the principal amount of $45,050.00 dated November 24, 2006, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED NOVEMBER 24, 2006.**

**GRANTOR:**

X _____
   Donald A. Driggs

FS-2017-04

MINNESOTA DEPARTMENT OF PUBLIC SAFETY
Driver and Vehicle Services Division
ST. PAUL, MINNESOTA 55101

NOTIFICATION OF ASSIGNMENT, RELEASE OR GRANT OF SECURED INTEREST
(instructions on reverse side)

| YEAR | MAKE | TYPE | MODEL | VEHICLE IDENTIFICATION NO. | TITLE NO. |
|---|---|---|---|---|---|
| 1927 | Hutchinson 30' Wood Runabout Boat | | with Chrysler 383 V-8 Hemi Engine | | |

| OWNER(S) NAME(S) | SECURED PARTY'S NAME |
|---|---|
| Donald A. Driggs | State Bank of Delano |

| STREET ADDRESS | STREET ADDRESS | MINNESOTA TAX ID. NO. |
|---|---|---|
| 2925 Casco Point Road | 1300 Babcock Blvd East, PO Box 530 | |

| CITY | STATE | ZIP CODE | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|---|
| Wayzata | MN | 55391 | | Delano | MN | 55328-053 |
| 0 | | | A | | | |

SIGNATURE OF OWNER(S) NECESSARY ONLY WITH GRANT

SIGNATURE AND TITLE OF AUTHORIZED AGENT

☐ ASSIGNMENT    The secured party named in Section A has assigned his interest to the secured party named in Section B.

☐ RELEASE    The secured party named in Section A no longer claims a security interest in the vehicle described above.  Date of Release _____

☒ GRANT    The owner(s) have granted to the secured party named in Section A, a security interest in the vehicle described above.

Date of Security Agreement _____

**- NOTICE -**
**This form must be notarized to release a lien.**

Subscribed and sworn to before me this _____ day of _____, _____.

_____
NOTARY PUBLIC

_____
COUNTY

_____
MY COMMISSION EXPIRES

| B | ASSIGNEE'S NAME, NECESSARY ONLY WITH ASSIGNMENT | | |
|---|---|---|---|
| | STREET ADDRESS | MINNESOTA TAX ID. NO. | |
| | CITY | STATE | ZIP CODE |

**EXHIBIT**

F

**INSTRUCTIONS**

1. The Assignor must complete either the reassignment or certificate of title or on the title to assign their interest. The lienholder's name and address are entered in Section A. The name and address of the assignee is entered in Section B.

2. If secured party shown on existing certificate of title wishes to assign its interest a fee of $1.00 must accompany this assignment. If the assignor does not have the certificate in his possession, he must deliver the assignment to the owner possessing the title who forwards the title and the assignment to the Department of Public Safety for issuance of a new Certificate of Title.

3. For an assignment noted concurrently with the secured interest, no fee is required. The assignment accompanies the granting of a secured interest.

**RELEASE**

1. This form is to be completed within 15 days after satisfaction of security agreement by the secured party involved. Its name and address are entered in Section A.

2. This form is then sent to the owner in possession of the certificate of title. The owner should attach the form to the title and may turn it in to the Department of Public Safety for issuance of a clear title.

**GRANT**

1. A fee of $2.00 must accompany this document. Make checks payable to the Driver and Vehicle Services Division.

2. The name of the secured party being added is entered in Section A. The owner in possession of the Certificate of Title must attach this form to the Certificate of Title and mail them to the Department of Public Safety.

#1112 aad 1

# UCC FINANCING STATEMENT

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER (optional)** | **Filing Number:** 200614425714 |
| | **Filing Date:** 11/27/2006 |
| **B. SEND ACKNOWLEDGMENT TO:** (Name and Address)<br>**Cherie VanErp**<br>**State Bank of Delano**<br>**PO Box 530**<br><br>**DELANO, MN 55328** | **Filing Time:** 10:53 am |
| | **Processing Office:** State of Minnesota<br>Secretary of State |
| | **Filed By:** UCCOnlineFiling |

## 1. DEBTOR'S EXACT FULL LEGAL NAME
### INDIVIDUAL'S NAME

| Last Name<br>**DRIGGS** | First Name<br>**DONALD** | Middle Name<br>**A** | | Suffix |
|---|---|---|---|---|
| Mailing Address<br>**2925 CASCO POINT ROAD** | City<br>**WAYZATA** | State<br>**MN** | Postal Code<br>**55391** | Country<br>**USA** |
| Tax ID #: SSN or EIN | | | | |

## 2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME
### INDIVIDUAL'S NAME

| Last Name | First Name | Middle Name | | Suffix |
|---|---|---|---|---|
| Mailing Address | City | State | Postal Code | Country |
| Tax ID #: SSN or EIN | | | | |

## 3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)
### ORGANIZATION'S NAME
**STATE BANK OF DELANO**

| Mailing Address<br>**PO BOX 530** | City<br>**DELANO** | State<br>**MN** | Postal Code<br>**55328** | Country<br>**USA** |
|---|---|---|---|---|

**4.** This FINANCING STATEMENT covers the following collateral :

1927 Hutchinson 30` Wood Boat w/Chrysler 38C CI Engine   (Registration #1927-GF)

| 5. ALTERNATIVE DESIGNATION (if applicable) | ☐ Lessee/Lessor | ☐ Consignee/Consignor | ☐ Bailee/Bailor | ☐ Seller/Buyer | ☐ A.G. Lien | ☐ Non-UCC Filing |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    (if applicable) | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) (ADDITIONAL FEE)    (optional) | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA:**

**EXHIBIT**

G

1

## Transcript of Hearing - Section 341 Meeting
### Donald Andrew Driggs

Bky. Case No. 08-41984
June 18, 2008
2:00 p.m., Minneapolis, Minnesota

| | |
|---|---|
| Sarah Wencil ("Wencil") | This is the Section 341 meeting for Donald Andrew Driggs, Bankruptcy Case No. 08-41984. This meeting is being held on June 18, 2008 at two o'clock in Minneapolis, Minnesota. Chapter 11 Petition was filed on April 24, 2008. Appearing for the U.S. Trustees is trial attorney Sarah J. Wencil. Debtor's counsel? |
| Jamie Pierce ("Pierce") | Jamie Pierce. |
| Wencil | And Debtor? |
| Donald A. Driggs ("Driggs") | Donald A. Driggs. |
| Wencil | Could you spell your name please, Mr. Driggs? |
| Driggs | Donald – D-o-n-a-l-d Andrew – A-n-d-r-e-w Driggs – D-r-i-g-g-s. |
| Wencil | Thank you. And then appearances by anyone present who may have questions for the Debtor? |
| Christopher Camardello | Christopher Camardello. C-a-m-a-r-d-e-l-l-o of Winthrop & Weinstine for State Bank of Delano. |
| Lorie Klein | Lorie Klein – K-l-e-i-n for Commerce Bank. |
| Corie Eilers | Corie Eilers from Koepke Law Group on behalf of Home Federal Savings Bank. |
| Wencil | Could the reporters swear in Mr. Driggs please? |
| Reporter | Could you raise your right hand? Do you solemnly swear that this testimony you are about to give relative to this cause is the truth, the whole truth and nothing but the truth, so help you God? |
| Driggs | Yes. |
| Wencil | Mr. Driggs, is your residence 2925 Casco Pt., Wayzata? |
| Driggs | Yes, it is. |
| Wencil | And are you familiar with the schedules and the statement of financial affairs filed in this case? |
| Driggs | Yes, I am. |



| | |
|---|---|
| Camardello | Mr. Driggs, my name is Chris Camardello. I represent State Bank of Delano. I just have a few questions about my client's collateral. Starting with the boat, the 1927 Hutchinson-- |
| Driggs | Uh-huh. |
| Camardello | Where is that boat right now? |
| Driggs | I apologize. I do not have the address. Um, it's—it's uh in a pole barn in—in—near Winsted, Minnesota. |
| Camardello | Do you know who has it? |
| Driggs | The gentleman's name is Shawn(?), and I can't pronounce his last name. It's like Chippenheimer(phonetically) or something like that. But I can uh—I can get that information and I just made an agreement, uh, to uh, get possession of the boat and move it to a different storage, you know put it in storage someplace else. |
| Camardello | So you have an, an agreement with a new storage facility? |
| Driggs | I have a verb—I have a verbal agreement to get possession of the boat. I don't know where I'm gonna put it yet. |
| Camardello | When do you plan on getting possession of it? |
| Driggs | Uh, whenever I—whenever I can. Um, my priority is to do the paperwork for the bankruptcy, and then when I get the—if we get a break—I—I've made arrangements to borrow a truck and try to move the boat. Uh, we had tentatively planned to move it last Thursday. Um, but my schedule didn't permit me to do that. |
| Camardello | You'll let us know when you're going to move the boat, where, where it will be? |
| Driggs | Yes, I will. |
| Camardello | Is it insured? |
| Driggs | It is not. |
| Camardello | I think you testified earlier that it's not operational? |
| Driggs | It's in pieces. It's not operational. |
| Camardello | What—what would it take to make it operational, to get it to work? |
| Driggs | Depending on who you ask um, um you have to put the transom on it, the back of the boat is taken off. Some of the boards were taken off the sides and you could spend anywhere from uh ten to fifty thousand dollars. It depends on what your definition of "operational." |

| Camardello | So $10,000 would probably just get it to float.  Fifty thousand would make it a nice boat? |
| --- | --- |
| Driggs | Right.  It would float, but, but it would probably be destroyed because it wouldn't be varnished up properly and all that stuff.  I—you know, I doubt you could do it for ten thousand. |
| Camardello | Is that something a local boat person could fix, or is it the specialized work that would have to go someplace else? |
| Driggs | No, I think a local person could do it, that there's about a two-year backup. |
| Camardello | So basically to get this boat running, you believe it's about two years and anywhere from ten to fifty thousand dollars to get it going? |
| Driggs | Probably. |
| Camardello | And what do you think the value of that boat is now, as is? |
| Driggs | Um-- |
| Pierce | --Is this the Hutchinson?-- |
| Driggs | --I suppose between ten and uh, ten and forty-five thousand.  I had an offer on it for forty-five thousand.  Um, a couple years ago. |
| Camardello | In its current condition, no one would pay forty-five thousand, would they? |
| Driggs | Well, the gentleman who made the offer was—was willing to buy it in— and knew the condition and documented it and um was the only person in the United States that wanted that boat bad enough to pay that kind of price. |
| Camardello | Do you remember that buyer's name (laughter). |
| Driggs | Um, I don't, but I um, I could probably find—I'm sure I could find him. |
| Camardello | Okay.  What are your intentions with the boat?  I know you want to get it and store it someplace else, but eventually you wanna rent it or fix it, store it, sell it? |
| Driggs | Um, I would like to keep it.  Um-- |
| Camardello | Do you believe that boat is necessary to your reorganization? |
| Driggs | I don't know what that means. |
| Camardello | Well, in Chapter 11 you're here to reorganize your debts.  Uh, I think you testified earlier that you wanted to sell some properties, maybe lease some properties.  Is that boat an asset that you believe is necessary for you to keep, sell, lease or whatever, for you to reorganize, for you to confirm a plan? |

| Driggs | I think it's one-half of one percent of my total thing. Um, I don't think it's a real crucial part. I think that it was a good-faith effort on my part to give some kind of reasonable collateral to get short-term money to uh keep my payments current with the Bank of Delano. Um, the intent was not to, uh, you know, sell it or, you know I figured that someday I would uh, be able to fix it and uh, and possibly use it. |
|---|---|
| Camardello | All right. Let's turn to the Island, the property at 4400 Deering Island. You testified earlier it's not occupied now. |
| Driggs | That's correct. |
| Camardello | And do you intend to lease or sell it? |
| Driggs | I intend to uh do both. |
| Camardello | Simultaneously, or lease it for a while and then sell it, or-- |
| Driggs | I just spent the summer and I—I uh I probably put thirty—I redid the house. I put a new roof on the house, a $35,000 wood-shake roof. Did it myself along with some—some—some help. I did the entire interior. I did all the siding, the place has been gutted and rebuilt from the inside out and I did that primarily so that I could sell it. However, the market is such that I found a real estate agent who says that we can lease it for as high as $2,000 a weekend or a week. They do a seven-day minimum deal, but it's primarily weekend rental. And as a—between now and the time that we sell it um I hope to uh, you know, lease it and, and create income to—to uh make payments. |
| Camardello | Do you have any—anyone currently in—interested in leasing it? Anybody you know of whose interested in renting it? |
| Driggs | I personally don't know the name of a person. My understanding is that there were several people that were interested in leasing it, um, a couple weeks ago. |
| Camardello | But, no leases were signed up with those people? |
| Driggs | Uh, no. |
| Camardello | And, how—how was it your understanding that some people were interested? Were they talking to your broker or agent? |
| Driggs | There's a real estate broker, Lake Minnetonka, who specializes in island properties and he has a website, and-- |
| Camardello | --Who is the—who is the broker you're working with there? |
| Driggs | Um, his name is Paul Larson. He's from Burnett—Coldwell Burnett, Wayzata office. |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

_____

In re:

Donald Andrew Driggs,                              Chapter 11

             Debtor.                               Case No. 08-41984-GFK

_____

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

_____

State Bank of Delano (the "Bank") submits this Memorandum in Support of its Motion for Relief from the Automatic Stay.

## JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of the Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G), and (O). Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

## FACTS

The allegations and the defined terms in the Bank's Motion for Relief from the Automatic Stay are expressly incorporated herein.

## ARGUMENT

The Bank is entitled to relief from the automatic stay under 11 U.S.C. § 362(d) to exercise its rights and remedies against the Boat because the Bank is not adequately protected, there is no equity in the Boat, and the Boat is not necessary to an effective reorganization.

Section 362(d)(1) and (2) of the Bankruptcy Code provide:

(d)      On request of a party in interest and after notice and a hearing, the court
shall grant relief from the stay provided under subsection (a) of this section,
such as by terminating, annulling, modifying, or conditioning such stay –

   (1)      for cause,  including the lack of adequate protection of an interest in
   property of such party in interest; [or]

   (2)      with respect to a stay of an act against property under subsection (a)
   of this section, if –

      (A)      the debtor does not have an equity in such property;  and

      (B)      such property is not necessary to an effective reorganization.

Cause exists in this case for relief from the automatic stay because the Bank is not

adequately protected.  According to the Debtor's bankruptcy schedules, the value of the

Boat as of the date of filing was $45,000. The Debtor now claims in its proposed plan of

reorganization that the Boat is worth $12,000. Assuming for purposes of this Motion that

the Debtor's numbers are accurate, the Boat is declining in value. But the Debtor has

offered no form of adequate protection to maintain the Bank's collateral position. The

decline in the Boat's value is due, in part, to the Debtor's failure to maintain the Boat in

good condition.

Cause also exists for relief from stay because the Debtor has failed to maintain

insurance on the Boat, as required by the Loan Documents.

The Bank is also entitled to relief from stay because there is no equity in the Boat

and the Boat is not necessary for an effective reorganization. The Debtor's values of

$45,000 and $12,000 are both below the debt owed to the Bank, which, as of the petition

date, was over $52,000. Therefore, there is no equity in the Boat. Further, the Boat is not

necessary to effectively reorganize. In fact, the Debtor testified at his meeting of creditors

that the Boat was not a "real crucial part" of his ability to reorganize. Also, the Boat is in

disrepair and needs to be fixed before it is seaworthy. So not only is the Boat unnecessary

to reorganize, but incurring costs to repair the boat will actually hinder any attempt to

reorganize and deplete the estate of cash that could be used to pay creditors.

Dated:  September 4, 2008                     WINTHROP & WEINSTINE, P.A.


                                              By:    /e/ Michael A. Rosow
                                                 Daniel C. Beck, #192053
                                                 Michael A. Rosow, #317998

                                              225 South Sixth Street
                                              Minneapolis, Minnesota 55402
                                              612-604-6649

                                              Attorneys for State Bank of Delano
4011169v1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

In re:

Donald Andrew Driggs,                              Chapter 11

                        Debtor.                    Case No. 08-41984-GFK

---

**UNSWORN AFFIDAVIT OF SERVICE**

---

I, Theresa N. Cooke, declare under penalty of perjury that on September 4, 2008, I filed

via ECF a copy of the following:

NOTICE OF HEARING AND MOTION FOR RELIEF FROM THE AUTOMATIC
STAY;

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RELIEF FROM THE
AUTOMATIC STAY; and

PROPOSED ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC
STAY

which will be served via ECF on the following parties:

- Alice A Blanco     bkmail@mccalla.com
- Corey J. Eilers     ndonahue@koepkelawgroup.com, mkisielius@koepkelawgroup.com
- James A Geske     jgeske@wilfordgeske.com, rtipler@wilfordgeske.com;mroue-chambers@wilfordgeske.com
- David G Hellmuth     dhellmuth@hjlawfirm.com
- Lorie A. Klein     klein@moss-barnett.com, montpetitm@moss-barnett.com
- Joe M. Lozano     notice@bkcylaw.com
- Jamie R. Pierce     jpierce@hinshawlaw.com, akulbeik@hinshawlaw.com;msandback@hinshawlaw.com
- James A. Rubenstein     rubenstein@moss-barnett.com, montpetitm@moss-barnett.com

- US Trustee    ustpregion12.mn.ecf@usdoj.gov

- Thomas G. Wallrich    twallrich@hinshawlaw.com,
  jpierce@hinshawlaw.com;akulbeik@hinshawlaw.com;jaudette@hinshawlaw.com

- Sarah J Wencil    Sarah.J.Wencil@usdoj.gov

- James L. Wiant    jwiant@Rnoon.com

Dated:  September 4, 2008

                                        /s/ *Theresa N. Cooke*
                                        Theresa N. Cooke

Winthrop & Weinstine, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, MN  55402-4629
(612) 604-6400

4014552v1

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

In re:

Donald Andrew Driggs,                          Chapter 11

            Debtor.                            Case No. 08-41984-GFK

## ORDER GRANTING MOTION
## FOR RELIEF FROM THE AUTOMATIC STAY

This matter came before the undersigned on September 15, 2008, on a motion for relief from the automatic stay (the "Motion") brought by State Bank of Delano (the "Bank"). Michael A. Rosow appeared on behalf of the Bank; other appearances are noted in the record. The Court, being fully advised of the premises, and finding that: (i) the Bank's interest in the Debtor's 1927 Hutchinson 30' Wood Boat with Chrysler 383 V-8 Hemi Engine (the "Boat") is not adequately protected; (ii) the Debtor has no equity in the Boat; and (iii) the Boat is not necessary to an effective reorganization,

IT IS HEREBY ORDERED:

1.  The Bank is granted relief from the automatic stay to exercise its rights and remedies with respect to the Boat;

2.  This Order shall be effective immediately upon entry, notwithstanding Federal Rule of Bankruptcy Procedure 4001(a)(3).

Dated: September _____, 2008                BY THE COURT:

                                            _____
                                            United States Bankruptcy Judge

4011171v1