## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                    Chapter 11 Case

Donald Andrew Driggs,                                     Case No.:08-41984

Debtor.

## DEBTOR'S FIRST MODIFIED CHAPTER 11 PLAN OF REORGANIZATION

Donald Andrew Driggs ("Debtor") proposes the following as his Chapter 11 Plan of Reorganization pursuant to the United States Bankruptcy Code.

## I.  INTRODUCTION

Defined Terms.  Terms used in this Plan have the meanings given to them in the Bankruptcy Code unless the context requires otherwise.  In addition, the following definitions will be used for purposes of the Plan:

"Effective Date" means the first day of the first month following a final order confirming the Plan.

## II.  TREATMENT OF CLAIMS AND INTERESTS

### 2.1    Classified Claims and Interests  -  Description of Holders and Treatment

Class 1 - Class of Unsecured Creditors

Class 1 consists of the general unsecured claims against the Debtor ("Class 1 Claims"). Assuming there are no deficiency claims related to the claims secured by the rental properties, the Debtor estimates that Class 1 Claims, including deficiency claims described below, total approximately $1,775,287.

Treatment of Class 1

Creditors holding Class 1 Claims will be paid their pro rata share of  $1,500 per quarter commencing on March 31, 2009 for a total of forty one quarters.  Class 1 claims will also receive their pro-rata share of any proceeds of avoidance actions after payment of costs and administrative expenses incurred in prosecuting such actions.

Class 2 – Crown Bank

The Class 2 Claim is made up of the Debtor's obligations to Crown Bank under that certain Note dated December 22, 2004 in the original principal amount of $350,000 (the "Class 2 Note").

The Debtor's obligations under the Class 2 Note are secured under that certain Mortgage dated December 22, 2004 (the "Crown Mortgage"), under which the Debtor granted Crown a mortgage interest in the 3990 Sunset property.  The Crown Mortgage was recorded in the office of the Hennepin County Recorder on February 7, 2005 (Torrens) and February 9, 2005 (Abstract) as document numbers 8524447 (Abstract) and 74075084 (Torrens).

Class 2 is in a second position of priority on the 3990 Sunset property.  The 3990 Sunset property is legally described as follows:

> Lot 26, Togo Park Lake Minnetonka, Hennepin County, Minnesota

As of the Filing Date, the unpaid balance under the Crown Note, including principal and unpaid interest, was $356,684.55.  For purposes of the Plan, the fair market value of the 3990 Sunset property will be deemed to be $800,000.  As such, Class 2 is secured to $194,817.49 and unsecured to $161,867.06.

Treatment of Class 2 Claim

The Class 2 Note will be amended as follows.  The principal will be $194,817.49.  Interest will accrue at the rate of 4 % for 5 years, 5.5% for the next 10 years.  Payments will be interest only for the first five years and will be $649.33, and then the outstanding principal and interest will be amortized over 30 years with the entire principal and any interest owing to be due and payable in full after the fifteenth year (15-year balloon).  After five years, monthly payments are expected to be $1,106.15.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Crown Bank will have an allowed unsecured claim in the amount of $161,867.06.

Class 3 – Aurora Loan Services

The Class 3 Claim is made up of the Debtor's obligations to Aurora Loan Services  ("Aurora"), under that certain Note dated November 22, 2004 in the original principal amount of $481,300 (the "Class 3 Note").

The Debtor's obligations under the Class 3 Note are secured under that certain Mortgage dated November 22, 2004 (the "Aurora Mortgage"), under which the Debtor granted Aurora a mortgage interest in the 3245 Hennepin property.  The Aurora Mortgage was recorded in the office of the Hennepin County Recorder on January 7, 2005 as document number 8504871.

Class 3 is in a first position of priority on the 3245 Hennepin property.  The 3245 Hennepin property is legally described as follows:

> Lot 10, Block 25, Remington's Second Addition, Hennepin County, Minnesota

As of the Filing Date, the unpaid balance under the Aurora Note, including principal and unpaid interest, was $509,896.  For purposes of the Plan, the fair market value of the 3245 Hennepin property will be deemed to be $350,000.  As such, Class 3 is partially secured and partially unsecured.

Treatment of Class 3 Claim

The Class 3 Note will be amended as follows.  The principal will be $350,000.  Interest will accrue at the rate of 4 % for 5 years, 5.5% for the balance of the term of the loan and the maturity date will remain the same as the original note (November 30, 2034).

Payments will be interest only for the first five years and will be $1166.66, and then payments will be amortized over the remaining term of the loan with the entire principal and any interest owing to be due in full by the maturity date.  After five years, payments are expected to be $1,987.26.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Aurora Loan Services will have an allowed unsecured claim in the amount of $159,896.

Class 4(a) - CitiMortgage
The Class 4(a) Claim is made up of the Debtor's obligations to CitiMortgage Loan Services ("CitiMortgage"), under that certain Note dated January 29, 2003 in the original principal amount of $560,000 (the "Class 4(a) Note").

The Debtor's obligations under the Class 4(a) Note are secured under that certain Mortgage dated January 29, 2003 (the "CitiMortgage Mortgage"), under which the Debtor granted CitiMortgage a mortgage interest in the 3990 Hennepin property.  The CitiMortgage Mortgage was recorded in the office of the Hennepin County Recorder on March 13, 2003 (Abstract) and April 2, 3003 (Torrens) as document numbers 7974914 (Abstract) and 3713492 (Torrens).

Class 4(a) is in a first position of priority on the 3990 Sunset property.  The 3990 Sunset property is  legally described as follows:

> Lot 26, Togo Park Lake Minnetonka, Hennepin County, Minnesota

As of the Filing Date, the unpaid balance under the CitiMortgage Note, including principal and unpaid interest, was $605,182.51.  For purposes of the Plan, the fair market value of the 3990 Sunset property will be deemed to be $800,000.  As such, Class 4(a) is fully secured.

Treatment of Class 4(a) Claim

The Class 4(a) Note will be amended as follows.  The principal will be $605,182.51.   Interest will accrue at the rate of 4 % for 5 years, 5.5% for the balance of the term of the loan and the maturity date will remain the same as the original note (January 31, 2033). Payments will be interest only for the first five years and will be $2,017.25 and then payments will be amortized over the remaining term of the loan with the entire principal and any interest owing to be due in full by the maturity date. After five years, monthly payments are expected to be $3,436.16. There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Class 4(b) – CitiMortgage

The Class 4(b) Claim is made up of the Debtor's obligations to CitiMortgage Loan Services ("CitiMortgage"), under that certain Note dated December 5, 2002 in the original principal amount of $243,740 (the "Class 4(b) Note").

The Debtor's obligations under the Class 4(b) Note are secured under that certain Mortgage dated December 5, 2002 (the "Second CitiMortgage Mortgage"), under which the Debtor granted CitiMortgage a mortgage interest in the 3201 Hennepin property.  The Second CitiMortgage Mortgage was recorded in the office of the Hennepin County Recorder on January 17, 2003 as document number 7920525

Class 4(b) is in a first position of priority on the 3201 Hennepin property.  The 3201 Hennepin property is legally described as follows:

> Lot 14, Block 24, Remington's Second Addition to Minneapolis, Hennepin County, Minnesota

As of the Filing Date, the unpaid balance under the CitiMortgage Note, including principal and unpaid interest, was $259,347.82.  For purposes of the Plan, the fair market value of the 3201 Hennepin property will be deemed to be $175,000.  As such, Class 4(b) is partially secured and partially unsecured.

Treatment of Class 4(b) Claim

The Class 4(b) Note will be amended as follows.  The principal will be $175,000.  Interest will accrue at the rate of 4 % for 5 years, 5.5% for the balance of the term of the loan and the maturity date will remain the same as the original note (December 31, 2032). Payments will be interest only for the first five years and will be $583.33, and then payments will be amortized over the remaining term of the loan with the entire principal and any interest owing to be due in full by the maturity date.  After five years, payments are expected to be $993.63. There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms

of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

CitiMortgage will have an allowed unsecured claim in the amount of $84,347.82

Class 5 – Wachovia Mortgage

The Class 5 Claim is made up of the Debtor's obligations to Wachovia Mortgage ("Wachovia"), under that certain Note dated December 29, 2006 in the original principal amount of $475,000 (the "Class 5 Note").

The Debtor's obligations under the Class 5 Note are secured under that certain Mortgage dated December 29, 2006 (the "Wachovia Mortgage"), under which the Debtor granted Wachovia a mortgage interest in the 809 Portland property. The Wachovia Mortgage was recorded in the office o the Hennepin County Recorder on January 4, 2007 as document number 4001244.

Class 5 is in a first position of priority on the 809 Portland property. The 809 Portland property is legally described as follows:

Lot 13, Block 3, Bryant's addition to St. Paul, Ramsey County, Minnesota

As of the Filing Date, the unpaid balance under the Class 5 Note, including principal and unpaid interest, was $476,783.98. For purposes of the Plan, the fair market value of the 809 Portland property will be deemed to be $425,000. As such, Class 5 is partially secured and partially unsecured.

Treatment of Class 5 Claim

The Class 5 Note will be amended as follows. The principal will be $425,000. Interest will accrue at the rate of 4 % for 5 years, 5.5% for the balance of the term of the loan and the maturity date will remain the same as the original note (December 31, 2036). Payments will be interest only for the first five years and will be $1,416.66, and then payments will be amortized over the remaining term of the loan with the entire principal and any interest owing to be due in full by the maturity date. After five years the payments are expected to be $2,413.10. There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time. The remaining terms of the underlying loan documents will remain in effect. To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Wachovia Mortgage will have an allowed unsecured claim in the amount of $51,783.98.

Class 6 – Heritage Bank, N.A.

The Class 6 Claim is made up of the Debtor's obligations to Heritage Bank, N.A. ("Heritage"), under that certain Note dated August 18, 2006 in the original principal amount of $115,000 (the "Class 6 Note").

The Debtor's obligations under the Class 6 Note are secured under that certain Mortgage dated August 18, 2006 (the "Heritage Mortgage"), under which the Debtor granted Heritage a mortgage interest in the 29279 145th St. property.  The Heritage Mortgage was recorded in the office of the Kandiyohi County Recorder on August 21, 2006 as document number 543964.

Class 6 is in a first position of priority on the 29279 145th St. property.  The 29279 145th St. property is legally described as follows:

> All that part of the NW ¼ of SW ¼ of Section 4, Township 122, Range 33, Kandiyohi County, Minnesota described as follows:  Beginning at the point of intersection of the East line of the public highway running on and along the West side and line of Section 4 with the North line of the NW ¼ SW ¼ ; thence running East on and along the North line of said quarter-quarter section, for a distance of 200 feet to the point of beginning; thence running South along the East line of the property described below for a distance of 230 feet; thence East perpendicular to the last said line 14 feet; thence North parallel to the East line 230 feet to the North line of said NW ¼ SW ¼; thence West along the said North Line 14 feet to the point of beginning; and there terminating.

> AND

> A tract of land, described by meets and bounds, as follows to-wit: Beginning at the point of intersection of the East line of public highway running on and along the West side and line of Section 4 with the North line of the NW ½ SW ¼ of Section 4. all in Township 122, Range 33, Kandiyohi County, Minnesota; thence running East on and along the North line of said quarter-quarter section for a distance of 200 feet; thence running due south for a distance of 230 feet; thence running due West for a distance of 200 feet and to the East line of the public highway on and along the West line of Section 4, and thence running on and along the east line of said public highway in a northerly direction and to the point of beginning and there terminating.

As of the Filing Date, the unpaid balance under the Class 6 Note, including principal and unpaid interest, was $114,594.21.  For purposes of the Plan, the fair market value of the 29279 145th St. property will be deemed to be $75,000.  As such, Class 6 is partially secured and partially unsecured.

Treatment of Class 6 Claim

The Class 6 Note will be amended as follows.  The principal will be $75,000.  Interest will accrue at the rate of 4 % for 5 years, 5.5% for the balance of the term of the loan and the maturity date will remain the same as the original note (August 31, 2036). Payments will be interest only for the first five years and will be $250, and then payments will be amortized over the remaining term of the loan with the entire principal and any interest owing to be due in full by the maturity date. After five years payments are expected to be $425.84.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining

terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Heritage Bank will have an allowed unsecured claim in the amount of $39,594.21.

Class 7 – Wells Fargo

The Class 7 Claim is made up of the Debtor's obligations to Wells Fargo ("Wells Fargo"), under that certain Note dated December 19, 2002 in the original principal amount of $100,000 (the "Class 7 Note").

The Debtor's obligations under the Class 7 Note are secured under that certain Mortgage dated December 19, 2002 (the "Wells Fargo Mortgage"), under which the Debtor granted Wells Fargo a  mortgage interest in the 29317 145th St. property.  The Wells Fargo Mortgage was recorded in the office of the Kandiyohi County Recorder on December 23, 2002 as document number 492513.

Class 7 is in a first position of priority on the 29317 145th St. property.  The 29317 145th St. property is legally described as follows:

> That part of the South 20 rods of the West 16 rods of the SW 1/4 of the NW 1/4 of Section 4,  Township 122, Range 33, Kandiyohi County, Minnesota lying south of the following described line:  Commencing at the southwest corner of said SW 1/4 of the NW 1/4 thence on an assumed bearing of N 00 degrees 22 minutes 16 seconds W, along the west line of said SW 1/4 of the NW 1/4, a distance of 161.77 feet to the point of beginning of the line to be described; thence N 89 degrees 34 minutes 51 seconds E to the east line of said South 20 rods of the West 16 rods, and said described line terminating.

As of the Filing Date, the unpaid balance under the Class 7 Note, including principal and unpaid interest, was $96,121.34.  For purposes of the Plan, the fair market value of the 29317 145th St. property will be deemed to be $80,000.  As such, Class 7 is partially secured and partially unsecured.

Treatment of Class 7 Claim

The Class 7 Note will be amended as follows.  The principal will be $80,000.  Interest will accrue at the rate of 4 % for 5 years, 5.5% for the balance of the term of the loan and the maturity date will remain the same as the original note (December 31, 2032). Payments will be interest only for the first five years and will be $266.67, and then payments will be amortized over the remaining term of the loan with the entire principal and any interest owing to be due in full by the maturity date. After 5 years payments are expected to be $454.23.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms

of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Wells Fargo will have an allowed unsecured claim in the amount of $16,121.34.

Class 8 – St. Stephen State Bank

The Class 8 Claim is made up of the Debtor's obligations to St. Stephen State Bank ("St. Stephen"), under that certain Note dated July 12, 2005 in the original principal amount of $150,000 (the "Class 8 Note").

The Debtor's obligations under the Class 8 Note are secured under that certain Mortgage dated July 12, 2005 (the "St. Stephen 3022 Mortgage"), under which the Debtor granted St. Stephen a mortgage interest in the 3022 Hennepin property.  The St. Stephen 3022 Mortgage was recorded in the office of the Hennepin County Recorder on November 7, 2006 as document number 4258564.

The Debtor's obligations under the Class 8 Note are also secured under that certain Mortgage dated July 12, 2005 (the "St. Stephen 4400 Mortgage"), under which the Debtor granted St. Stephen a  mortgage interest in the 4440 Deering Island property.  The St. Stephen 4400 Mortgage was recorded in the office of the Hennepin County Recorder on May 12, 2006 as document number 4258564.

Class 8 is in a second position of priority on the 3022 Hennepin property.  The 3022 Hennepin property is legally described as follows:

    Lot 6, Block 16, "Calhoun Park," Hennepin County, Minnesota

Class 8 is in a second position of priority on the 4400 Deering Island property.  The 4400 Deering Island property is legally described as follows:

    Government Lot 9, Section 18, Township 117 North, Range 23 of the West Principal
    Meridian, Hennepin County, Minnesota

As of the Filing Date, the unpaid balance under the Class 8 Note, including principal and unpaid interest, was $155,674.  For purposes of the Plan, the fair market value of the 3022 Hennepin property will be deemed to be $800,000.  As such, Class 8 is fully secured.  For purposes of the Plan, the fair market value of the 4400 Deering Island will be deemed to be $900,000. Treatment of Class 8 Claim

The Class 8 Note will be amended as follows.  The principal will be $155,674.  Interest will accrue at the rate of 4 % for 5 years, 5.5% for the balance of the term of the loan and the maturity date will remain the same as the original note (July 31, 2035). Payments will be interest only for the first five years and will be $518.91, and then payments will be amortized over the remaining term of the loan with the entire principal and any interest owing to be due in full by the maturity date. After five years, payments are expected to be $883.90.  There shall be no prepayment

penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Class 8 is oversecured  and as such confirmation of the Plan shall constitute an Order discharging and releasing the St. Stephen 3022 Mortgage.  The Class 8 creditor shall sign a release of mortgage provided by the Debtor for the 3022 Hennepin property.  The collateral provided under the Plan, the mortgage on 4400 Deering Island, is the indubitable equivalent of what Class 8 had as of the commencement of the case.

Class 9 – Chase Manhattan Mortgage Corporation

The Class 9 Claim is made up of the Debtor's obligations to Chase Manhattan Mortgage Corporation ("Chase"), under that certain Note dated March 23, 2003 in the original principal amount of $640,650 (the "Class 9 Note").

The Debtor's obligations under the Class 9 Note are secured under that certain Mortgage dated March 23, 2003 (the "Chase Mortgage"), under which the Debtor granted Chase a mortgage interest in the 4400 Deering Island property.  The Chase Mortgage was recorded in the office of the Hennepin County Recorder on April 22, 2003 as document number 3723337.

Class 9 is in a first position of priority on the 4400 Deering Island property.  The 4400 Deering Island property is legally described as follows:

> Government Lot 9, Section 18, Township 117 North, Range 23 of the West Principal
> Meridian, Hennepin County, Minnesota

As of the Filing Date, the unpaid balance under the Class 9 Note, including principal and unpaid interest, was $647,627.88.  For purposes of the Plan, the fair market value of the 4400 Deering Island property will be deemed to be $900,0000.  As such, Class 9 is fully secured.

Treatment of Class 9 Claim

The Class 9 Note will be amended as follows.  The principal will be $647,627.88.  Interest will accrue at the rate of 4 % for 5 years, 5.5% for the balance of the term of the loan and the maturity date will remain the same as the original note (March 31, 2033). Payments will be interest only for the first five years and will be $2,158.75, and then payments will be amortized over the remaining term of the loan with the entire principal and any interest owing to be due in full by the maturity date. After five years, payments are expected to be $3,677.15.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.  Payments shall also include amounts sufficient to escrow for taxes and insurance.  Class 9 will retain its rights under its Mortgage to the extent of the amount owed under the Class 9 Note.

Class 10 – Home Federal Savings Bank

The Class 10 Claim is made up of the Debtor's obligations to Home Federal Savings Bank ("Home Federal"), under that certain Note dated November 22, 2002 in the original principal amount of $75,000 (the "Class 10 Note").

The Debtor's obligations under the Class 10 Note are secured under that certain Mortgage dated November 22, 2002 (the "Home Federal Mortgage"), under which the Debtor granted Home Federal a mortgage interest in the 2925 Casco Pt. property.  The Home Federal Mortgage was recorded in the office of the Hennepin County Recorder on January 3, 2003 as document number 7904718.

Class 10 is in a second position of priority on the 2925 Casco Pt. property.  The 2925 Casco Pt. property is legally described as follows:

> Lots 96 and 107, of Spring Park, according to the recorded plat thereof, and situated in Hennepin County, Minnesota.  And all that part vacated Lake Shore Avenue and the tract of land lying between said vacated Lake Shore Avenue and shore of lake defined by an extension of the boundary lines of Lot 96

As of the Filing Date, the unpaid balance under the Class 10 Note, including principal and unpaid interest, was $77,707.75.  For purposes of the Plan, the fair market value of the 2925 Casco Pt. will be deemed to be $700,000.  As such, Class 10 is unsecured.

Treatment of Class 10 Claim

Class 10 shall have an allowed unsecured claim of $77,705.75.  The Class 10 creditor shall sign a release of mortgage provided by the Debtor for the 2925 Casco Pt. property.

Class   11 – Lehman Brothers Bank

The Class 11 Claim is made up of the Debtor's obligations to Lehman Brothers Bank ("Lehman"), under that certain Note dated March 16, 2006 in the original principal amount of $910,000 (the "Class 11 Note").

The Debtor's obligations under the Class 11 Note are secured under that certain Mortgage dated March 16, 2006 (the "Lehman Mortgage"), under which the Debtor granted Lehman a mortgage interest in the 2925 Casco Pt. property.  The Lehman Mortgage was recorded in the office of the Hennepin County Recorder on April 17, 2006 as document number 8780189.

Class 11 is in a  first position of priority on the 2925 Casco Pt. property.  The 2925 Casco Pt. property is legally described as follows:

> Lots 96 and 107, of Spring Park, according to the recorded plat thereof, and situated in Hennepin County, Minnesota.  And all that part vacated Lake Shore Avenue and the tract

of land lying between said vacated Lake Shore Avenue and shore of lake defined by an extension of the boundary lines of Lot 96

As of the Filing Date, the unpaid balance under the Class 11 Note, including principal and unpaid interest, was $909,552.  For purposes of the Plan, the fair market value of the 2925 Casco Pt. property will be deemed to be $700,000.  As such, Class 11 is partially secured and partially unsecured.

Treatment of Class 11 Claim

The Class 11 Note will be amended as follows.  The principal will be $700,000.  Interest will accrue at the rate of 4 % for 5 years, 5.5% for the balance of the term of the loan and the maturity date will remain the same as the original note (March 31, 2036). Payments will be interest only for the first five years and will be $2,333.33, and then payments will be amortized over the remaining term of the loan with the entire principal and any interest owing to be due in full by the maturity date. After five years payments are expected to be $3794.52. There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Lehman Brother Bank shall have an allowed unsecured claim for $209,552.

Class   12 – JT & TJ, Inc.

The Debtor disputes this claim.  The Class 12 Claim is made up of the Debtor's obligations to JT & TJ, Inc.("JT & TJ"), under that certain Note dated February 27, 2007 in the original principal amount of $100,000 (the "Class 12 Note").

The Debtor's obligations under the Class 12 Note are secured under that certain Mortgage dated February 27, 2007 (the "JT & TJ Mortgage"), under which the Debtor granted JT & TJ a mortgage interest in the 2925 Casco Pt. property.  The JT & TJ Mortgage was recorded in the office of the Hennepin County Recorder on March 26, 2007 as document number 8955309.

Class 12 is in a third position of priority on the 2925 Casco Pt. property. The 2925 Casco Pt. property is legally described as follows:

> Lots 96 and 107, of Spring Park, according to the recorded plat thereof, and situated in Hennepin County, Minnesota.  And all that part vacated Lake Shore Avenue and the tract of land lying between said vacated Lake Shore Avenue and shore of lake defined by an extension of the boundary lines of Lot 96

Class 12 is unsecured.

Treatment of Class 12 Claim

Class 12 shall have an allowed claim of $0.  The Class 12 creditor shall sign a release of mortgage provided by the Debtor for the 2925 Casco Pt. property.

<u>Class   13 – State Bank of Delano</u>

The Class 13 Claim is made up of the Debtor's obligations to the State Bank of Delano ("Delano"), under that certain Note dated December 19, 2005 in the original principal amount of $1,244,000 (the "Class 13 Note").

The Debtor's obligations under the Class 13 Note are secured under that certain Mortgage dated December 19, 2005 (the "First Delano Mortgage"), under which the Debtor granted Delano a mortgage interest in the 4400 Deering Island property.  The First Delano Mortgage was recorded in the office of the Hennepin County Recorder on March 21, 2006 as document number 4238401.

The Debtor's obligations under the Class 13 Note are also secured under a purported Mortgage dated December 19, 2006 (the "Second Delano Mortgage"), under which the Debtor individually granted Delano a mortgage interest in nonstate property located in Wright County, Minnesota. The Second Delano Mortgage was recorded in the office of the Wright County Recorder on March 7, 2006 as document number 1000678.  However, the Wright County Property is owned not by the Debtor but by One Mile Long, LLC.

Class 13 is in a third position of priority on the 4400 Deering Island property. The 4400 Deering Island property is legally described as follows:

> Government Lot 9, Section 18, Township 117 North, Range 23 of the West Principal Meridian, Hennepin County, Minnesota

As of the Filing Date, the unpaid balance under the Class 13 Note, including principal and unpaid interest, was $1,348,378.  The fair market value of the 4400 Deering Island property will be deemed to be $900,000 and the fair market value of the Wright County Property will be deemed to be $900,000.  As such, Class 13 is partially secured and partially unsecured.  As the third mortgage holder on the Deering Island property, the secured claim on this property is worth $96,698.12.

Treatment of Class 13 Claim

The Class 13 Note will be amended as follows.  The principal will be $96,698.12.  Interest will accrue at the rate of 4 % for 5 years, 5.5% for the balance of the term of the loan and the maturity date will remain the same as the original note (December 31, 2035). Payments will be interest only for the first five years and will be $471.20, and then payments will be amortized over the remaining term of the loan with the entire principal and any interest owing to be due in full by the maturity date. After five years, payments are expected to be $560.40.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The

remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Upon payment of $96,698.12 in principal, Class 13 is required to release its mortgage on 4400 Deering Island.

State Bank of Delano shall have an allowed unsecured claim of $351,679.90.

Class 14(a) – Commerce Bank

The Class 14(a) Claim is made up of the Debtor's obligations to Commerce Bank ("Commerce"), under that certain Note dated March 29, 2004 in the original principal amount of $525,000 (the "Class 14(a) Note").

The Debtor's obligations under the Class 14(a) Note are secured under that certain Mortgage dated March 29, 2004 (the "Commerce Mortgage"), under which the Debtor granted Commerce a mortgage interest in the 3022 Hennepin property.  The Chase Mortgage was recorded in the office of the Hennepin County Recorder on March 30, 2004 as document number 3939938.

Class 14(a) is in a first position of priority on the 3022 Hennepin property.  The 3022 Hennepin property is legally described as follows:

Lot 6, Block 16, "Calhoun Park," Hennepin County, Minnesota

As of the Filing Date, the unpaid balance under the Class 14(a) Note, including principal and unpaid interest, was $543,902.61.  For purposes of the Plan, the fair market value of the 3022 Hennepin property will be deemed to be $800,000.  As such, Class 14(a) is fully secured.

Treatment of Class 14(a) Claim

The Class 14(a) Note will be amended as follows.  The principal will be $543,902.61.  Interest will accrue at the rate of 4 % for 5 years, 5.5% for the next 10 years.  Payments will be interest only for the first five years and will be $1,813.00, and then the outstanding principal and interest will be amortized over 30 years with the entire principal and any interest owing to be due and payable in full after the fifteenth year (15-year balloon).  After five years payments are expected to be $3,088.22.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Class 14(b) – Commerce Bank

The Class 14(b) Claim is made up of the Debtor's obligations to Commerce Bank ("Commerce"), under that certain Note dated September 29, 2004 in the original principal amount of $50,000 (the "Class 14(b) Note").

The Debtor's obligations under the Class 14(b) Note are secured under that certain Mortgage dated September 29, 2004 (the "3253 Commerce Mortgage"), under which the Debtor granted Commerce a mortgage interest in the 3253 Holmes property.  The 3253 Commerce Mortgage was recorded in the office of the Hennepin County Recorder on October 21, 2004 as document number 4032250.

Class 14(b) is in a second position of priority on the 3253 Holmes property.  The 3253 Holmes property is legally described as follows:

> Lot 8; and the South 4 feet front and rear of Lot 9, Block 45, "Calhoun Park," Hennepin County, Minnesota

As of the Filing Date, the unpaid balance under the Class 14(b) Note, including principal and unpaid interest, was $51,662.64.   The 3253 Holmes property has gone through foreclosure and the redemption period expires on October 11, 2008.

Treatment of Class 14(b) Claim

If the Debtor can sell the 3253 Holmes property he will either pay Class 14(b) in full or negotiate a reduced amount.  If the Debtor cannot sell the property in advance of the last day to redeem the property and redemption is not made, the Class 14(b) claim will be treated in Class 1 as unsecured unless Commerce redeems the property in which case Commerce will receive $0 on its Class 14(b) claim and Commerce will have an allowed unsecured claim of $51,662.64.

Class 14(c) – Commerce Bank

The Class 14(c) Claim is made up of the Debtor's obligations to Commerce Bank ("Commerce"), under that certain Note dated June, 4, 2004 in the original principal amount of $150,000 (the "Class 14(c) Note").

The Debtor's obligations under the Class 14(c) Note are secured under that certain Mortgage dated June 4, 2004 (the "4400 Commerce Mortgage"), under which the Debtor granted Commerce a mortgage interest in the 4400 Deering Island property.  The 4400 Commerce Mortgage was recorded in the office of the Hennepin County Recorder on March 20, 2008 as document number 4480023.

Class 14(c) is in a fifth position of priority on the 4400 Deering Island property.  The 4400 Deering Island property is legally described as follows:

> Government Lot 9, Section 18, Township 117 North, Range 23 of the West Principal Meridian, Hennepin County, Minnesota

As of the Filing Date, the unpaid balance under the Class 14(c) Note, including principal and unpaid interest, was $146,996.  For purposes of the Plan, the fair market value of the 4400

Deering Island property will be deemed to be $900,000.  As such, Class 14(c) is unsecured.  This mortgage is also clearly avoidable as a preference.

Treatment of Class 14(c) Claim

Class 14(c) shall have an allowed unsecured claim of $146,996.  The Class 14(c) creditor shall sign a release of mortgage provided by the Debtor for the 4400 Deering Island property.

Class 14(d) – Commerce Bank

The Class 14(d) Claim is made up of the Debtor's obligations to Commerce Bank ("Commerce"), under that certain Note dated July 31, 2007 (the "Class 14(d) Note").  This loan was a line of credit "up to a maximum of $175,000" and the original amount loaned was $60,000.  As such, it was "in the original principal amount" of $60,000.

Minnesota Statute § 559.17 provides that an assignment rents is enforceable only if it secures "an original principal amount of $100,000 or more or is a lien upon residential real estate containing more than four dwelling units."   3390 Sunset has less than 4 units and any assignment of rents is unenforceable.

The Debtor's obligations under the Class 14(d) Note are alleged to be secured under the following mortgages:

1.       Mortgage dated July 31, 2007 (the "3990 Commerce Mortgage"), under which the Debtor granted Commerce a mortgage interest in the 3990 Sunset property.  The 3990 Commerce Mortgage was recorded in the office of the Hennepin Registrar of Titles on August 7, 2007 as Document number 4413865 ("torrens").  This property is also Abstract property and as such this mortgage is not properly perfected.

Class 14(d) is in a third position of priority on the 3990 Sunset property.  The 3990 Sunset Property is legally described as follows:

>        Lot 26, Togo Park Lake Minnetonka, Hennepin County, Minnesota

This mortgage is avoidable and unsecured.  As noted, this property is part abstract and part torrens.  Class 14(d) failed to perfect its mortgage in the abstract portion.  The property cannot be partitioned.

2.       Mortgage dated July 31, 2007 (the "3253 Commerce Mortgage"), under which the Debtor granted Commerce a mortgage interest in the 3253 Holmes property.  The 3253 Commerce Mortgage was recorded in the office of the Hennepin County Recorder on August 7, 2007 as document number 4413865.

Class 14(d) is in a third position of priority on the 3253 Holmes property.  The 3253 Holmes property is legally described as follows:

> Lot 8; and the South 4 feet front and rear of Lot 9, Block 45, "Calhoun Park,"
> Hennepin County, Minnesota

This mortgage is unsecured.

3.      Mortgage dated July 31, 2007 (the "809 Commerce Mortgage"), under which the Debtor granted Commerce a mortgage interest in the 809 Portland property.  The 809 Commerce Mortgage was recorded in the office of the Ramsey County Recorder on August 22, 2007 as document number 4050226.

Class 14(d) is in a second position of priority on the 809 Portland property.  The 809 Portland property is legally described as:

> Lot 13, Block 3, Bryant's addition to St. Paul, Ramsey County, Minnesota

This mortgage is unsecured.

4.      Mortgage dated July 31, 2007 (the "Second 4400 Commerce Mortgage"), under which the Debtor granted Commerce a mortgage interest in the 4400 Deering Island property.  The Second 4400 Commerce Mortgage was recorded in the office of the Hennepin County Recorder on August 7, 2007 as document number 4413865.

Class 14(d) is in a fourth position of priority on the 4400 Deering Island property.  The 4400 Deering Island property is legally described as follows:

> Government Lot 9, Section 18, Township 117 North, Range 23 of the West
> Principal Meridian, Hennepin County, Minnesota

This mortgage is unsecured.

As of the Filing Date, the unpaid balance under the Class 14(d) Note, including principal and unpaid interest, was $175,743. Class 14(d) is unsecured.

Treatment of Class 14(d) Claim

Class 14(d) shall have an allowed unsecured claim of $175,743.  The Class 14(d) creditor shall sign a release of mortgage provided by the Debtor for the 4400 Deering Island property, the 809 Portland Property, and the 3990 property.

Class 15 – Indy Mac

The Class 15 Claim is made up of the Debtor's obligations to Indy Mac Bank ("Indy Mac"), under that certain Note dated April 14, 2004 in the original principal amount of $422,000 (the "Class 15 Note").

The Debtor's obligations under the Class 15 Note are secured under that certain Mortgage dated April 14, 2004 (the "3253 Indy Mac Mortgage"), under which the Debtor granted Indy Mac a mortgage interest in the 3253 Hennepin property.  The 3253 Indy Mac Mortgage was recorded in the office of the Hennepin County Recorder on May 11, 2004 as document number 3959815.

As of the Filing Date, the unpaid balance under the Class 15 Note, including principal and unpaid interest, was approximately $422,000.

Treatment of Class 15 Claim

Indy Mac commenced a foreclosure by advertisement on the 3253 Holmes property and by virtue of Minnesota's anti-deficiency statute the Class 15 claim shall be allowed at $0.  To the extent the Debtor has any interest in this property, he surrenders any interest including any redemption interest.

Class 16-Satisfied Mortgages for which Satisfactions of Mortgage have not been recorded-Gregory C. Cole and Karen Cole (the "Coles") and Marco A. Herrera ("Herrera")

The Coles sold the Debtor his French Lake Township property and a purchase money mortgage was recorded with the Wright County Recorder on August 18, 2000 as document number 717140.  The debt underlying this mortgage has been satisfied in full.

Herrera sold the Debtor his 3201 Hennepin property and held two mortgages:  one dated June 11, 1996 and filed with the Hennepin County Recorder on July 2, 1996 as document number 6601360, and one dated December 17, 1997 and filed with the Hennepin County Recorder on December 22, 1997 as document number 6825241.

Treatment of Class 16

Class 16 shall receive nothing; confirmation of this Plan shall constitute an Order discharging the mortgages of record of the Coles and Herrera.

Class 17-State Bank of Delano-Boat Loan

The State Bank of Delano claims a secured interest in the Debtor's 1927 Hutchinson boat with a Chrysler motor and claims to be owed approximately $60,000.   The value of the boat is $12,000.  Class 17 has obtained relief from stay related to the boat.

Treatment of Class 17

Unless otherwise agreed, Class 17 shall have an unsecured claim for any deficiency claim after it has sold the boat.

Class 18-Crown Bank-Boat Loan

Crown Bank claims a secured interest in the following boats:

    1939 Larson 21' Falls Flyer
    1938 Larson 14' Falls Flyer
    1957 Larson 14' Falls Flyer
    1957 Larson 14' Falls Flyer
    1955 Larson 14' Falls Flyer
    1955 Aristo Craft 14' Torpedo
    1947 Larson 14' wood row boat
    1913 17' Swedish Launch
    1940-1950 Bunky Bowerman 18' Hydroplane
    1940-1950 Swift Big Bee 18' Hydroplane
    1974 Boston Whaler
    1990 Donzi Speedboat.

Crown Bank is owed $63,647.37.  The value of the boats likely supports this amount.

Treatment of Class 18

The Debtor will pay Class 18 $63,647.37 in monthly payments over 15 years at the rate of 6%.
Payments will be $537.09.  The principal and outstanding interest may be paid at anytime
without prepayment penalty.  Class 18 shall retain its lien on the boat to secure this treatment.
The remaining terms of the underlying loan documents will remain in effect.  To the extent the
terms of the original underlying loan documents conflict with the terms of the Plan, the terms of
the Plan shall control.

Class 19-First National Bank of the Lakes-Boat Loan

First National Bank of the Lakes has a lien on a 1989 Donzi and travel trailer.  The boat and
trailer are worth $8500.  The debt is $8,500.

Treatment of Class 19

The Debtor will pay Class 19 $8,771.27 over 10 years at the rate of 6%.  Payments will be
$97.38. The principal and outstanding interest may be paid at anytime without prepayment
penalty.  Class 19 shall retain its lien on the boat to secure this treatment.  The remaining terms
of the underlying loan documents will remain in effect.  To the extent the terms of the original
underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Class 20 - Priority Claims Under Section 507(a)(7)

Class 20 consists of all timely filed and allowed priority claims for security deposits paid prior to
April 24, 2008 (the filing date of this case).

Treatment of Class 20

Class 20 Claims will be paid in full on the Effective Date unless the Debtor intends to object to such claim and in such case they will be paid on the eleventh (11th) day after the date on which such claim is allowed.

Class 21-Hennepin County Taxes 3022 Hennepin

Hennepin County has filed a proof of claim alleging a secured claim for Property taxes in the amount of $98,476.54.  The Debtor disputes the claim as the taxes appear to have been calculated on a value for more than the purchase price of the property.

Treatment of Class 21.

The Debtor will pay Class 21 in full over 10 years at 4%, payments will be $997.03.  The Debtor reserves the right to prepay this amount this amount with penalty and to seek a rebatement or other reduction in this amount.

## 2.2    Impaired and Unimpaired Classes

All classes of claims are impaired under the Plan.

## 2.3    Unclassified Claims – Description of Holders and Treatment of Claims

### 2.3.1   Pre-Petition Priority Government Claims

"Pre-Petition Priority Government Claims" consists of all timely filed and allowed claims of governmental units for pre-petition claims accorded a priority status pursuant to Section 507(a)(8) of the Bankruptcy Code.  The Debtor does not believe that he is liable on any Pre-Petition Priority Government Claims.  Pursuant to the mandates of Section 1123(a)(1) of the Bankruptcy Code, Pre-Petition Priority Government Claims are not classified in the Debtors' Plan.

Treatment of Pre-Petition Priority Government Claim

Pre-Petition Priority Government Claims will be paid, in full, over a term ending on or before the fifth anniversary of the Filing Date.  From and after the Effective Date, Pre-Petition Priority Government Claims will accrue interest on the terms and at the rate provided for in 26 U.S.C. §6621(b), and will be paid in periodic payments so that such claims are fully amortized and paid in full over a period ending not later than the date that is five years after the Filing Date.

### 2.3.2   Administrative Expenses

"Administrative Claim" means any claim for the payment of any administrative expense arising under Section 503(b) of the Bankruptcy Code.

Subject to the specific terms set forth below, the Debtors will pay each holder of an allowed Administrative Claim (except any such holder that agrees to different treatment) the allowed

amount of such holder's allowed Administrative Claim, in cash, on the Effective Date; provided, however, that allowed Administrative Claims representing post-petition liabilities incurred in the ordinary course of business by the Debtors will be paid as they come due.

**(a)      Professional Fees**

Professional fees that constitute Administrative Claims are the allowed fees and costs of the professionals that have been employed in the course of the Bankruptcy Case.

Assuming the relatively orderly administration of the Bankruptcy Case, the Debtors estimate that professional fees will accrue and be paid as follows:

| Professional | Estimated Fees & Costs | Amounts Paid and/or Retainer to be Applied | Amount to be Paid through Plan |
|---|---|---|---|
| Hinshaw & Culbertson LLP Attys. for Debtors | $40,000 | $10,000 | $30,000 |
| Romer & Associates | $7,500 | $0 | $7,500 |
| Experts for Confirmation | $1,000 | $0 | $1,000 |

Provided the professionals receive Bankruptcy Court approval of their fees and expenses, the claims for professional fees identified above will be paid in full in cash on the Effective Date, or on such date as the Court may fix, or upon such other terms as may be agreed upon by the professional and the Debtors.

**(b)      U.S. Trustee Fees and Court Costs**

U.S. Trustee fees and court costs that constitute Administrative Claims are those obligations imposed by operation of 28 U.S.C. §1930 (all such fees and costs will be referred to as "U.S. Trustee Fees").

The Debtors will pay all U.S. Trustee Fees owed by the Debtors, as and when due, until the Bankruptcy Case is closed.   In addition, the Debtors will continue to comply with all reporting requirements imposed by the U.S. Trustee until this Bankruptcy Case is closed.

**(c)      Other Administrative Expense Claims**

There may be other Administrative Claims, such as the following:  (1) filed proofs of claim for administrative expenses; (2) post-petition taxes; (3) unpaid post-petition claims incurred in the ordinary course of business; and (4) certain claims associated with executory contracts and unexpired leases (the treatment of claims arising out of executory contracts and unexpired leases

is more fully described in Section 3.5 below) (all of the foregoing will be referred to as "Other Administrative Claims").  The Debtors has remained current on all of its post-petition obligations, and does not believe that it is liable on any Other Administrative Claims.

To the extent that there are any allowed Other Administrative Claims, such claims will be paid, in full and in cash, on the Effective Date, or as otherwise agreed to by the Debtors and the claimant, subject to the following exception:  For claims incurred in the ordinary course of business after the Filing Date, the Debtors will pay such claims as they become due, or otherwise in the ordinary course of Debtors' business.

## 2.4    Executory Contracts and Unexpired Leases

The Debtors are parties to those executory contracts and unexpired leases described in Exhibit A, the Schedule of Executory Contracts and Leases.  Pursuant to Section 365 of the Bankruptcy Code, a debtors in possession may either (i) assume the contract, (ii) reject the contract, or (iii) assume and assign the contract.  The treatment that any contract or lease receives in the course of a bankruptcy case dictates the nature of the claim that the non-debtors party may have by reason of the contract or lease.  Generally, the rejection of a contract or lease will give rise to a general unsecured claim for damages and pre-petition arrearages, while the assumption of a contract or lease will require that all defaults be cured, and claims related to monetary defaults will be afforded priority status under the Bankruptcy Code.

The treatment of the various executory contracts and unexpired leases to which the Debtors is a party is specified in the Schedule of Executory Contracts and Leases.

From and after the date on which an order confirming the Plan is entered, the Debtors will timely perform its obligations according to the terms of all assumed contracts, as the same may be modified by the terms of the Plan.  Notwithstanding the foregoing, with respect to arrearages outstanding as of the date on which a contract or lease is assumed, the Debtors will cure such arrearages promptly after the Effective Date, or as otherwise agreed to by the Debtors and the other party to any affected contract.

As to rejected contracts and leases, the parties to such contracts and leases may have claims arising under the terms of the relevant agreement, or arising from the rejection of the contract or lease, or both.  In accordance with the provisions of the Bankruptcy Code, any claim based on the rejection of an executory contract or unexpired lease will be treated as an unsecured claim.  Unless otherwise ordered by the Court, the deadline for filing a proof of claim for any such claim arising from rejection of a contract or lease will be fixed at 30 days from the date on which an order confirming the Plan is entered.  THE INFORMATION PROVIDED HEREIN CONSTITUTES NOTICE OF THE DEADLINE FOR ASSERTING CLAIMS FOR DAMAGES FROM REJECTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE.

Contracts and Leases not Specified

If either or both Debtors are parties to any executory contracts or unexpired leases that are not specifically identified in the Schedule of Executory Contracts and Leases, the Debtors will REJECT all such executory contracts and unexpired leases, with the following exceptions: (i) except as may be provided for in any prior Court order entered with respect to a motion for assumption or rejection of such executory contract or unexpired lease, and (ii) except as may be provided for in any motion pending before the Bankruptcy Court on the date of the hearing on confirmation of the Plan. Except as may be provided otherwise herein, such rejection will be effective as of the date on which an order confirming the Plan is entered.

## III. PROOFS OF CLAIMS AND OBJECTIONS TO CLAIMS

In general, creditors are permitted to file proofs of claims with the Bankruptcy Court pursuant to Bankruptcy Rules 3001 or 3002. The deadline for timely filing a proof of claim for non-governmental creditors is September 16, 2008.

Certain creditors may hold or assert claims for the payment of administrative expenses of the types described in Section 503(b) of the Bankruptcy Code. Unless otherwise ordered by the Bankruptcy Court, the deadline by which administrative claims must be timely filed is thirty days after the date on which an order confirming the Plan is entered. Administrative expense claims must be asserted by motion filed and served by the deadline set forth herein. SUBJECT TO SUBSEQUENT ORDER OF THE BANKRUPTCY COURT, THIS INFORMATION CONSTITUTES NOTICE OF THE DEADLINE FOR ASSERTING ADMINISTRATIVE EXPENSE CLAIMS.

Certain creditors may have claims arising from the rejection of executory contracts or unexpired leases, whether rejected under the Plan or pursuant to a motion filed during the pendency of the Bankruptcy Case. Claims for damages arising out of such rejection must be asserted by the filing of a proof of claim within thirty days after the date on which an order confirming the Plan is entered. Parties to executory contracts and unexpired leases that have been or may yet be rejected by the Debtor, by motion or otherwise, at or before confirmation must file proofs of claims for any damages from such rejection in accordance with the Bankruptcy Court's order approving such rejection, or, if the order does not so provide, pursuant to the terms of this paragraph. THE INFORMATION PROVIDED HEREIN CONSTITUTES NOTICE OF THE DEADLINE FOR ASSERTING CLAIMS FOR DAMAGES FROM REJECTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE.

## IV. CLAIMS OF THE DEBTORS AGAINST OTHERS

### 4.1     Claims from Bankruptcy Laws – Preferences, etc.

The bankruptcy laws create a number of claims and causes of action that a debtors-in-possession may pursue for the benefit of the bankruptcy estate. Among the rights of recovery that are available to a debtors-in-possession are those based on theories of preferential and fraudulent transfer.

A preference is a payment or other transfer of property to or for the benefit of a creditor, before the bankruptcy case was commenced, on account of an antecedent debt, that: (1) was made while the debtors was insolvent; (2) was made within the time period(s) specified in Section 547(b)(4) of the Bankruptcy Code; and (3) enabled the creditor receiving the transfer to receive more than the creditor would receive if the case were a case under Chapter 7 of the Bankruptcy Code. When a debtors avoids a preferential transfer, the preference defendant is required to return the payment or other transfer made, and the preference defendant then ordinarily has an unsecured claim in the amount of the returned preference.

An avoidable fraudulent conveyance under the bankruptcy laws is a transfer of an interest of the debtors in property, or any obligation incurred by the debtors, that was either: (a) undertaken with actual intent to hinder, delay, or defraud any present or future creditor; or (b) a transaction under which the debtors received less than a reasonably equivalent value, and (i) the debtors was insolvent on the date the transfer was made or such obligation was incurred or became insolvent as a result of such transfer or obligation; (ii) the debtors was engaged in business or a transaction, or was about to engage in such business or transaction for which the debtors' remaining assets would be insufficient; or (iii) the debtors intended to incur or believed that it would incur debts that would be beyond the debtors' ability to pay as such debts matured.

Based on a review of his records so far, the Debtor believes that there are the following constructively fraudulent or preferential transfers that would be subject to avoidance:

> Commerce Bank's 3990 Sunset Mortgage
> Commerce Bank's  4400 Deering Island Mortgage

The Debtor will continue his review and will pursue any avoidance actions that they determine are likely to generate recoveries for the benefit of creditors.  Any cash proceeds recovered by reason of the disposition of any avoidance action will be used first to pay administrative expenses associated with such avoidance action, and the remainder will be paid to Class 1 Creditors on a pro rata basis.

## 4.2    Setoffs

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtors may, but will not be required to, setoff against any claim and the payments or other distributions to be made pursuant to the Plan in respect of such claim, claims of any nature whatsoever the Debtors may have against the holder of such claim.  Neither the failure to setoff, nor the allowance of any claim hereunder will constitute a waiver or release by the Debtors of any such claim that the Debtors may have against such holder.

## V.  POST CONFIRMATION

## 5.1    Means for Execution

### 5.1.1    Plan Funding

The Debtor will continue to earn income from the operation of rental properties that are retained, by operation of his theatre and by operation of his bar at his property in Belgrade, Minnesota. He intends to enter into lease with a new operator for the bar.  Historically, up until approximately August 2007 when the events with Commerce  Bank described above occurred, the Debtor was timely with each and every payment due under any of his loan documents with all of his lenders.  Operating reports during the case are available upon request to Debtor's counsel.

### 5.1.2    Plan Distributions

The distributions under the Plan will be made by the Debtor on the dates provided for in the Plan, or on such earlier dates as the Debtor, in his sole discretion, may choose.  The Debtor reserves and retains the right to prepay any obligation under the Plan without penalty.  Any payment or distribution required to be made under this Plan on a day other than a business day will be made on the next succeeding business day, or as soon thereafter as practicable.

The Debtor will not be required to make any payment or distribution on account of any disputed claim until the dispute has been resolved and then only to the extent that the disputed claim becomes an allowed claim, whether by agreement of the parties or by final order of the Bankruptcy Court.  As soon as practicable after a claim dispute is resolved, and subject to the terms of the Plan, the Debtor will pay and distribute to the holder of such allowed claim the amount provided in the Plan in the manner provided in the Plan, subject to the following condition:  The Debtor may choose, in the alternative, to make any additional payment or distribution to the creditor holding a previously disputed allowed claim to bring distributions on account of such claim current with where they would have been had the claim never been subject to objection.

In the event that any property to be distributed under the Plan remains unclaimed or otherwise not deliverable to a creditor entitled thereto as of the later of: (a) one year after the date on which an order confirming the Plan is entered; or (b) one hundred twenty (120) days after any distribution called for under the terms of the Plan, such property will become vested in and will be transferred and delivered to the Debtors.  Unclaimed property includes, but is not limited to, checks issued pursuant to the Plan and not negotiated within ninety (90) days of the date such check was issued.

The Debtor will withhold from any property distributed under this Plan, any amounts required to be withheld for federal, state, or local taxes.  The issuance, transfer or exchange of any of the securities issued under, or the transfer of any other property pursuant to this Plan, or the making or delivery of an instrument of transfer under this Plan, is exempt from application of any law imposing a stamp tax, transfer tax, or other similar tax.

Except as expressly stated in the Plan or otherwise allowed by a final order of the Bankruptcy Court, no interest, penalty, or late charge arising after the Filing Date will be allowed on any claim, regardless of whether there is any objection to the claim.  No attorneys' fees will be paid

with respect to any claim except as specified in the Plan, or as allowed by a final order of the Bankruptcy Court.

Distributions to be made under this Plan to holders of allowed claims will be delivered by first class United Sates mail, postage prepaid to (a) the latest mailing address set forth in the schedules if no proof of claim was filed with respect to such claim; or (b) to the address appearing on a proof of claim as the address to which notices should be sent if a proof of claim was filed with respect to such claim.  Distributions will be deemed made as of the time they are deposited in the United States mail.

Any notices related to the Plan must be addressed as follows:

Donald Driggs
2925 Casco Pt.
Minneapolis MN 55391

**and**

Jamie R. Pierce
Hinshaw & Culbertson LLP
Suite 2000
33 S. 7th St.
Mpls, MN 55402

### 5.1.3   Implementation of Plan

The Plan will be implemented upon entry of an order confirming the Plan.

The Plan may be modified in the manner provided for under Section 1127 of the Code.  The Debtor will give notice of any proposed modification to the United States Trustee and to any other parties designated by applicable rules or by Court order.  The Debtor reserves the right to make such modifications at any hearing on confirmation as may be necessary to facilitate confirmation of the Plan, as well as the right to seek modification after confirmation to the full extent permitted under the Bankruptcy Code.

The Debtor's obligations under the Plan are contingent upon entry of an order confirming the Plan, and said order not being stayed, appealed, or otherwise challenged before the expiration of the applicable deadline; provided, however, that the Debtor may, in his sole discretion, choose to undertake and perform its obligations under the Plan notwithstanding the pendency of an appeal.

### 5.2   Reservation of Rights, Powers and Jurisdiction

### 5.2.1   Rights and Powers

Except as otherwise expressly provided in the Plan, the Debtor will retain, after confirmation of the Plan, full right and power to do any of the following:

(a)      Object to the allowance of claims;

(b)      Seek subordination of claims;

(c)      Pursue any claims against third parties, including, but not limited to those based on theories of preference, fraudulent transfer, or any other action arising under Chapter 5 of the Bankruptcy Code;

(d)      Pursue any claims and enforce any rights arising under the Bankruptcy Code in favor of a trustee or debtors-in-possession; and

(e)      Pursue any causes of action that the Debtors may have as of the date on which an order confirming the Plan is entered.  Except to the extent explicitly released under the terms of the Plan, any and all causes of action that the Debtors may have had prior to confirmation of the Plan will survive confirmation of the Plan, will vest in the Debtors as of confirmation of the Plan, and will not be affected by confirmation or the passing of the Effective Date of the Plan.

The Debtors may object to the allowance of claims within the time period provided for in the order confirming the plan, or as otherwise dictated by order of the Court.  The Debtors' authority to object to the allowance of claims will not be affected in any way by the Debtors' failure to object to allowance of any claim for purposes of voting.

### 5.2.2   Court Approval

After confirmation of the Plan, the Debtors may, but will not required to, seek the Court's approval of any of the following:

(a)      settlements regarding objections to claims;

(b)      settlements regarding claims against third parties;

(c)      settlements regarding allowance of fees and expenses incurred by professionals employed during the pendency of the Bankruptcy Case.

If the Debtors choose to seek court approval of any such settlements, the Debtors will not be required to provide notice to creditors as would typically be provided during the chapter 11 case or to file and serve a motion for the approval of the settlement.  Instead, the Debtors will be authorized to seek approval by filing a stipulation setting forth the material terms of the settlement, along with a proposed order providing for the approval of such stipulation.

### 5.2.3   Jurisdiction

Until the Plan has been fully consummated, the Court will retain jurisdiction over, and the Debtors will retain standing and the right to pursue any cause of action, proceeding, or other request for relief related to the following:

(a)    classification of the claims of creditors;

(b)    determination of the allowed amount of any claims arising before or during the pendency of the Bankruptcy Case;

(c)    subordination of the allowed claims of creditors or liens or other interests securing such claims;

(d)    determination of any counterclaims against any creditor, including any claim for turnover of property of the Debtors and any claim for offset of the value of the property against the claim of the creditor;

(e)    determination of the allowed amount of claims for damages from the rejection of executory contracts or unexpired leases;

(f)    determination of all issues and disputes regarding title to the assets of the estate and the Debtors;

(g)    determination of all causes of actions between the Debtors and any other party, including, but not limited to, any right of the Debtors to recover assets pursuant to the provisions of the Bankruptcy Code, and to avoid any preferential or fraudulent transfers;

(h)    correction of any defect, the curing of any omission or the reconciliation of any inconsistency of the Plan or the order confirming the Plan as may be necessary to carry out the purpose and intent of the Plan;

(i)    interpretation and enforcement of the terms of the Plan;

(j)    shortening or extending, for cause, any time fixed for doing any act or thing under the Plan;

(k)    entry of any order, including any injunction, necessary to enforce the title, rights, and powers of the Debtors;

(l)    entry of an order concluding and terminating the case; and

(m)    approval of any settlement related to any of the foregoing.

The Debtors' transfer or assignment of any interests or rights will not affect the Court's retention of jurisdiction to the full extent provided herein.

**5.3      Effects of Plan Confirmation**

**5.3.1   Binding Effect**

The Plan will be binding upon and inure to the benefit of the Debtors, all present and former holders of claims against, or interests in, the Debtors, and all respective successors and assigns.

**5.3.2   Discharge and Injunction**

THE DEBTOR SHALL RECEIVE HIS DISCHARGE UPON COMPLETION OF PAYMENTS TO CLASS 1 CREDITORS.

TO THE FULL EXTENT PROVIDED FOR IN SECTION 1141 OF THE CODE, AND SUBJECT TO ANY EXCEPTION OR QUALIFICATION UNDER SUCH SECTION, THE DEBTOR WILL BE ENTITLED TO ENTRY OF AN ORDER PROVIDING FOR THE COMPLETE DISCHARGE, WAIVER, RELEASE, AND SATISFACTION OF ALL CLAIMS AGAINST THE DEBTOR AS OF THE FILING DATE.  THE DISCHARGE WILL OPERATE TO RELEASE AND EXTINGUISH ANY PURPORTED LIENS, ENCUMBRANCES, OR SECURITY INTERESTS CLAIMED BY A CLAIMANT OR ANY OTHER ENTITY AGAINST PROPERTY OF THE DEBTORS, PROPERTY DEALT WITH BY THE PLAN, AND PROPERTY OF THE ESTATE, EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN.  THE ORDER CONFIRMING THE PLAN IS A GENERAL ADJUDICATION AND RESOLUTION WITH PREJUDICE OF ALL PENDING LEGAL PROCEEDINGS AGAINST THE DEBTORS, PROPERTY OF THE DEBTOR, OR PROPERTY OF THE ESTATE, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN.

THE DISCHARGE AND THE ORDER CONFIRMING THE PLAN OPERATE AS AN INJUNCTION TO THE EXTENT PROVIDED IN SECTION 524 OF THE BANKRUPTCY CODE, AND ONLY TO SUCH EXTENT.  ANY CREDITOR OR EQUITY HOLDER ENTITLED TO RECEIVE ANY DISTRIBUTION PURSUANT TO THIS PLAN WILL BE PRESUMED CONCLUSIVELY TO HAVE RELEASED THE DEBTORS FROM ANY CLAIM RELATED TO THAT WITH RESPECT TO WHICH THE DISTRIBUTION IS MADE.  THIS RELEASE WILL BE ENFORCEABLE AS A MATTER OF CONTRACT AGAINST ANY CREDITOR OR EQUITY HOLDER THAT ACQUIRES ANY RIGHT TO DISTRIBUTION PURSUANT TO THIS PLAN.

SUBJECT TO ANY LIMITATIONS PROVIDED FOR IN THE BANKRUPTCY CODE, UNLESS A TAXING AUTHORITY HAS ASSERTED A CLAIM AGAINST THE DEBTORS BEFORE THE DEADLINE FOR FILING CLAIMS, CONFIRMATION OF THE PLAN WILL OPERATE AS A DISCHARGE OF ANY CLAIM OR LIEN OF ANY TAXING AUTHORITY AGAINST THE DEBTORS, THE ESTATE, ANY PROPERTY OF THE DEBTORS, AND ANY PROPERTY OF THE ESTATE, FOR ANY TAXES, PENALTIES, OR INTEREST: (I) FOR ANY TAX YEAR FOR A PERIOD BEFORE THE FILING DATE; (II) ARISING OUT OF THE FAILURE OF THE DEBTORS TO FILE ANY TAX RETURN; OR (III) ARISING OUT OF AN AUDIT OF ANY TAX RETURN WITH RESPECT TO A PERIOD BEFORE THE FILING DATE.

### 5.3.3    Re-Vesting

Subject to the terms of the Plan, on the date that the order confirming the Plan is entered, the Debtor will be restored to full ownership of all property owned by the Debtor, all property of the estate, and all other rights and interests . The property so vested in the Debtor will be free and clear of all claims, liens, encumbrances, charges, and other interests of holders of claims or interests, except as otherwise provided in the Plan.

On and after the date on which the order confirming the Plan is entered, the Debtor may freely use, acquire, and dispose of property of the estate and property of the Debtor, except as otherwise provided in the Plan. Except as may otherwise be expressly provided for in the Plan or by order of the Court, the Debtor's    operation of his business and use of property will not be subject to any restrictions imposed by operation of the Bankruptcy Code, the Bankruptcy Rules, or any prior Bankruptcy Court order entered during the bankruptcy case.

## X. CONCLUSION

The Debtor believes that acceptance of the Plan is in the best interest of all parties and therefore urges all holders of claims and interests to vote in favor of the Plan.

Dated: September 19, 2008

Donald A. Driggs

Dated: September 19, 2008

**HINSHAW & CULBERTSON LLP**

By:  /e/  Jamie R. Pierce
      Thomas G. Wallrich (213354)
      Jamie R. Pierce (305054)
      Suite 2000
      333 South Seventh Street
      Minneapolis, MN 55402-4511
      Telephone (612) 334-2514

**ATTORNEYS FOR DEBTOR**