UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:

DONALD ANDREW DRIGGS                              Case No.: 08-41984-GFK

Debtor.                                            Chapter 11 Case

**NOTICE OF HEARING AND MOTION FOR AN ORDER GRANTING RELIEF FROM AUTOMATIC STAY**

TO:   THE DEBTOR AND OTHER ENTITIES SPECIFIED IN LOCAL RULE 9013-3.

1. Crown Bank ("Movant"), a secured creditor in the above case, by its undersigned attorney, moves the Court for the relief requested below and gives notice of hearing.

2. The Court will hold a hearing on this motion at 10:30 a.m. on October 28, 2008, at the United States Courthouse, Courtroom 2A, 316 North Robert Street, St. Paul, Minnesota.

3. Any response to this motion must be filed and delivered no later than October 23, 2008, which is three (3) days before the time set for the hearing (excluding Saturdays, Sundays, and holidays), or filed and served by mail no later than October 17, 2008, which is seven (7) days before the time set for the hearing (excluding Saturdays, Sundays, and holidays). UNLESS A RESPONSE OPPOSING THIS MOTION IS TIMELY FILED, THE COURT MAY GRANT THIS MOTION WITHOUT A HEARING.

4. This Court has jurisdiction over this motion pursuant to 28 U.S.C. Sections 157 and 1334, Bankruptcy Rule 5005, and Local Rule 1070-1. This is a core proceeding. The petition commencing this case was filed on April 24, 2008. This case is now pending in this Court.

5. This motion arises under 11 U.S.C. §362(d), and Bankruptcy Rule 4001. This motion is filed under Bankruptcy Rule 9014 and Local Rules 9006-1, 9013-1 through 9013-3 and 9017-1, and such other Local Rules as may apply. Movant requests relief from the automatic stay so that the Movant may, at its option, exercise its remedies with respect to personal property of the Debtor.

6. Movant holds a valid, perfected security interest in the Debtor's property described as follows:

1939 Larson 21' Falls Flyer, 1938 Larson 14' Falls Flyer, 1957 Larson 14' Falls Flyer, 1957 Larson 14' Falls Flyer, 1955 Larson 14' Falls Flyer, 1955 Aristo-Craft 14' Torpedo, 1947 Larson 14' Wood Row Boat, 1913 17' Swedish Launch, 1940-1950 Bunky Bowerman 18' Hydroplane, 1940-1950 Swift Big Bee 18 Hydroplane, 1974 Boston Whaler, 1990 Donzi Speedboat (the "Property").

7. On or about December 19, 2007, the Debtor and the Movant entered into a loan agreement, under which the Movant agreed to loan the Debtor $62,500.00 (the "Loan").

8. To evidence the Debtor's obligation to repay the Loan, the Debtor executed and delivered to the Movant a promissory note in the original principal amount of $62,500.00 and dated December 19, 2007 ("Note"). Attached hereto as **Exhibit A** is a true and correct copy of the Promissory Note.

9. To secure the Debtor's obligation under the Note, the Debtor executed and delivered to the Movant a security agreement dated December 19, 2007 ("Security Agreement"), under which the Debtor granted to the Movant a security interest in the Property. Attached hereto as **Exhibit B** is a true and correct copy of the Security Agreement.

10. To perfect the Movant's security interest in the Property, the Movant filed a UCC-1 Financing Statement with the Minnesota Secretary of State's Office on January 2, 2008, as Document No. 200810007205. Attached hereto as **Exhibit C** is a true and correct copy of the UCC-1 Financing Statement.

11. The documents identified above, and all documents and instruments related to the Loan, are collectively referred to herein as the Loan Documents.

12. Debtor is currently in default under the Loan Documents by, among other things, failing to make payments when due. The balance due under the Loan Documents is at least $63,647.37, plus continuing interest.

13. Upon information and belief, the fair market value of the Property is approximately $20,400.00.

14. Movant's interest is depreciating, while the Debtor is failing to make payments under the Loan Documents. Because the Property is depreciating in value, Movant requests that the Court order that the stay imposed by Bankruptcy Rule 4001 is not applicable so that Movant may immediately enforce and implement the order granting relief from the automatic stay.

15. Movant does not have, and has not been offered, adequate protection of its interest in the Property.

16. There is no appreciable equity in the Property and the Property is not necessary for an effective reorganization.

17. Movant requests relief from the stay for cause under §362(d)(1) and (2). Debtor is delinquent pursuant to the terms of the Loan Documents.

18. The Debtor has failed to make payments to Movant and Movant has not otherwise received adequate protection on its claim.

19. The failure of Debtor to make payments to Movant when due, or otherwise provide Movant with adequate protection of its interest in the Property constitutes cause, within the meaning of 11 U.S.C. §362(d), entitling Movant to relief from the automatic stay.

20. If testimony is necessary as to any facts relevant to this motion, Nick M. Lane will testify on behalf of Movant.

21. Movant has incurred and will incur legal fees and costs to protect and pursue its rights in the collateral.

22. A separate Memorandum of Facts and Law is being submitted with this motion.

23. THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THIS PURPOSE.

WHEREFORE, Crown Bank requests that an Order be entered terminating the automatic stay to permit Movant to foreclose its security interest in the Property and proceed with Movant's state court remedies with respect to the Property, and for such other relief as may be just and equitable.

HELLMUTH & JOHNSON, PLLC

Dated: October 7, 2008.

By: /e/ David G. Hellmuth
David G. Hellmuth, ID #229131
Joel A. Hilgendorf, ID #315953
Attorneys for Movant
Hellmuth & Johnson, PLLC
10400 Viking Drive, Suite 500
Eden Prairie, MN 55344

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 5071717 | DONALD A DRIGGS | | 12/19/07 | NML |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $62,500.00 | Wall Street Journal Prime plus 1.000% | 8.250% | 08/19/08 | Commercial |

Creditor Use Only

# PROMISSORY NOTE
(Commercial - Single Advance)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is December 19, 2007. The parties and their addresses are:

LENDER:
   CROWN BANK
   601 Marquette Avenue, Ste. 125
   Minneapolis, Minnesota 55402
   Telephone: (612) 746-5050

BORROWER:
   DONALD A DRIGGS
   2925 CASCO POINT ROAD
   ORONO, Minnesota 55391

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:
   A. **Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together. "You" and "Your" refer to the Lender.
   B. **Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.
   C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.
   D. **Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.
   E. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.
   F. **Percent.** Rates and rate change limitations are expressed as annualized percentages.

**2. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of $62,500.00 (Principal) plus interest from December 19, 2007 on the unpaid Principal balance until this Note matures or this obligation is accelerated.

**3. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 8.250 percent (Interest Rate) until December 20, 2007, after which time it may change as described in the Variable Rate subsection.
   A. **Interest After Default.** If you declare a default under the terms of the Loan, including for failure to pay in full at maturity, you may increase the Interest Rate otherwise payable as described in this section. In such event, interest will accrue on the unpaid Principal balance of this Note at a rate equal to the rate in effect prior to default, plus 2.000 percent, until paid in full.
   B. **Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.
   C. **Statutory Authority.** The amount assessed or collected on this Note is authorized by the Minnesota usury laws under Minn. Stat. § 47.59.
   D. **Accrual.** Interest accrues using an Actual/360 days counting method.
   E. **Variable Rate.** The Interest Rate may change during the term of this transaction.
      (1) **Index.** Beginning with the first Change Date, the Interest Rate will be based on the following index: the base rate on corporate loans posted by at least 75% of the 30 largest U.S. banks known as the Wall Street Journal U.S. Prime Rate.
      The Current Index is the most recent index figure available on each Change Date. You do not guaranty by selecting this index, or the margin, that the Interest Rate on this Note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers. If this index is no longer available, you will substitute a similar index. You will give me notice of your choice.
      (2) **Change Date.** Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change December 20, 2007 and daily thereafter.
      (3) **Calculation Of Change.** On each Change Date you will calculate the Interest Rate, which will be the Current Index plus 1.000 percent. The result of this calculation will be rounded up to the nearest .001 percent. Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.
      (4) **Limitations.** The Interest Rate changes are subject to the following limitations:
         (a) **Lifetime.** The Interest Rate will never be less than 7.250 percent.
      (5) **Effect Of Variable Rate.** A change in the Interest Rate will have the following effect on the payments: The amount of scheduled payments and the amount of the final payment will change.

**4. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.
   A. **Late Charge.** If a payment is more than 10 days late, I will be charged 5.000 percent of the Unpaid Portion of Payment. I will pay this late charge promptly but only once for each late payment. This amount may then increase so as to always be the highest amount allowed by law under Minnesota Statutes § 47.59.

**5. PAYMENT.** I agree to pay this Note on demand, but if no demand is made, I agree to pay this Note in installments of accrued interest beginning January 19, 2008, and then on the 19th day of each month thereafter. I agree to pay the entire unpaid Principal and any accrued but unpaid interest on August 19, 2008. Payments will be rounded up to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.
Each payment I make on this Note will be applied first to interest that is due then to principal that is due, and finally to any charges that I owe other than principal and interest. If you and I agree to a different application of payments, we will describe our agreement on this Note. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**6. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**7. LOAN PURPOSE.** The purpose of this Loan is PERSONAL EXPENSES/REFINANCE.

**8. SECURITY.** The Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document |
|---|---|
| Security Agreement - DONALD A DRIGGS | DONALD A DRIGGS |

**9. DEFAULT.** I understand that you may demand payment anytime at your discretion. For example, you may demand payment in full if any of the following occur:
   A. **Payments.** I fail to make a payment in full when due.
   B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Note or any other obligations I have with you.
   C. **Death or Incompetency.** I die or am declared legally incompetent.
   D. **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Note.
   E. **Other Documents.** A default occurs under the terms of any other Loan Document.
   F. **Other Agreements.** I am in default on any other debt or agreement I have with you.
   G. **Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.
   H. **Judgment.** I fail to satisfy or appeal any judgment against me.
   I. **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.
   J. **Name Change.** I change my name or assume an additional name without notifying you before making such a change.
   K. **Property Transfer.** I transfer all or a substantial part of my money or property.
   L. **Property Value.** You determine in good faith that the value of the Property has declined or is impaired.
   M. **Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Note or that the prospect for payment or performance of the Loan is impaired for any reason.

**10. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**11. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

DONALD A DRIGGS
Minnesota Promissory Note                                                                                                Initials ____
MN/4XXIsmith00022000005751018121907N    ©1996 Bankers Systems, Inc., St. Cloud, MN Experi™                                Page 1


EXHIBIT A

A. **Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note and Loan.
   (1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.
   (2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.
   (3) You may release, substitute or impair any Property securing this Note.
   (4) You, or any institution participating in this Note, may invoke your right of set-off.
   (5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.
   (6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

B. **No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

12. **REMEDIES.** After I default, you may at your option do any one or more of the following.
    A. **Acceleration.** You may make all or any part of the amount owing by the terms of this Note immediately due.
    B. **Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.
    C. **Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.
    D. **Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Note, and accrue interest at the highest post-maturity interest rate.
    E. **Attachment.** You may attach or garnish my wages or earnings.
    F. **Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Note against any right I have to receive money from you.
    My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Note" means the total amount to which you are entitled to demand payment under the terms of this Note at the time you set-off.
    Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.
    Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.
    You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.
    G. **Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

13. **COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Note or any other Loan Document. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest in effect as provided in the terms of this Note. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

14. **COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

15. **WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Note. The execution and delivery of this Note will not violate any agreement governing me or to which I am a party.

16. **INSURANCE.** I agree to obtain the insurance described in this Loan Agreement.
    A. **Property Insurance.** I will insure or retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing the Loan.
    B. **Insurance Warranties.** I agree to purchase any insurance coverages that are required, in the amounts you require, as described in this or any other documents I sign for the Loan. I will provide you with continuing proof of coverage. I will buy or provide insurance from a firm licensed to do business in the State where the Property is located. If I buy or provide the insurance from someone other than you, the firm will be reasonably acceptable to you. I will have the insurance company name you as loss payee on any insurance policy. You will apply the insurance proceeds toward what I owe you on the outstanding balance. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will keep the insurance until all debts secured by this agreement are paid. If I want to buy the insurance from you, I have signed a separate statement agreeing to this purchase.

17. **APPLICABLE LAW.** This Note is governed by the laws of Minnesota, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Minnesota, unless otherwise required by law.

18. **JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

19. **AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable part will be severed and the remaining provisions will still be enforceable.

20. **INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

21. **NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

22. **CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

23. **ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you and any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

24. **SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:  _/s/_
_____
DONALD A DRIGGS
Individually

---

DONALD A DRIGGS
Minnesota Promissory Note
MN/4XXIsmith00022000005751018121907N          ©1996 Bankers Systems, Inc., St. Cloud, MN  *Experï*          Initials ____
                                                                                                            Page 2

# SECURITY AGREEMENT

**DATE AND PARTIES.** The date of this Security Agreement (Agreement) is December 19, 2007. The parties and their addresses are:

**SECURED PARTY:**
CROWN BANK
601 Marquette Avenue, Ste. 125
Minneapolis, Minnesota 55402

**DEBTOR:**
DONALD A DRIGGS
2925 CASCO POINT ROAD
ORONO, Minnesota 55391

The pronouns "you" and "your" refer to the Secured Party. The pronouns "I," "me" and "my" refer to each person or entity signing this Agreement as Debtor and agreeing to give the Property described in this Agreement as security for the Secured Debts.

**1. SECURED DEBTS.** The term "Secured Debts" includes and this Agreement will secure each of the following:

A. **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 5071717, dated December 19, 2007, from me to you, in the amount of $62,500.00.

B. **All Debts.** All present and future debts from me to you, even if this Agreement is not specifically referenced, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Agreement, each agrees that it will secure debts incurred either individually or with others who may not sign this Agreement. Nothing in this Agreement constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing.

This Agreement will not secure any debt for which you fail to give any required notice of the right of rescission. This Agreement will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices.

C. **Sums Advanced.** All sums advanced and expenses incurred by you under the terms of this Agreement.

Loan Documents refer to all the documents executed in connection with the Secured Debts.

**2. SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, I give you a security interest in all of the Property described in this Agreement that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property (including, but not limited to, all parts, accessories, repairs, replacements, improvements, and accessions to the Property). Property is all the collateral given as security for the Secured Debts and described in this Agreement, and includes all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and you are no longer obligated to advance funds to me under any loan or credit agreement.

**3. PROPERTY DESCRIPTION.** The Property is described as follows:

A. **Boat.** Hull Identification No.: , Manufacturer: LARSON, Year Built: 1939, Model: FALLS FLYER.
Hull Identification No.: , Manufacturer: LARSON, Year Built: 1938, Model: FALLS FLYER.
Hull Identification No.: , Manufacturer: LARSON, Year Built: 1957, Model: FALLS FLYER.
Hull Identification No.: , Manufacturer: LARSON., Year Built: 1957, Model: FALLS FLYER.
Hull Identification No.: , Manufacturer: LARSON , Year Built: 1955, Model: FALLS FLYER.
Hull Identification No.: , Manufacturer: ARISTRO-CRAFT, Year Built: 1955, Model: TORPEDO.
Hull Identification No.: , Manufacturer: LARSON , Year Built: 1947, Model: WOOD ROW BOAT.
Hull Identification No.: , Manufacturer: SWEDISH LAUNCH, Year Built: 1913, Model: .
Hull Identification No.: , Manufacturer: BUNKY BOWERMAN, Year Built: 1940, Model: HYDROPLANE.
Hull Identification No.: , Manufacturer: SWIFT BIG BEE, Year Built: 1940, Model: HYDROPLANE.
Hull Identification No.: , Manufacturer: BOSTON WAILER, Year Built: 1974, Model: WHALER.
Hull Identification No.: , Manufacturer: DONZI, Year Built: 1990, Model: SPEEDBOAT.

**4. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing me or to which I am a party. My principal residence is located in Minnesota. I will provide you with at least 30 days notice prior to any change in my name or principal residence location.

A. **Ownership of Property.** I represent that I own all of the Property. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts. I represent that I am the original owner of the Property and, if I am not, that I have provided you with a list of prior owners of the Property.

B. **Boat Property.** I represent that the Boat portion of the Property is not currently, nor is in the process of being, documented pursuant to the federal Ship Mortgage Act. I will not document the Boat portion of the Property without your prior written consent. Your consent will not be unreasonably withheld, provided such documentation will not adversely affect your security interest. The term Boat, unless specifically defined by applicable law, means any watercraft used or capable of being used as a means of transportation on water.

**5. DUTIES TOWARD PROPERTY.**

A. **Protection of Secured Party's Interest.** I will defend the Property against any other claim. I agree to do whatever you require to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these and make copies at any reasonable time. I will prepare any report or accounting you request which deals with the Property.

B. **Use, Location, and Protection of the Property.** I will keep the Property in my possession and in good repair. I will use it only for commercial purposes. I will not change this specified use without your prior written consent. You have the right of reasonable access to inspect the Property and I will immediately inform you of any loss or damage to the Property. I will not cause or permit waste to the Property.

I will keep the Property at my address listed in the DATE AND PARTIES section unless we agree I may keep it at another location. If the Property is to be used in other states, I will give you a list of those states. The location of the Property is given to aid in the identification of the Property. It does not in any way limit the scope of the security interest granted to you. I will notify you in writing and obtain your prior written consent to any change in location of any of the Property. I will not use the Property in violation of any law. I will notify you in writing prior to any change in my name or address.

Until the Secured Debts are fully paid and this Agreement is terminated, I will not grant a security interest in any of the Property without your prior written consent. I will pay all taxes and assessments levied or assessed against me or the Property and provide timely proof of payment of these taxes and assessments upon request.

C. **Selling, Leasing or Encumbering the Property.** I will not sell, offer to sell, lease, or otherwise transfer or encumber the Property without your prior written permission. Any disposition of the Property contrary to this Agreement will violate your rights. Your permission to sell the Property may be reasonably withheld without regard to the creditworthiness of any buyer or transferee. I will not permit the Property to be the subject of any court order affecting my rights to the Property in any action by anyone other than you. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, I will note your security interest on the face of the chattel paper or instruments.

D. **Additional Duties Specific to Boats.** I will maintain the Boat portion of the Property in good repair and seaworthy condition and I will comply with all applicable laws and regulations regarding periodic inspections, maintenance, condition, use and operation of the Boat.

The Boat portion of the Property will be docked or located at:
3245 HENNEPIN AVE, MINNEPAOLIS, Minnesota 55408.
3245 HENNEPIN AVE, MINNEAPOLIS, Minnesota 55408.
3245 HENNEPIN AVE, MINNEAPOLIS, Minnesota 55408.
3245 HENNEPIN AVE, MINNEAPOLIS, Minnesota 55408.
3245 HENNEPIN AVE, MINNEAPOLIS, Minnesota 55408.
3245 HENNNEPIN AVE, MINNEAPOLIS, Minnesota 55408.
3245 HENNEPIN AVE, MINNEAPOLIS, Minnesota 55408.
3245 HENNEPIN AVE, MINNEAPOLIS, Minnesota 55408.
3245 HENNEPIN AVE, MINNEAPOLIS, Minnesota 55408.
3245 HENNEPIN AVE, MINNEAPOLIS, Minnesota 55408.
2925 CASCO POINT ROAD, ORONO, Minnesota 55391.

So long as I am not in default under this Agreement, the Boat portion of the Property will not be restricted to a specific location and may be moved as necessary during ordinary use. However, the Boat may not be removed from the United States or Canada without your prior written consent, nor taken out of state permanently.

**6. INSURANCE.** I agree to keep the Property insured against the risks reasonably associated with the Property. In addition, I will procure and maintain hull and liability insurance on the Boat portion of the Property. This policy must be written under the standard "all risks" form. I will maintain this insurance in the amounts you require. This insurance will last until the Property is released from this Agreement. I may choose the insurance company, subject to your approval, which will not be unreasonably withheld.

I will have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debts. You may require added security as a condition of permitting any insurance proceeds to be used to repair or replace the Property.

DONALD A DRIGGS
Minnesota Security Agreement
MN/4XXIsmith00022000005751018121907Y    ©1996 Bankers Systems, Inc., St. Cloud, MN Experi™    Initials ____
                                                                                         Page 1

**EXHIBIT B**

If you acquire the Property in damaged condition, my right to any insurance policies and proceeds will pass to you to the extent of the Secured Debts. I will immediately notify you of cancellation or termination of insurance. If I fail to keep the Property insured, you may obtain insurance to protect your interest in the Property and I will pay for the insurance on your demand. You may demand that I pay for the insurance all at once, or you may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include coverages not originally required of me, may be written by a company other than one I would choose, and may be written at a higher rate than I could obtain if I purchased the insurance. I acknowledge and agree that you or one or your affiliates may receive commissions on the purchase of this insurance.

7. **AUTHORITY TO PERFORM.** I authorize you to do anything you deem reasonably necessary to protect the Property, and perfect and continue your security interest in the Property. If I fail to perform any of my duties under this Agreement or any other Loan Document, you are authorized to perform the duties or cause them to be performed.

These authorizations include, but are not limited to, permission to:
   A. pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property.
   B. pay any rents or other charges under any lease affecting the Property.
   C. order and pay for the repair, maintenance and preservation of the Property.
   D. file any financing statements on my behalf and pay for filing and recording fees pertaining to the Property.
   E. place a note on any chattel paper indicating your interest in the Property.
   F. take any action you feel necessary to realize on the Property, including performing any part of a contract or endorsing it in my name.
   G. handle any suits or other proceedings involving the Property in my name.
   H. prepare, file, and sign my name to any necessary reports or accountings.
   I. make an entry on my books and records showing the existence of this Agreement.

If you perform for me, you will use reasonable care. If you exercise the care and follow the procedures that you generally apply to the collection of obligations owed to you, you will be deemed to be using reasonable care. Reasonable care will not include: any steps necessary to preserve rights against prior parties; the duty to send notices, perform services or take any other action in connection with the management of the Property; or the duty to protect, preserve or maintain any security interest given to others by me or other parties. Your authorization to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Agreement. All cash and non-cash proceeds of the Property may be applied by you only upon your actual receipt of cash proceeds against such of the Secured Debts, matured or unmatured, as you determine in your sole discretion.

If you come into actual or constructive possession of the Property, you will preserve and protect the Property. For purposes of this paragraph, you will be in actual possession of the Property only when you have physical, immediate and exclusive control over the Property and you have affirmatively accepted that control. You will be in constructive possession of the Property only when you have both the power and the intent to exercise control over the Property.

8. **DEFAULT.** I will be in default if any of the following occur:
   A. **Payments.** I fail to make a payment in full when due.
   B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Obligor, or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations Obligor has with you.
   C. **Death or Incompetency.** I die or am declared legally incompetent.
   D. **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Agreement.
   E. **Other Documents.** A default occurs under the terms of any other Loan Document.
   F. **Other Agreements.** I am in default on any other debt or agreement I have with you.
   G. **Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.
   H. **Judgment.** I fail to satisfy or appeal any judgment against me.
   I. **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.
   J. **Name Change.** I change my name or assume an additional name without notifying you before making such a change.
   K. **Property Transfer.** I transfer all or a substantial part of my money or property.
   L. **Property Value.** You determine in good faith that the value of the Property has declined or is impaired.
   M. **Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Agreement or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

9. **DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Agreement to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

10. **REMEDIES.** After I default, you may at your option do any one or more of the following.
   A. **Acceleration.** You may make all or any part of the amount owing by the terms of the Secured Debts immediately due.
   B. **Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.
   C. **Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.
   D. **Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the Secured Debts.
   E. **Attachment.** You may attach or garnish my wages or earnings.
   F. **Assembly of Property.** You may require me to gather the Property and make it available to you in a reasonable fashion.
   G. **Repossession.** You may repossess the Property so long as the repossession does not involve a breach of the peace. You may sell, lease or otherwise dispose of the Property as provided by law. You may apply what you receive from the disposition of the Property to your expenses, your attorneys' fees and legal expenses (where not prohibited by law), and any debt I owe you. If what you receive from the disposition of the Property does not satisfy the debt, I will be liable for the deficiency (where permitted by law). In some cases, you may keep the Property to satisfy the debt.
   Where a notice is required, I agree that ten days prior written notice sent by first class mail to my address listed in this Agreement will be reasonable notice to me under the Minnesota Uniform Commercial Code. If the Property is perishable or threatens to decline speedily in value, you may, without notice to me, dispose of any or all of the Property in a commercially reasonable manner at my expense following any commercially reasonable preparation or processing.
   If any items not otherwise subject to this Agreement are contained in the Property when you take possession, you may hold these items for me at my risk and you will not be liable for taking possession of them.
   H. **Use and Operation.** You may enter upon my premises and take possession of all or any part of my property for the purpose of preserving the Property or its value, so long as you do not breach the peace. You may use and operate my property for the length of time you feel is necessary to protect your interest, all without payment or compensation to me.
   I. **Waiver.** By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

11. **WAIVER OF CLAIMS.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

12. **PERFECTION OF SECURITY INTEREST AND COSTS.** I authorize you to file a financing statement covering the Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining perfection or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code. I agree to pay all taxes, fees and costs you pay or incur in connection with preparing, filing or recording any financing statements or other security interest filings on the Property. I agree to pay all actual costs of terminating your security interest.

13. **APPLICABLE LAW.** This Agreement is governed by the laws of Minnesota, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Minnesota, unless otherwise required by law.

14. **JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Debtor's obligations under this Agreement are independent of the obligations of any other Debtor. You may sue each Debtor individually or together with any other Debtor. You may release any part of the Property and I will still be obligated under this Agreement for the remaining Property. Debtor agrees that you and any party to this Agreement may extend, modify or make any change in the terms of this Agreement or any evidence of debt without Debtor's consent. Such a change will not release Debtor from the terms of this Agreement. If you assign any of the Secured Debts, you may assign all or any part of this Agreement without notice to me or my consent, and this Agreement will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Agreement as to any of the Secured Debts that are not assigned. This Agreement shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Secured Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

15. **AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by you and me. This Agreement and the other Loan Documents are the complete and final expression of the understanding between you and me. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

16. **INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

17. **NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Debtor will be deemed to be notice to all Debtors. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Agreement and to confirm your lien status on any Property. Time is of the essence.

---

DONALD A DRIGGS
Minnesota Security Agreement
MN/4XXlsmith00022000005751018121907Y ©1996 Bankers Systems, Inc., St. Cloud, MN *Experi*™   Initials _____
Page 2

**SIGNATURES.** By signing, I agree to the terms contained in this Agreement. I also acknowledge receipt of a copy of this Agreement.

DEBTOR:   _C_

_____
DONALD A DRIGGS
Individually

# UCC FINANCING STATEMENT

| A. NAME & PHONE OF CONTACT AT FILER (optional) | | Filing Number: | 200810007205 |
|---|---|---|---|
| B. SEND ACKNOWLEDGMENT TO: (Name and Address)<br>Loretta Lee Smith<br>Crown Bank<br>601 Marquette Ave South<br><br>MINNEAPOLIS, MN 55402 | | Filing Date: | 01/02/2008 |
| | | Filing Time: | 10:35 am |
| | | Processing Office: | State of Minnesota<br>Secretary of State |
| | | Filed By: | UCCOnlineFiling |

## 1. DEBTOR'S EXACT FULL LEGAL NAME
### INDIVIDUAL'S NAME

| Last Name | First Name | Middle Name | Suffix |
|---|---|---|---|
| DRIGGS | DONALD | | |

| Mailing Address | City | State | Postal Code | Country |
|---|---|---|---|---|
| 2925 CASCO POINT ROAD | ORONO | MN | 55391 | USA |

Tax ID #: SSN or EIN

## 2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME
### INDIVIDUAL'S NAME

| Last Name | First Name | Middle Name | Suffix |
|---|---|---|---|
| | | | |

| Mailing Address | City | State | Postal Code | Country |
|---|---|---|---|---|
| | | | | |

Tax ID #: SSN or EIN

## 3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)
### ORGANIZATION'S NAME
### CROWN BANK

| Mailing Address | City | State | Postal Code | Country |
|---|---|---|---|---|
| 601 MARQUETTE AVE S | MINNEAPOLIS | MN | 55402 | USA |

**4. This FINANCING STATEMENT covers the following collateral :**

1939 LARSON 21` FALLS FLYER, 1938 LARSON 14` FALLS FLYER, 1957 LARSON 14` FALLS FLYER, 1957 LARSON 14` FALLS FLYER, 1955 LARSON 14` FALLS FLYER, 1955 ARISTO-CRAFT 14` TORPEDO, 1947 LARSON 14` WOOD ROW BOAT, 1913 17` SWEDISH LAUNCH, 1940-1950 BUNKY BOWERMAN 18` HYDROPLANE, 1940-1950 SWIFT BIG BEE 18 HYDROPLANE, 1974 BOSTON WHALER, 1990 DONZI SPEEDBOAT

EXHIBIT C

5. ALTERNATIVE DESIGNATION (if applicable)  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Bailee/Bailor  ☐ Seller/Buyer  ☐ AG. Lien  ☐ Non-UCC Filing

6. ☐ This FINANCING STATEMENT is to be filed (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    (if applicable)    7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) (ADDITIONAL FEE)    (optional)    ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA:

1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:

DONALD ANDREW DRIGGS

Debtor.

Case No.: 08-41984-GFK

Chapter 11 Case

## VERIFICATION

Nick M. Lane, being duly sworn on oath, deposes and says that the information attached hereto is true and correct as maintained on the business records of Crown Bank which are in my care, custody and control.

Dated: October 7, 2008

_____
Nick M. Lane

Subscribed and sworn to this
7th day of October, 2008.

_____
Notary Public

LORETTA H. SMITH
Notary Public
Minnesota
My Commission Expires January 31, 2010

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:

DONALD ANDREW DRIGGS

Debtor.

Case No.: 08-41984-GFK

Chapter 11 Case

### MEMORANDUM OF FACT AND LAW

Crown Bank ("Movant") submits this Memorandum of Fact and Law in support of its motion for relief from the automatic stay in the above-entitled matter.

### FACTS

Movant holds a perfected security interest in certain personal property securing a loan from movant to Debtor:

1939 Larson 21' Falls Flyer, 1938 Larson 14' Falls Flyer, 1957 Larson 14' Falls Flyer, 1957 Larson 14' Falls Flyer, 1955 Larson 14' Falls Flyer, 1955 Aristo-Craft 14' Torpedo, 1947 Larson 14' Wood Row Boat, 1913 17' Swedish Launch, 1940-1950 Bunky Bowerman 18' Hydroplane, 1940-1950 Swift Big Bee 18 Hydroplane, 1974 Boston Whaler, 1990 Donzi Speedboat (the "Property").

On the date this case was filed, Debtor was delinquent under the terms of the loan with Movant. Debtor is presently delinquent under the terms of the loan. The balance due under the loan is at least $63,647.37. According to Debtor, the fair market value of the Property is $20,400.00.

## ARGUMENT

Pursuant to the Bankruptcy Code, a creditor is entitled to relief from the automatic stay:

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; [or]
(2) with respect to a stay of an act against property under subsection (a) of this section, if –
    a. the debtor does not have an equity in such property; and
    b. such property is not necessary to an effective reorganization.

11 U.S.C. §362(d)(1) and (2).

Cause exists in this case for relief from the automatic stay because the movant is not adequately protected. According to the Debtor's schedules, the value of the Property is $20,400.00, which is less than a third of the amount owed to the movant on the date of filing. Due to Debtor's actions, the amount owed to movant continues to increase, and the Debtor has offered no form of adequate protection to maintain the movant's security.

Debtor has not otherwise provided Movant with adequate protection of Movant's interest in the Property. Such circumstances constitute cause, within the meaning of §362(d)(1), justifying relief from the stay. See, United States Association of Texas v. Timbers of Inwood Association, Ltd. (In Re: Timbers of Inwood Association, Ltd.), 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed. 2d 740 (1988); In Re: Reinbold v. Dewey County Bank, 942 F.2d 1304, 1306 (8th Cir. 1991). Pursuant to 11 U.S.C. §362(g), the burden is on the Debtor to prove adequate protection and/or absence of cause.

The Property is also not necessary to effectively reorganize. Pursuant to Debtor's Disclosure Statement, Debtor states that Debtor's intended plan of reorganization is to retain certain real estate properties and modify the terms of agreements with lenders on other real estate properties to allow for cash flow to support plan payments. Whether this is a valid proposed plan

2

or not, it does not involve the Property that is the subject of this Motion. The Property does not generate income and will depreciate in value. The Property is not necessary to an effective reorganization.

## CONCLUSION

For all of the reasons set forth herein, Crown Bank respectfully requests that the Court issue an Order modifying the automatic stay of §362(a) to permit Movant to proceed with its state court remedies with respect to the collateral.

Respectfully submitted,

HELLMUTH & JOHNSON, PLLC

Dated: October 7, 2008.

By: /e/ David G. Hellmuth
David G. Hellmuth, ID #229131
Joel A. Hilgendorf, ID #315953
Attorneys for Movant
Hellmuth & Johnson, PLLC
10400 Viking Drive, Suite 500
Eden Prairie, MN 55344

3

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:     Case No. 08-41984
Chapter 11 Case

DONALD ANDREW DRIGGS,

       Debtor.

## PROOF OF SERVICE

I, Marilyn S. Sauer, am an employee of Hellmuth & Johnson, PLLC, and in the course of said employment I caused the following documents:

1. Notice of Hearing and Motion for an Order Granting Relief from Automatic Stay;
2. Verification;
3. Memorandum of Fact and Law; and
4. Order Granting Relief from the Automatic Stay,

to be served on the parties on the attached service list by enclosing true and correct copies of the same in an envelope, properly addressed and postage prepaid, and depositing the same in the United Sates mail and filed electronically with the Clerk of Court through ECF on October 7, 2008, and that a copy of the above-referenced documents will be delivered to the people listed below who are Filing Users, by automatic e-mail notification pursuant to the Electronic Case Filing System and this notice constitutes service or notice pursuant to Local Rule 9006-1(a).

- Alice A Blanco    bkmail@mccalla.com
- Christopher A. Camardello    ccamardello@winthrop.com
- Corey J. Eilers    ndonahue@koepkelawgroup.com; mkisielius@koepkelawgroup.com
- James A Geske    jgeske@wilfordgeske.com, rtipler@wilfordgeske.com; mroue-chambers@wilfordgeske.com
- Lorie A. Klein    klein@moss-barnett.com, montpetitm@moss-barnett.com
- Joe M. Lozano    notice@bkcylaw.com
- Jamie R. Pierce    jpierce@hinshawlaw.com, akulbeik@hinshawlaw.com; msandback@hinshawlaw.com
- James A. Rubenstein    rubenstein@moss-barnett.com; montpetitm@moss-barnett.com
- US Trustee    ustpregion12.mn.ecf@usdoj.gov
- Thomas G. Wallrich    twallrich@hinshawlaw.com, jpierce@hinshawlaw.com; akulbeik@hinshawlaw.com; jaudette@hinshawlaw.com
- Sarah J Wencil    Sarah.J.Wencil@usdoj.gov
- James L. Wiant    jwiant@Rnoon.com

Date: October 7, 2008.       _/s/ Marilyn S. Sauer_
                                                   Marilyn S. Sauer

2

**MAILING SERVICE LIST**

Coy & Associates, Inc.
Legal Department
5700 Smetana Drive, #110
Minnetonka, MN 55343

Romer & Company
2318 First Avenue South
Minneapolis MN 55404

JT & TJ Inc.
21 Century Avenue South
St. Paul MN 55119

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:

DONALD ANDREW DRIGGS

Debtor.

Case No.: 08-41984-GFK

Chapter 11 Case

**ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**

This matter came on for hearing before the undersigned United State Bankruptcy Judge on the Motion of Crown Bank for relief from the Automatic Stay.

The appearances were as noted in the record. Based on the foregoing motion documents, arguments of counsel, and all files, records, and proceedings herein:

IT IS HEREBY ORDERED, that the automatic stay in the above-referenced matter is hereby modified to permit Crown Bank to take possession of and foreclose its interest in the collateral securing its claim, which collateral is described as:

1939 Larson 21' Falls Flyer, 1938 Larson 14' Falls Flyer, 1957 Larson 14' Falls Flyer, 1957 Larson 14' Falls Flyer, 1955 Larson 14' Falls Flyer, 1955 Aristo-Craft 14' Torpedo, 1947 Larson 14' Wood Row Boat, 1913 17' Swedish Launch, 1940-1950 Bunky Bowerman 18' Hydroplane, 1940-1950 Swift Big Bee 18 Hydroplane, 1974 Boston Whaler, 1990 Donzi Speedboat (the "Property") and to otherwise pursue its state court remedies with respect to the collateral in a manner conforming to Minnesota law.

2

In addition, notwithstanding Federal Rule of Bankruptcy Procedure 4001(a)(3) this order is effective immediately.

Dated:_____, 2008.

_____
Gregory F. Kishel
United States Bankruptcy Judge